UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-20552-CR-GAYLES/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and ESTHER NUHFER,

Defendants.

_____/

**DAVID RIVERA AND ESTHER NUHFER'S JOINT MOTION FOR RELEASE
OF *LIS PENDENS* ON SUBSTITUTE ASSETS**

"Untainted assets, [as] the Supreme Court made clear … belong to the
defendant, pure and simple." – Chief United States Magistrate Judge Edwin Torres
*United States v. Hernandez-Gonzales*, 2017 WL 2954676, *4 (S.D. Fla. June 26, 2017).
Despite this pure and simple directive, the Government has placed *lis pendens* on
Rivera and Nuhfer's untainted assets (or substitute assets) in violation of *Luis*, a
recent Supreme Court case right on point, as well as state law. *Luis v. United States*,
578 U.S. 5 (2016). Because those innocent assets cannot be used to retain counsel,
this case has been delayed and the defendants have not even been arraigned,
requiring the instant motion for an order directing the Government to release the *lis
pendens* on substitute assets, as other federal courts have done in similar
circumstances.

## **INTRODUCTION**

The Government has filed an Indictment against David Rivera and Esther Nuhfer, which seeks criminal forfeiture pursuant to 21 U.S.C. § 853 of a number of assets, including accounts and property the Government says are traceable to the alleged criminal activity, as well as substitute assets  which are not traceable and have no direct connection to the alleged offenses. The Government already has obtained a protective order against the so-called traceable assets (DE 8), which we are not challenging here. However, the Government also has illegally filed *lis pendens* against the substitute assets, requiring this motion.[1]

The Government had no authority under either state or federal law to file the *lis pendens* notices on these substitute assets:

<u>First</u>, the pretrial restraint of substitute assets using a *lis pendens* is illegal under Florida state law where, as here, the assets have no connection to any offense or pending suit. The Government's *lis pendens* action is not based on a duly recorded instrument, and the Government cannot establish a good faith, viable claim that the assets are involved in the pending federal case. The Government's *lis pendens* notice on substitute assets in this case improperly clouds title to the assets in question, which, as Florida courts have recognized, will unjustly impact the ability to sell the

---

[1] Though the Government has recorded *lis pendens* against real estate in both Florida and Georgia ostensibly related to Rivera, as to him this motion is limited only to two properties located in Florida, properties designated as (a) and (f) in the substitute assets list of the Indictment, p. 33. With regard to "property (f)" in Oviedo, Florida, this real estate is owned exclusively by Safiya Rivera, David Rivera's wife. Therefore, the Government simply had no right to place a *lis pendens* on this property. Safiya Rivera will be joining this motion separately as an "Interested Party."

property. Accordingly, this Court should follow the example of other federal courts, and find that under Florida law, the Government does not have a sufficient interest in the substitute assets to authorize the filing of *lis pendens* notices on these properties.

<u>Second</u>, the pre-conviction restraint of substitute assets is unconstitutional under federal law after *Luis*, 578 U.S. 5 (2016), which held that the pretrial restraint of substitute assets violated both the Fifth and Sixth Amendment rights of the accused. Here, David Rivera and Esther Nuhfer would like to use the substitute assets to retain counsel but cannot do so because of the *lis pendens* placed on their substitute assets, which are not traceable to or involved in the allegations against them. Because the *lis pendens* violate Rivera and Nuhfer's rights to counsel of choice under the Sixth Amendment and due process under the Fifth Amendment, this Court should find that the Florida *lis pendens* notices are being improperly utilized by the federal government and order the Government to release the *lis pendens* on the substitute assets so that David Rivera and Esther Nuhfer can fund their legal defense with their innocent assets.[2]

---

[2] It is the defense position that all of the seizures in this case are unlawful. There was no money laundering in this case and forfeiture is not valid under the theory articulated in the Indictment.  Once the issue in this motion is resolved and counsel can enter their permanent appearances, additional motions regarding the money laundering counts and forfeiture counts will be filed.

