**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-20552-CR-MD**

**UNITED STATES OF AMERICA**

**vs.**

**DAVID RIVERA and**
**ESTHER NUHFER,**

     **Defendants.**

_____/

**GOVERNMENT'S PETITION FOR COURT AUTHORIZATION TO PRODUCE**
**DOCUMENTS IN RESPONSE TO SUBPOENA ISSUED IN PENDING CIVIL CASE**

**Introduction**

The United States of America, by and through the undersigned attorneys, is submitting this petition to request that this Court authorize the government to produce documents responsive to a subpoena issued in a federal civil case pending in the Southern District of New York.

Specifically, the United States Attorney's Office for the Southern District of Florida ("USAO-SDFL") has been served with a subpoena issued by PDV USA, Inc. ("PDV USA"), in the matter of PDV USA v. Interamerican Consulting, Inc., Case No. 20-Civ-3699-JGK (the "SDNY civil case").  The subpoena, and related Touhy request, requires the government to produce documents that it obtained during the course of its investigation to the extent that (1) the documents are referenced in the initial Indictment returned in this case and (2) copies of the documents were previously provided by the government to David Rivera ("Rivera") and Esther Nuhfer ("Nuhfer") in discovery in this matter.   The documents the government intends to produce include emails, text messages, and chat conversations involving Rivera, Nuhfer, and several third-parties concerning the events described in the pending Superseding Indictment.

Although the government believes it is obligated to produce documents obtained during its investigation to comply with the PDV USA subpoena and <u>Touhy</u> request, Rivera's and Nuhfer's attorneys in the pending criminal case have objected to the government's intended production. Their objections include that the government's intended production would implicate grand jury secrecy concerns and would violate the terms of the post-Indictment Protective Order entered by this Court.   Accordingly, the government is submitting this motion seeking authorization to comply with the PDV USA subpoena.

**Factual Background**

**A.**     **Summary of the Pending Charges**

On November 16, 2022, a grand jury sitting in this district returned an indictment charging Rivera and Nuhfer with conspiracy to violate the Foreign Agents Registration Act ("FARA"), in violation of 18 U.S.C. § 371, a substantive FARA count, in violation of 22 U.S.C. § 612(a) and 618(a)(1), money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and five substantive counts of money laundering, in violation of 18 U.S.C. § 1957.

On December 14, 2023, a separate grand jury sitting in this district returned a Superseding Indictment that added several counts of tax-related charges against Rivera concerning his filing of false personal and corporate tax returns for tax years 2017 and 2018, in violation of 26 U.S.C. §§ 7201 & 7206(1).   The FARA related charges in the Superseding Indictment are, with a few minor revisions, virtually identical to the initial Indictment returned in this matter.

The FARA charges in the Superseding Indictment allege that Rivera and Nuhfer failed to register with the Attorney General of the United States as foreign agents acting on behalf of the Venezuelan government in connection with their efforts in 2017 and 2018 to, in part, lobby United

States government officials to normalize relations between the United States and Venezuela.

To compensate Rivera and Nuhfer for these efforts, PDV USA, a wholly owned U.S. subsidiary of Petroleos de Venezuela, S.A. ("PDVSA"), the state-owned oil company of Venezuela, entered into a consulting contract with Interamerican Consulting, Inc. ("Interamerican Consulting"), a Florida corporation controlled by Rivera.   The signed consulting contract between Interamerican Consulting and PDV USA, dated March 21, 2017 (the "Interamerican Consulting contract"), provided for five installment payments of $5 million each and a final payment of $25 million to be made before June 15, 2017, for a total of $50 million.   According to the Superseding Indictment, executives with the CITGO Petroleum Corp. ("CITGO"), PDVSA's primary operating subsidiary in the United States, were ordered by members of the Venezuelan government to enter into the contract with Rivera's company (effectuated through PDV USA, a non-operating entity).