## ARGUMENT

### I.    THE PRETRIAL RESTRAINT OF SUBSTITUTE ASSETS USING *LIS PENDENS* IS ILLEGAL UNDER FLORIDA LAW

It is blackletter law in Florida that to place a valid *lis pendens* on a property, the action must be founded on a duly recorded instrument (like a mortgage or a construction lien) or there must be a nexus between the property at issue and the underlying case. Because the *lis pendens* here do not meet either requirement, they violate Florida law and must be lifted.

Federal courts routinely order the federal government to remove *lis pendens* where they violate state laws in cases that look a lot like this one (where the Government is improperly trying to tie up substitute assets). For example, in *United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007), the Tenth Circuit concluded that New Mexico state law did not authorize the pre-conviction filing of a *lis pendens* on the defendant's substitute assets. The Tenth Circuit applied New Mexico's *lis pendens* statute and found that "[t]o be eligible to record a *lis pendens* notice on a piece of real property…the party recording the notice must assert a present claim to the property's title or have some other present interest in the subject property." *Jarvis*, 499 F.3d at 1203; *see also* N.M. Stat. Ann. § 38-1-14. However, most importantly, the Tenth Circuit rejected the Government's attempt to improperly use a state *lis pendens* notice on substitute assets:

> In essence, the United States seeks to use the *lis pendens* mechanism to preserve the substitute property in anticipation of a conviction and a determination by the court that the § 853(a) forfeitable property is beyond the government's reach to satisfy the accompanying money judgment or forfeiture order…The United States cannot convert § 853(p) substitute property to § 853(a) forfeitable property merely by identifying

4

> the former in the indictment. There is, therefore, no reason the usual prohibition on using a *lis pendens* in anticipation of a money judgment would not apply in this situation.

*Id.* at 1205-1206. The Tenth Circuit held that the United States did not have a present interest in § 853(p) substitute assets until: (1) the defendant was convicted, and (2) the defendant's § 853(a) tainted assets were unavailable for forfeiture. *Id.* at 1205. Accordingly, the Tenth Circuit found that the United States could not have a present interest in substitute assets prior to the defendant's conviction. *Id.* Rather, the United States' interest was characterized as "only a potential and speculative future interest" in § 853(p) substitute assets at the pre-conviction stage. *Id.* The Tenth Circuit remanded to the district court with direction to order the *lis pendens* notices removed. The same is true here, where the Government has specifically defined properties on which it has filed the notice of *lis pendens* as "substitute assets."

Similarly, in *United States v. Coffman*, 5:09-CR-181-KKC, 2010 WL 3984886, at *4 (E.D. Ky. Oct. 7, 2010); the Eastern District of Kentucky found that under Kentucky state law, the Government did not have a sufficient interest in the defendants' substitute assets to authorize the filing of *lis pendens* notices on their properties. The district court relied on Kentucky's state *lis pendens* statute, which, like Florida law, requires the recording party to have an actual interest in the subject property at the time the action commences or is filed. *See* Ky. Rev. Stat. Ann. § 382.440. The district court ordered the United States to remove the *lis pendens* notices from the properties after holding that the Government had "only a potential and speculative future interest" in the defendants' § 853(p) substitute assets. In agreeing with other federal courts, the district court explained that the Government's

interest would not become actual or present unless the defendants were convicted and their § 853(a) tainted assets are unavailable for forfeiture for one of the reasons set forth in § 853(p).

In another example out of the Eastern District of New York, a district court relied on New York state law to order the cancellation of *lis pendens* notices improperly imposed on the substitute assets of a defendant. *United States v. Kramer,* 1:06CR200-ENV-CLP, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2006). The court correctly explained that in this circumstance, the inquiry ends on the question of whether the notice of *lis pendens* is permitted under state law, not on whether the *lis pendens* constitutes a restraint on the assets. *Id.* The court found that "under no circumstances" is *lis pendens* available to the Government with regard to a defendant's untainted real property because "unlike specifically forfeitable property," the defendant's "substitute properties are not the subject matter of the pending indictment, nor are these proceedings about a colorable interest in the property that the Government claims it now has and is now litigating to vindicate." *Id.* at 11. The court reasoned that the only relationship the substitute assets had to the criminal proceeding were "as a potential asset source that may be used to satisfy a shortfall in a potential forfeiture money judgment." *Id.* The court correctly concluded that:

> The Government's motivation, of course, is clear. It is not concerned that [the defendant's] substitute assets are the subject matter of the indictment, which if conveyed away to a *bona fide* purchaser, would render the prosecution a nullity; instead, it is concerned that [the defendant] will convert his assets to a more liquid form which may be dissipated, and thus become unavailable to satisfy a potential *in personam* judgment of forfeiture. This is not a legitimate purpose for *lis pendens*. Therefore, since the Government has failed to show any colorable legal interest in [the defendant's] real property that would

> relate back to the time of the crime or even to when the superseding indictment was filed, and since a judgment of conviction in and of itself cannot affect title to the identified substitute assets, the Court concludes that the Government had no authority to file notices of *lis pendens* with respect to these assets.

*Id.* The district court declared the notices of pendency a nullity and ordered the Government to facilitate their cancellation at the state level. *See also United States v. Kavalchuk*, 2010 WL 703105 (D. N.H. Feb. 23, 2010) (finding that the Government made no showing of support under Massachusetts law for filing notice of *lis pendens*); *United States v. Jewell*, 556 F. Supp.2d 962, 967-968 (E.D. Ark. 2008) (holding that Arkansas law did not provide a basis for filing a notice of *lis pendens* on substitute assets). In none of these cases, did the courts impose a "showing of need" requirement as a precondition to ordering the Government to remove *lis pendens* found to violate state law.

The question before this Court is identical to the issue before the federal courts in *Jarvis*, *Coffman*, and *Kramer,* and others: Does state law authorize a notice of *lis pendens* where there is no recorded instrument, no nexus or connection to a pending suit, and no allegation that these assets were used to commit or facilitate a criminal offense? The answer is no. Here, the properties in question are specifically listed as substitute assets in the Indictment. The substitute assets are not, by the Government's own admission, traceable to the funds involved in the alleged criminal activity. They are not, therefore, in issue in this case except insofar as they may, someday, if the Government prevails at trial, become subject to forfeiture under 21 U.S.C. § 853(p). As a consequence, the United States had no interest in the title to or a claim upon the assets at the time of the indictment or the recording of the *lis*

*pendens* on the properties. The Government's interest in the assets, if any, is only a potential and speculative future interest. As federal courts have routinely held, because that interest cannot mature into an actual interest until after conviction and does not relate back to a pre-conviction date, it cannot satisfy the prerequisites for the recording of a *lis pendens*. As the Government has no interest in the substitute assets, it is improperly using the notice of *lis pendens* as a means of attempting to attach assets for the purpose of securing the monetary judgment that it seeks. The United States' filing of *lis pendens* notices on the assets in question were, therefore, improper under Florida law and should be lifted.

Florida law provides that "[w]hen the pending pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 … the court shall control and discharge the recorded notice of *lis pendens* as the court would grant and dissolve injunctions." Fla. Stat. § 48.23(3). A "duly recorded instrument" is a document such as a deed, mortgage, or construction lien recorded in the public records where the property is located. Here, the *lis pendens* notice imposed by the Government is not based on any "duly recorded instrument." Unless the initial filing for *lis pendens* "shows that an action is founded on a duly recorded instrument concerning the real property described in the *lis pendens*, the court has the power to control the notice of *lis pendens* by discharging it or by requiring the party who filed the *lis pendens* to post a bond." *Deguzman v. Balsini*, 930 So. 2d 752, 754 (Fla. 5th DCA 2006); *see also Med. Facilities Dev., Inc. v. Little Arch Creek Properties, Inc.*, 675 So. 2d 915 (Fla. 1996) (holding that in situations where an initial pleading does not show that action is founded upon duly recorded

instrument, it is within trial court's discretion to require the *lis pendens* proponent to post bond when a defendant can show that damages will likely result to that defendant in event notice of *lis pendens* is unjustified).