Rivera, through Interamerican Consulting, ultimately received a total of $15 million from PDV USA in the spring of 2017 and an additional $5 million in October 2017 from a PDVSA bank account at Gazprom Bank (a Russian entity) pursuant to the Interamerican Consulting contract. Over time, Rivera distributed these funds between himself and several other individuals involved in their lobbying efforts including, but not limited to, Nuhfer and Raul Gorrin ("Gorrin"), a Venezuelan citizen who was instrumental in securing the $50 million contract.

B.     **Pre-Arraignment Forfeiture Litigation**

In December 2022, Rivera and Nuhfer made their initial appearances in this matter and were released on bond.  Starting in February 2023, the parties engaged in extensive litigation relating to certain forfeiture matters including, in part, whether three properties listed as substitute assets in the initial Indictment were actually traceable proceeds of the charged offenses.

During the forfeiture litigation, the defendants made several discovery demands of the government invoking both Rule 16 of the Federal Rules of Criminal Procedure and the government's Brady obligations.   To produce the discovery requested by the defendants, the government filed an unopposed motion requesting that the Court enter an agreed upon Protective Order concerning the government's discovery production (DE 94).   The government's motion noted that the discovery would include "sensitive private financial information of individuals and entities, as well as personal identifying information of the defendants and other non-party individuals" including for example "bank account numbers, social security numbers, birthdates, phone numbers, signatures, and residential addresses of various entities and individuals" (DE 94 at ¶ 5).

On August 9, 2023, the Court granted the government's motion.   The Protective Order entered by the Court authorized the government to disclose to the defendants material in its possession that the government believed contained "sensitive information" in order to expedite the forfeiture litigation (DE 95).   It also placed certain restrictions on the defendants' ability to disseminate such materials.   These restrictions include requiring defense counsel to hold the discovery materials in "strict confidence;" allowing defense counsel to disclose the discovery to their clients, office staff, and certain other specified individuals but only to the extent counsel believes it necessary to assist in the defense; providing a copy of the Protective Order to anyone to whom discovery is disclosed; and agreeing to destroy or return the discovery to the government at the conclusion of the case.   The Protective Order further notes that nothing in the order precludes the parties from presenting redacted versions of the documents to witnesses or offering

such documents as exhibits at trial.[1]

Thereafter, the government made several discovery productions in August and September 2023. The materials provided to the defendants included, in part, financial records consisting of bank account and other records, business records, and a number of Excel spreadsheets and charts prepared by the government's forensic accountants as part of its tracing analysis.

In particular, on September 1, 2023, the government made its third discovery production to the defendants, which consisted of a substantial number of emails, text messages, and chat conversations from 2017 involving Rivera, Nuhfer, and others. The government produced these materials – most of which were obtained by the government through search warrants and its border search authority – to the defendants because they relate to an issue that had arisen in the forfeiture litigation concerning a $3.75 million payment Nuhfer's company, Communication Solutions, Inc. ("Communication Solutions"), received from one of Gorrin's Swiss bank accounts in May 2017. See also *United States Reply in Support of Ex Parte Application for Second Post-Indictment Protective Order Pursuant to 21 U.S.C. § 853(e)* at pp. 18-20 (DE 166) (describing the relevancy of these matters to the forfeiture litigation).

**C.     The SDNY Civil Case and PDV USA Subpoena**

In May 2020, PDV USA filed the SDNY civil case against Interamerican Consulting (but not Rivera personally) seeking to recover the $15 million it had paid to Interamerican Consulting. PDV USA's pleadings allege several causes of action including breach of contract for Rivera's failure to fulfill certain terms of the Interamerican Consulting contract and unjust enrichment based

---

1 To date, the defendants have not produced any discovery to the government and the Protective Order does not place any reciprocal discovery obligations on the government.

on PDV USA's assertion that the contract was in effect a sham based on various assertions Rivera had made in the press as to the contract's purpose.