Even if the Government could meet this requirement, there is no nexus between the properties and the criminal case, which invalidates the *lis pendens*. 930 So. 2d 752. The Florida Supreme Court has held "[a] court **must** dissolve a *lis pendens* that is based on an unrecorded document unless the proponent 'establishes a *fair nexus* between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit.'" *Conseco Servs., LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 3d DCA 2005) (quoting *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993)) (emphasis added) (finding that the trial court properly dissolved the *lis pendens* since there was no showing of the requisite "fair nexus" between the ownership of the property and the dispute). The plaintiff/proponent of the *lis pendens* has the burden of establishing the "fair nexus" through a "good faith, viable claim." *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007); *see also Sparks v. Charles Wayne Group,* 568 So.2d 512 (Fla. 5th DCA 1990) (holding that the *lis pendens* proponent has the burden of proof to show a fair nexus between the property and the dispute).

In this case, the Government cannot meet the heavy burden required under Florida law to tie up someone's property because the substitute assets subject to the *lis pendens* are not traceable to the pending federal case and have no direct connection to the alleged offenses. In fact, the term "*lis pendens*" is defined by Florida courts as "the jurisdiction, power, or control which courts acquire over property *involved* in a

pending suit." *Med. Facilities Dev., Inc.,* 675 So. 2d at 917 (emphasis added); *see also Sheehan v. Reinhardt*, 988 So. 2d 1289, 1290 (Fla. 2d DCA 2008) ("The purpose of a notice of *lis pendens* is to alert creditors, prospective purchasers and others to the fact that the title to a particular piece of real property is *involved* in litigation.") (emphasis added) (quotation omitted).

Here, because the proponent of the *lis pendens*, the Government, does not allege that the substitute assets are involved in the pending federal case, the *lis pendens* are improper under Florida law and must be lifted. For example, in *Deguzman*, the plaintiff recorded a *lis pendens* against a defendant's property in litigation to enforce and require payment of child support. *Deguzman*, 930 So. 2d at 754. The Court found that "a *lis pendens*…should not have been filed because there is no connection between [the plaintiff's] litigation to enforce and require payment of child support and the real property against which she filed the *lis pendens*." *Id.* at 754–55. The plaintiff "completely failed to show any grounds to assert equitable or legal title to the property, nor any connection to it other than as a potential source from which to recoup child support." *Id.* at 755. In the instant case, the Government concedes that the assets subject to the *lis pendens* are not connected to the pending federal case and are being restricted only as a potential source from which to fulfill theoretical restitution and forfeiture orders that have not been ordered and may never be imposed. Florida law mandates the dissolution of the *lis pendens* in this circumstance.

Under Florida law, "[a] *lis pendens* is not an appropriate instrument for use in promoting recoveries in actions for money judgments." *DeGuzman*, 930 So. 2d at 755 (citing 51 Am. Jur. 2d Lis Pendens § 28 (2000)). "Where the primary purpose of a

lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of *lis pendens* is not authorized." *Sheehan*, 988 So. 2d at 1291; *see also Cimbler v. Brent*, 963 So. 2d 812, 813 (Fla 3d DCA 2007) (in the absence of a direct claim cognizable under the law against or upon the property burdened by the *lis pendens,* no *lis pendens* may be asserted against the realty); *Lake Placid Holding Co. v. Paparone*, 414 So. 2d 564, 566 (Fla. 2d DCA 1982) ("A complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by a filing of notice of *lis pendens.*"). In this case, the substitute assets in the Indictment are not involved in this lawsuit and cannot be tied up under state law unless and until the Government secures a monetary judgment following a conviction, which it is unable to satisfy from forfeitable assets.

Although the Government will attempt to downplay the effects of the *lis pendens*, Florida law recognizes the constraining effects the notice has on the property-holder defendant. The notice "will often prevent the property holder from selling or mortgaging the property." *Med. Facilities Dev., Inc.,* 675 So. 2d at 917 (recognizing that since the wrongful filing of a notice of *lis pendens* can be damaging, courts have interpreted the statutory reference to injunctions in FS § 48.23(3) to mean that a bond may be required). Florida courts have routinely held that a *lis pendens* functions as "a harsh and oppressive remedy" that operates as a cloud on the title and prevents an owner from selling it. *Suarez v. KMD Constr., Ins.*, 965 So. 2d 184, at 187-188 (Fla. 5th DCA 2007); *see also Deguzman,* 930 So. 2d at 754 ("A *lis pendens* places a cloud on the title that did not previously exist…"); *Chiusolo*, 614 So. 2d at 492 (a *lis pendens*