Interamerican Consulting has denied PDV USA's claims in the litigation and has filed a counterclaim against PDV USA seeking the $30 million it claims it is still owed under the consulting contract.   Its position appears to be that Rivera fulfilled his company's contractual obligations to provide CITGO executives who were opposed to the Maduro regime with advice as to how CITGO could improve its public image in the United States in return for which he was to receive $50 million.

It is the government's understanding that during the course of the civil discovery, Interamerican Consulting did not produce a significant portion if not all of the emails and text messages involving the defendants that are quoted or otherwise referred to in the Superseding Indictment.   As a result, PDV USA has pursued the matter by both requesting that the magistrate judge in the SDNY civil case issue an order compelling Interamerican Consulting to produce what the parties referred to as the "Missing Documents" or "Indictment Documents" (the emails and text messages described in the Superseding Indictment).   It also filed a subpoena enforcement action against Rivera in the Southern District of Florida to compel him to comply with a subpoena previously issued to him by PDV USA.   In the subpoena action, PDV USA has asserted that, as a result of the government's discovery production to the defendants in the forfeiture litigation, Rivera was now in possession of at least some of "Missing Documents" that are responsive to the subpoena he received.   The subpoena enforcement action remains pending before Magistrate Judge Louis.   See PDV USA v. Rivera, 24-MC-20456-Damian/Louis.

PDV USA has also served a subpoena and Touhy request on the USAO-SDFL to obtain

copies of certain documents in the government's possession.   The subpoena requires the government to produce "Documents quoted, referenced, and/or cited in the [initial] Indictment that were produced by the government to David Rivera and/or Esther Nuhfer."   PDV USA's <u>Touhy</u> letter mirrors the subpoena and requests the government to provide PDV USA with the "Indictment Documents" involving communications with Rivera and Nuhfer that PDV USA asserts are "directly relevant" to PDV USA's claims and defenses in the SDNY civil action.

In consultation with one of the USAO-SDFL's <u>Touhy</u> coordinators, the undersigned prosecutors consulted the Department of Justice's <u>Touhy</u> regulations that set forth the procedures the government employs to assess its obligation to produce materials responsive to a subpoena or request for information.   Included within those regulations are various factors for the government to consider as part of its <u>Touhy</u> response.   <u>See</u> 28 C.F.R. § 16.26 (listing factors for the government to consider including, in part, the rules of procedure governing the case in which the demand arose; relevant substantive law of privilege; and whether disclosure would violate a statute or rule of procedure (such as grand jury secrecy), reveal classified information, interfere with law enforcement proceedings, or improperly reveal trade secrets without the owner's consent).   After considering the various <u>Touhy</u> factors, the government determined that production of the documents responsive to the PDV USA subpoena would be appropriate under the specific circumstances of the instant matter.

Thereafter, the government notified the attorneys involved in the SDNY civil case and Rivera's and Nuhfer's criminal attorneys of its intent to produce materials responsive to the PDV USA subpoena.   The government subsequently provided copies of the specific documents it intended to produce (a subset of the documents the government had previously provided in

discovery) to Rivera's and Nuhfer's criminal attorneys.   To date, the attorneys representing Interamerican Consulting in the SDNY civil case have represented in two court filings that Interamerican Consulting has no objection to the government producing documents pursuant to the PDV USA subpoena.   Rivera and Nuhfer, however, through their criminal attorneys, have objected to the government's intended production asserting, among other things, that the government's "voluntary" production of such material would implicate grand jury secrecy rules and violate the Protective Order issued in the criminal case.

<u>**Legal Analysis**</u>

**A.      Grand Jury Secrecy**

It is the government's belief that the production of materials responsive to the PDV USA subpoena would not implicate the rules regarding grand jury secrecy.   The intended production, for instance, does not include any transcripts of witness testimony, copies of marked exhibits presented to the grand jury, or copies of any grand jury subpoenas.   Rather, the government's production would consist exclusively of documents the government obtained from various parties during its investigation.   Moreover, the overwhelming majority of the responsive documents are materials the government obtained through search warrants and other means that did not involve the issuance of grand jury subpoenas.   Accordingly, the documents the government intends to produce are not "matters occurring before the grand jury" under relevant case law.