"is a cloud on the title that creates a priority for the party that filed the *lis pendens* if that party prevails in the pending litigation"). It is well-established that Florida courts, which govern *lis pendens* actions under FS § 48.23, consider *lis pendens* notices to be a significant restraint on the property-holder. Frankly, the issue of the impact of a *lis pendens* is actually a 'red herring,' which the Court need not decide as the *lis pendens* themselves are illegal and should be declared so. As discussed below, any contrary view in old pre-*Luis* federal cases is simply wrong in light of this authority from the courts that actually handle *lis pendens* actions.

## II. THE PRETRIAL RESTRAINT OF SUBSTITUTE ASSETS IS UNCONSTITUTIONAL UNDER FEDERAL LAW

### A. *Luis* **controls this case.**

The Government's use of *lis pendens* notices to restrain the assets in question is unconstitutional. *Luis*, 578 U.S. 5 (2016). There, the Supreme Court held that the pretrial restraint of substitute assets violated both the Fifth and Sixth Amendment rights of the accused: "We have found no decision of this Court authorizing unfettered, pretrial forfeiture of the defendant's own 'innocent' property—property with no connection to the charged crime." *Id*. at 21.

The Sixth Amendment guarantees a defendant the right to counsel of choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006). The right "commands, not that the trial be fair, but that a particular guarantee of fairness be provided - to wit, that the accused be defended by the counsel he believes to be the best." *Id*. at 146. The erroneous deprivation of the right to counsel of choice is a structural error because it affects "the framework within which the trial proceeds." *Id*. at 148-50.

Indeed, the Eleventh Circuit has observed that "our law is clear and unambiguous that depriving a defendant of the counsel of his choice is a serious and significant impediment to his ability to effectively navigate our nation's criminal procedures and protections." *United States v. Kaley*, 579 F.3d 1246, 1258 (11th Cir. 2009). "Being effectively shut out by the state from retaining the counsel of one's choice in a serious criminal case is a substantial source of prejudice…." *Id.* "The Sixth Amendment comprehends a qualified right to select and be represented by counsel of choice because 'were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.'" *United States v. Bissell*, 866 F.2d 1343, 1351 (11th Cir. 1989) (quoting *United States v. Koblitz*, 803 F.2d 1523, 1528 (11th Cir. 1986)). "Lawyers are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues." *United States v. Laura*, 607 F.2d 52, 56 (3d Cir. 1979).

By placing *lis pendens* on the substitute assets in this case, the Government has made it impossible for Rivera and Nuhfer to use those properties to secure legal counsel which they have a right to do because the Government has no present interest in those properties. The restraint of substitute assets is effectively a pretrial limit on the amount of his or her own untainted money a defendant can spend on his or her defense. There is no countervailing tool available to the defendants to limit the Government's expenditures in prosecuting them. The substitute assets in the Indictment are not involved in this lawsuit and cannot be tied up unless and until

the Government secures a monetary judgment following a conviction which it is unable to satisfy from forfeitable assets.

As *Luis* unequivocally explains, 21 U.S.C. § 853 does not authorize the pre-trial restraint of substitute assets.[3] Similarly, the Sixth Circuit has explained that "the plain language of 21 U.S.C. § 853 conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets." *United States v. Parrett,* 530 F.3d 422, 431 (6th Cir. 2008). Because the properties identified in this case are "substitute assets," *Parrett* commands that the Government's *lis pendens* are unconstitutional.

The overwhelming majority of circuits have agreed with the Sixth Circuit that § 853(e)'s plain language does not authorize the pretrial restraint of § 853(p) substitute assets. *Parrett*, 530 F.3d at 431; *see also United States v. Gotti*, 155 F.3d 144, 149-50 (2d Cir. 1998); *In re Assets of Martin*, 1 F.3d 1351, 1359 (3d Cir. 1993); *United States v. Floyd*, 992 F.2d 498, 501-02 (5th Cir. 1993); *United States v. Riley,* 78 F.3d 367, 371 (8th Cir. 1996); *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir. 1994); *Jarvis*, 499 F.3d at 1204; *United States v. Field*, 62 F.3d 246, 248–49 (8th Cir.1995); *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017). The statute