The secrecy provisions concerning grand jury proceedings are set forth at Fed. R. Crim. P. 6(e).   In pertinent part, Rule 6(e) provides that certain categories of persons participating directly in grand jury proceedings (including, in part, the grand jurors, interpreters, court reporters, and persons who transcribe recorded testimony) "must not disclose a matter occurring before the grand

jury." Rule 6(e)(2)(B). Included among the persons prohibited from disclosing matters occurring before the grand jury are "attorney[s] for the government." Rule 6(e)(2)(B)(vi).

"No obligation of secrecy," however, "may be imposed on any person" that does not fall within the categories of persons named in Rule 6(e)(2)(B). Rule 6(e)(2)(A). See also In re Graphics Processing Units Antitrust Litigation, 2007 WL 2127577 at *2 (N.D. Cal. 2007) (noting that secrecy obligations are not imposed on defendants because they are not included on the Rule 6(e)(2)(B) list); Absolute Activist Value Master Fund Ltd. v. Devine, 2016 WL 11784297 at *11-12 (M.D. Fla. 2016) (finding that grand jury secrecy obligations applied to neither Swiss prosecutors who received materials from DOJ personnel nor plaintiffs who then received the materials from the Swiss prosecutors).[2]

Although the "secrecy of grand jury proceedings is sacrosanct," it is not without its limits. United States v. Phillips, 843 F.2d 438, 441 (11th Cir. 1988). Rule 6(e)(3), for instance, provides for a number of exceptions to grand jury secrecy, including instances in which the court may authorize disclosure . . . of a grand-jury matter . . . preliminary to or in connection with a judicial proceeding." Rule 6(e)(3)(E)(i); see also Douglas, 441 U.S. at 218-24 (setting forth the general test that a private party seeking grand jury material (transcripts) under Rule 6(e)(3)(E)(i) must show a compelling need for the particular items it is seeking that outweighs the need for continued

---

2 Rule 6(e) codifies the traditional rule of grand jury secrecy. United States v. Pitch, 953 F.3d 1226, 1229 (11th Cir. 2020). Grand jury secrecy serves a number of interests including (1) encouraging witnesses to come forward and testify freely and honestly; (2) minimizing the risks that prospective defendants will flee or use corrupt means to thwart investigations; (3) safeguarding the grand jurors themselves and the proceedings from extraneous pressures and influences; and (4) protecting accused persons who are ultimately exonerated from unfavorable publicity. See Douglas Oil Co. of Cal. v. Petrol Stops Northwest, 441 U.S. 211, 219 (1979).

secrecy of the grand jury matters under the given circumstances).

At first blush, it is not clear how the present circumstances implicate any concerns regarding grand jury secrecy.   This case has already been indicted twice in this district, the charges are known to the public, and the defendants have been released on bond.   The responsive materials do not include grand jury materials such as transcripts of witness testimony or copies of marked exhibits that were presented for review by the grand jury.   Instead, the documents the government intends to produce were independently created by various parties for reasons other than presentation to the grand jury, their existence has been disclosed through the references and quotations to them in the Superseding Indictment, and copies of the documents have already been provided to the defendants.   There is simply nothing about the production of the limited number of documents responsive to the PDV USA subpoena that would reveal anything that transpired before the grand jury.

The cases addressing what constitutes "a matter occurring before the grand jury" are instructive.  Because Rule 6(e) does not define "a matter occurring before the grand jury" a number of courts have held that documents obtained through the issuance of grand jury subpoenas are not in and of themselves "matters occurring before the grand jury."   Rather, as the Eleventh Circuit explained in Phillips, "only documents that reveal some secret aspect of the grand jury investigation should be subject to the restrictions of Rule 6(e)."   Phillips, 843 F.2d at 441. Where the documents do not reveal "the pattern of the grand jury investigation or the deliberations of the grand jury," they simply are not subject to Rule 6(e)'s secrecy requirements.   Id. (holding that release of business records obtained by grand jury subpoena to IRS civil investigators did not compromise the secrecy of the grand jury proceedings and therefore were not matters occurring

10

before the grand jury).