---

[3] As discussed above, federal courts have held specifically that a *lis pendens* against substitute assets is not permitted under § 853 unless permitted under the *lis pendens* laws of the state. *See United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008) (concluding that "§ 853 does not itself authorize an order of *lis pendens* over substitute assets prior to the entry of a forfeiture order" and remanding for determination of whether state law permitted such *lis pendens*); *Jarvis*, 499 F.3d at 1204-05; *Coffman*, 2010 WL 3984886, at *4; *Kramer*, 2006 WL 3545026, at *10. We have found no contrary Eleventh Circuit opinion. As discussed above, such use of a *lis pendens* is not permitted under Florida law.

"imposes specific preconditions on the government's ability to claim title to the defendant's substitute property, preconditions which can only be satisfied once the defendant has been convicted." *See, e.g., United States v. Misla–Aldarondo,* 478 F.3d 52, 75 (1st Cir.2007) (explaining forfeiture of substitute assets or the ability to reach additional assets to satisfy a money judgment requires the Government to show "the principal forfeitable assets...are unavailable at the end of the trial"); *United States v. Casey,* 444 F.3d 1071, 1076–77 (9th Cir.2006) (holding money judgment for substitute assets may be ordered when tainted assets are insufficient to satisfy a forfeiture order).

### B.  A *lis pendens* is a restraint on property.

The Government has argued to the defense that the *lis pendens* is appropriate here because it is not a restraint on Rivera or Nuhfer's property. The Government's attempted end-run around *Luis* should be rejected. Not only is Florida law clear that a *lis pendens* is a restraint of assets, it is also inconsistent with the express language of *Parrett*, in which the Sixth Circuit said "we have concluded that § 853 does not itself authorize an order of *lis pendens* over substitute assets prior to the entry of a forfeiture order." *Parrett*, 530 F.3d at 431.

The Government counters with a citation to dicta in *United States v. Register*, 182 F.2d 820, 837 (11th Cir. 1999), an old pre-*Luis* case. That case, however, did not address the situation at issue here – whether a *lis pendens* is permissible on a defendant's **untainted** property or whether its effect is significant enough that it amounts to a restraint for purposes of the Sixth Amendment right to hire counsel of one's choice. Nor did it address the question of whether any limitation on the use of

a defendant's property that results from a *lis pendens* not authorized by state law would violate a defendant's Fifth or Sixth Amendment rights.

In *Register*, unlike here, the Eleventh Circuit found that the *lis pendens* filed by the Government was "pursuant to Florida law," given that the Government was "seeking forfeiture of those parcels as property used *in connection with the criminal activity* alleged in the indictment." *Id.* at 836; 834 (emphasis added). This "connection" created the requisite nexus required for a valid *lis pendens* under Florida law. But here, no such connection exists between the substitute assets subject to the *lis pendens* and the federal case (as even the Government must concede). Additionally, even if the Eleventh Circuit had found that the *lis pendens* in *Register* should be released, the retraction of the notice would not have had any effect on the defendant's ability to retain counsel because the property in question was subject to forfeiture. *Id.* at 837. This is not the case here, where the substitute, untainted assets that the Government is attempting to tie up can lawfully be used to retain counsel. Further, while *Register* discusses in dicta what kinds of restraints a *lis pendens* does and does not place on a property owner, the Court recognizes that the *lis pendens* makes it "virtually impossible to sell or mortgage the property." *Id.* at 836 (quoting *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1323 (3d Cir.1982)); (*Beefy King Int'l, Inc. v. Veigl*e, 464 F.2d 1102, 1104 (5th Cir.1972) ("The effect of a *lis pendens* on the owner of property...is constraining."). Therefore, *Luis*' holding – that the Government cannot restrain substitute assets – controls, which courts in this Circuit have repeatedly recognized. *See, e.g., United States v, Hernandez-Gonzales*, 2017 WL 2954676, *4 (S.D. Fla. June 26, 2017) (Torres, Chief Magistrate Judge) ("Untainted

assets, [as] the Supreme Court made clear … belong to the defendant, pure and simple.").