Other Circuits have also adopted this reasoning.   For example, the Second Circuit has held that bank records subpoenaed by the grand jury and later turned over to the IRS pursuant to a civil trial subpoena were not matters occurring before the grand jury because the records "were sought for their own sake and not to learn what took place before the grand jury and clearly did not compromise the secrecy of the grand jury's deliberations."   DiLeo v. Commissioner of Internal Revenue, 959 F.2d 16, 18-20 (2nd Cir. 1992) (noting that the IRS knew of the grand jury's possession of the financial records because the publicly-filed indictment described the relevant banking information including, in part, the bank names, account numbers, and locations); see also In re Special March 1981 Grand Jury, Almond Pharmacy, Inc., 753 F.2d 575, 578-80 (7th Cir. 1985) (holding that medical and financial records obtained by subpoena were not subject to grand jury secrecy requirements because "matters occurring before the grand jury do not include every document of which the grand jury happens to have custody. If a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release"); United States v. Dynavac, Inc., 6 F.3d 1407, 1412 (9th Cir. 1993) (holding that business records in the possession of the grand jury were not subject to grand jury secrecy as "matters occurring before the grand jury" because "the disclosure of business records independently generated and sought for legitimate purposes, would not seriously compromise the secrecy of the grand jury's deliberations").

This is true even where subpoenaed documents were reviewed by the grand jury.   "The mere fact that a particular document is reviewed by a grand jury does not convert it into a 'matter

occurring before the grand jury' within the meaning of 6(e)."   <u>In re Grand Jury Investigation</u>, 630

F.2d 996, 1000 (3d Cir. 1980) (holding that access to business records pursuant to civil subpoena

should not be denied merely "because a grand jury had reviewed the documents in an unrelated

matter"); <u>Alexander v. F.B.I.</u>, 186 F.R.D. 102, 108 (D.D.C. 1998) (holding that "documents are

not cloaked with secrecy merely because they are presented to a grand jury" and that documents

"generated independently of grand jury investigations typically are more likely to fall outside the

framework of the protections afforded by Rule 6(e) than those generated explicitly for grand jury

proceedings"); <u>Federal Election Comm'n v. Rivera</u>, 333 F.R.D. 282, 288 (S.D. Fla. 2019) (noting

that "when documents are sought for their own intrinsic value – rather than to learn what took

place before the grand jury – secrecy cannot be premised merely on the fact that the same

information was revealed to or considered by a grand jury").[3]

Here, the government's intended production is limited to emails, text messages, and chat

conversations from 2017 that involve the defendants and other third parties regarding the subject

matter of the Superseding Indictment.   For the most part, these items include communications the

government obtained through search warrants and other means and there are only a handful of

responsive documents that the government received pursuant to subpoena.   None of the

documents, however, were prepared in contemplation of the grand jury proceedings and none of

them on their face reflect any secret aspects of what occurred in the grand jury room or the

---

3 In <u>Federal Election Comm'n v. Rivera</u>, the FEC filed a Rule 6(e)(3)(E)(i) petition requesting court authorization for access to several categories of materials in the government's possession including grand jury transcripts.   In granting the petition, the Court noted that the FEC had made a strong argument that certain documentary materials (such as business and other records) sought by the FEC were not "matters occurring before the grand jury" for the same reasons as described herein.   <u>Id.</u> at 287-88.   Neither the government nor the defendant (the same Rivera as in the present matter) objected to the FEC's petition.

investigation itself.