As the state cases explain, the notice provided by the *lis pendens* to perspective buyers or lenders renders both the assets and the defendants radioactive insofar as using innocent properties to raise funds for their defense. *Lis pendens* notices are a function of state law, and as discussed above, Florida law makes clear that a *lis pendens* notice has constraining effects on the property-holder defendant. The notice "will often prevent the property holder from selling or mortgaging the property." *Med. Facilities Dev., Inc.,* 675 So. 2d at 917 (recognizing that since the wrongful filing of a notice of *lis pendens* can be damaging, courts have interpreted FS § 48.23(3) to mean that a bond may be required); *Suarez*, 965 So. 2d at 187-188 (noting that a *lis pendens* functions as "a harsh and oppressive remedy" that operates as a cloud on the title and prevents an owner from selling or dealing with it); *Deguzman*, 930 So. 2d at 754 ("A *lis pendens* places a cloud on the title that did not previously exist, if not based on a recorded instrument."); *Chiusolo*, 614 So. 2d at 492 (a *lis pendens* "is a cloud on the title that creates a priority for the party that filed the *lis pendens* if that party prevails in the pending litigation"). It is well-established that Florida courts, which govern *lis pendens* actions, consider *lis pendens* notices to be a significant restraint on the property-holder. Any contrary dicta in pre-*Luis* cases do not control.

C. **There is no requirement that a defendant show a need for the substitute assets before a *lis pendens* should be lifted.**

The Supreme Court in *Luis* held that the Government cannot restrain substitute assets. The Government, however, says that only after a defendant shows that he or she needs the assets to retain counsel does the asset get released. But there is no such requirement that an accused must make a showing of need in order to force the lifting of an improper *lis pendens* on substitute assets. The Government has no right to impose the *lis pendens* on substitute assets in the first place after *Luis*.

The Government's argument that a defendant must undergo an examination of need for the funds to hire counsel, appears to be grounded in the way the Supreme Court framed the issue in the *Luis* opinion: "The question presented is whether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice violates the Fifth and Sixth Amendments." *Luis*, 578 U.S. at 10 (internal quotations and citations omitted). But there was no showing-of-need requirement litigated in *Luis*; there does not appear to have been a dispute in the case as to the defendant's need for the funds to retain counsel. The only reference to the subject in the opinion is when the Court states, "The Government and Luis agree that this court order will prevent Luis from using her own untainted funds, *i.e.,* funds not connected with the crime, to hire counsel to defend her in her criminal case." *Id.* at 9. This passage does not say that the defendant needed to use the untainted assets to hire counsel, only that the order "prevented her from doing so." Therefore, based on the text of *Luis* itself, the Government is misconstruing the language referring to "need."

The Government's interpretation of the "needed to retain counsel" language in *Luis*, which was apparently a stipulated, not litigated, fact in that case, as requiring a defendant to make a detailed showing of need, would require that defendants reveal to the Government all of their assets at the very outset of the case as well as the legal fees being charged. And, as we have shown herein, federal courts have routinely ordered the release of *lis pendens* found to violate state law with no showing of need. A detailed showing of need by an indicted person needing to retain counsel, particularly at the very outset of a case with counsel who have only appeared "temporarily" and are not thoroughly familiar with all of the issues and nuances which inherently surround such a detailed showing of finances to the prosecution, should not be an engrafted, substitute excuse permitting the Government to restrain substitute assets it cannot otherwise legally do.



<u>**CONCLUSION**</u>

The Government had no authority under either federal or Florida law for having filed the notice of *lis pendens* in this case. Because these substitute assets are "innocent" and have no connection to the underlying charges, the *lis pendens* must be lifted.

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 679-5700
Facsimile: (305) 679-5710

By:    */s/ Edward R. Shohat*
       Edward R. Shohat
       Florida Bar No. 152634
       eshohat@joneswalker.com
       *for Defendant Rivera*

**MARKUS/MOSS** PLLC
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:    /s/ David Oscar Markus
       David Oscar Markus
       dmarkus@markuslaw.com

       /s/ A. Margot Moss
       A. Margot Moss
       mmoss@markuslaw.com
       *for Defendant Nuhfer*