The government notes that it did make copies of some of these documents and mark them as exhibits for the grand jury to review, but the government has not provided to the defendants (and does not intend to produce) copies of the marked exhibits presented to the grand jury.   Rather, consistent with the above-described legal principles, the government's intended production would consist of copies of the original documents that the government obtained during its investigation and would not on their face indicate whether they were or were not presented to the grand jury as marked exhibits.   See United States v. Interstate Dress Carriers, Inc., 280 F.2d 52, 54 (2d Cir. 1960) (holding that when data "is sought for its own sake – for its intrinsic value in furtherance of a lawful investigation – rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same document had been, or was presently being, examined by a grand jury).[4]

**B.      Protective Order**

The government submits that the Protective Order in the criminal case does not prohibit its compliance with the PDV USA subpoena for the reasons set forth below.

### (1)      The Protective Order By Its Express Terms Does Not Prohibit the Government's Production of Documents Responsive to the PDV USA Subpoena

Any claim that the Protective Order prohibits the government from producing documents to comply with the PDV USA subpoena is misplaced.   None of the documents at issue in the present application are materials that the government obtained from the defendants through the

---

[4] To the extent the Court believes an examination of the government's intended discovery production would be helpful or necessary to the Court's decision, the government will file copies with the Court under seal.

discovery process in the criminal case.   Indeed, the responsive documents are a subset of the materials the government provided <u>to</u> the defendants in the forfeiture discovery, all of which the government obtained during its investigation through a variety of means.

Due to the fact that the government's intended discovery production in the forfeiture litigation involved a voluminous number of financial and other records containing "sensitive" information – such as bank account numbers, social security numbers, dates of birth, and the like – the government filed its unopposed motion for a Protective Order before it produced any discovery to the defendants.   In its motion, the government asked the Court to essentially enter a blanket (or umbrella) protective order under Fed. R. Crim. P. 16(d).   Pursuant to that Order, the defendants agreed that they and their attorneys would treat the discovery provided by the government as confidential, thereby avoiding any preliminary and time-consuming document by document showing of good cause.   The government's proposed Protective Order was not unusual and is in fact consistent with district practice in cases involving extensive discovery productions.

The purpose of such Protective Orders is straightforward enough.   It allows for litigation to proceed efficiently in cases involving voluminous discovery while at the same time protecting against the inappropriate dissemination of sensitive information.   It is not intended to create any substantive rights of privilege or confidentiality that are not otherwise recognized by law.   As such, the Protective Order limits defense counsels' discretion to provide copies of the discovery to their clients and other specified persons by restricting their ability to do so to instances where defense counsel believes it necessary to assist in the defense.   Indeed, without a Protective Order in place, defense counsel and their clients would have the discretion to disseminate the financial and personal identifying information contained in the discovery in any otherwise lawful manner

14

they saw fit.

There are also a number of things the Protective Order does not do.  It does not, for instance, impose any reciprocal discovery obligations on the government and it does not restrict in any way the government's ability to use or disseminate documents the government obtained during its investigation.   Nor for that matter does it address the dissemination or use of materials that the defendants have in their possession that were obtained outside of the discovery productions made to them by the government.   There is simply nothing in the Protective Order that limits the parties' lawful use of documents that came into their possession outside the discovery process in the criminal case or that would prevent the production of such documents in response to a valid subpoena or court order.

Here, the PDV USA subpoena issued to the government is limited in scope.   It does not call for the production of any and all documents and materials in the government's possession that were gathered during the investigation of these matters.   Instead, the subpoena is narrowly drafted to include only a subset of such materials.   It requires only the production of documents that the government has in its possession that (1) were referenced, quoted, and/or cited in the initial Indictment and (2) copies of which were produced by the government to the defendants in discovery.   As such, it avoids issues that would inevitably arise in response to a more broadly drafted subpoena such as assertions of privilege by the government on grounds such as attorney work product, deliberative process, and law enforcement privilege.   Viewed in this light – that the PDV USA subpoena only requires the production of documents that the government obtained outside of the discovery undertaken in the criminal case – it is clear that the Protective Order has no bearing on the government's obligation to appropriately respond to the PDV USA subpoena.

Finally, the government notes that PDV USA and Interamerican Consulting agreed to a Stipulated Confidentiality Order regarding discovery in the SDNY civil case (the "SDNY Confidentiality Order").   See SDNY civil case (Case No. 20-Civ-3699-JGK) at DE 55.   The SDNY Confidentiality Order is, in general, similar to the Protective Order in the criminal case, and acknowledges that the exchange of discovery in that proceeding would include "personal data . . . or otherwise sensitive information for which special protection from public disclosure and from use for any purpose other than prosecuting or defending this Litigation is warranted" (SDNY civil case DE 55 at p. 1).   It further broadly defines the term "Confidential Information" to include "non-public commercial, financial, or personal information, the public disclosure of which is either restricted by law or would likely, in the good faith judgment of the producing party, be detrimental to the conduct of that party's business, commercial, financial, or personal interests or cause the producing party to violate his, her, or its privacy or confidentiality obligations to other" and provides a mechanism for productions made by third-parties to be treated as "Confidential Information" in that litigation.   Id. at pp. 3-4.

The government assumes that neither party to the SDNY civil case would attempt to claim that the "sensitive" information encompassed within the Protective Order in the criminal case – financial and other personal identifying information – does not constitute "Confidential Information" for purposes of the SDNY civil case.   For the most part, the documents the government intends to produce would contain sensitive information predominantly consisting of telephone numbers and email addresses and to a lesser extent bank account and other personal identifying information (including photos of the passports of the defendants).   The government expects that the parties in the SDNY civil case would treat the government's production as such

and this Court could presumably further order that any documents produced in compliance with the PDV USA subpoena be used only for purposes of that litigation and not be disseminated for any other purpose.[5]

**(2)    The Protective Order Does Not Place the Discovery Provided
To the Defendants Beyond the Reach of a Third-Party Subpoena**

To the extent the Protective Order has any relevance to the production required by the PDV USA subpoena, the case law regarding such confidentiality orders reinforces the government's position as set forth above.

Here, the Court entered the agreed-upon Protective Order pursuant to Fed. R. Crim. P. 16(d).   In pertinent part, Rule 16(d)(1) provides that at "any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."   Pursuant to that authority, courts in this district and others regularly enter protective orders regulating a defendant's and his counsel's dissemination and use of discovery materials provided to them by the government.   See generally Alderman v. United States, 394 U.S. 165, 185 (1969) (stating that a trial court "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the material which they may be entitled to inspect"); United States v. Carriles, 654 F.Supp.2d 557, 565-66 (W.D. Tex. 2009).

Most of the litigation concerning the scope of protective orders, whether issued in criminal or civil cases, has centered around efforts by news or media organizations seeking to intervene in

---

5 Rule 45 of the Federal Rules of Civil Procedure provides protections to third parties – such as the government who is not a party to the SDNY civil case – who receive a subpoena on various grounds including "undue burden."   As the present subpoena relates to a somewhat limited amount of material that the government has already produced copies of to the defendants, the government is not asserting claims under Rule 45 to avoid production in this specific instance.

17

a pending criminal or civil case in order to obtain access to materials either filed under seal with the court or produced or exchanged between the parties in discovery.   Typically, these cases focus on whether documents filed under seal are considered "judicial records" to which there is a common law or First Amendment right of public access.   They further generally hold that documents or materials exchanged between the parties or created in discovery (such as deposition transcripts) but not filed with the court are not "judicial records" subject to a common law or First Amendment right of public access.   In this context, the Eleventh Circuit has stated that "[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation" and that "is why parties regularly agree, and courts often order, that discovery information will remain private." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (denying a newspaper's petition to intervene to gain access to a bill of particulars and notice of similar acts evidence filed under seal because the documents were essentially "discovery" related filings).

Because these cases turn on common law and First Amendment rights of public access to judicial records, they are of limited relevance to other instances involving efforts to compel production of discovery materials through subpoena.   Certainly, in the grand jury context, it is clear in the Eleventh Circuit that a protective order entered in a civil case must yield to a grand jury subpoena compelling production of discovery materials created or produced in the civil case. In re Grand Jury Proceedings, 995 F.2d 1013, 1015-20 (11th Cir. 1993) (adopting a *per se* rule that a protective order in a civil case must yield to a grand jury subpoena).   Moreover, the Eleventh Circuit's decision follows the majority position across circuits that a grand jury subpoena will generally be enforced despite the existence of a protective order.   In re Grand Jury, 286 F.3d 153,

157-65 (3rd Cir. 2002) (reviewing the various circuit court approaches to this issue and adopting a strong presumption of enforcing grand jury subpoenas that may only be overcome in rare cases of compelling public interest favoring enforcement of a protective order).

To date, the government's research has found less in the way of relevant authority concerning civil subpoenas.  However, Magistrate Judge Garber previously addressed a similar issue in <u>United States v. Fiorentino</u>, 2014 WL 1877411 (S.D. Fla. 2014).  There, after the defendant's indictment, the plaintiff in a related civil case served the defendant with a discovery demand for copies of the Rule 16 discovery provided by the government to the defendant in his criminal case.  The defendant then moved for a protective order in the federal criminal case seeking to preclude the production of the Rule 16 discovery in response to the plaintiff's discovery demand.  The defendant asserted a variety of grounds for the entry of a protective order – including that discovery is a private process, his right to a fair trial would be placed in peril, the privacy rights of third parties would be put at risk, and disclosure would interfere with an ongoing grand jury investigation and his ability to defend himself in the criminal case – all of which were rejected by Judge Garber who denied the motion for a protective order.   2014 WL at **2-4.[6]

<u>Fiorentino</u> was obviously decided in a somewhat different context in that a protective order was not already in place.  Yet, it illustrates the principle that discovery produced by the government in a criminal proceeding is not *per se* immune from disclosure in relation to other proceedings through discovery demands or subpoenas issued by third-parties. <u>See also</u> <u>Ramb v. Paramatma</u>, 2021 WL 5029432 at *2 (N.D. Ga. 2021) (finding that the defendant's summary

---

6 The government in <u>Fiorentino</u> opposed the defendant's motion for a protective order. <u>See</u> <u>Fiorentino</u>, Case No. 14-20025-Cr-Martinez (DE 37).

citation to rules of criminal procedure and evidence – including Fed. R. Crim. P. Rule 6(e) – were insufficient to defeat plaintiff's discovery demand for Rule 16 discovery "materials previously produced and exchanged during the criminal prosecution of the defendant").   Rather, Judge Garber looked to the defendant's underlying bases for seeking a protective order – such as assertions of grand jury secrecy – to conclude that entry of a protective order was not appropriate under the circumstances of that proceeding.

Judge Garber's approach is to the government's understanding consistent with the operation of blanket protective orders in general.   Such orders essentially allow for discovery to proceed in an efficient manner by deferring to a later date any potential challenges to the confidentiality of particular materials produced or created in discovery. Where, as here, there are no discernible reasons that the responsive material should remain confidential – such as grand jury secrecy or national security concerns – then any protective order should yield to a legitimately issued subpoena or court order.

**Certification Pursuant to Local Rule 88.9** – As noted previously at pages 8-9 herein, the government has conferred with counsel for Rivera and Nuhfer regarding this matter including providing them with a copy of the government's motion earlier today.   Rivera's and Nuhfer's counsel have informed the government that they oppose the government's motion and will file their formal response with the Court.

## **Conclusion**

For the foregoing reasons, the government respectfully requests that this Court issue an

Order authorizing the government to produce documents responsive to the PDV USA subpoena.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:    \_\_\_/s/ Harold E. Schimkat_____
Harold E. Schimkat
Daniel Bernstein
Assistant United States Attorneys
Court ID No. A5500567
Fla. Bar No. 0017973
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

21

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 18, 2024, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

                                                  /s/
                                                  Harold E. Schimkat
                                                  Assistant United States Attorney