UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-CR-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA,

v.

DAVID RIVERA, *et al.*,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTIONS TO TRAVEL INTERNATIONALLY

This cause comes before the Court on Defendant, David Rivera's motions to travel to Mexico and Venezuela. [D.E. 176; 177]. The Government responded to both motions. [D.E. 184; 190]. Defendant has replied. The motions, therefore, are ripe for disposition.[1] After careful review of the motions and relevant portions of the record, Defendant's motions are **DENIED**.

### I.  BACKGROUND

On November 16, 2022, Defendant was indicted (along with Esther Nuhfer) with conspiracy to violate the Foreign Agents Registration Act, money laundering conspiracy, and five substantive counts of money laundering. Additionally, on December 14, 2023, a grand jury returned a Superseding Indictment which added charges concerning Defendant's allegedly false personal and corporate tax returns for tax years 2017 and 2018. The Superseding Indictment also alleged that Defendant,

---

[1] On July 2, 2024, the Honorable Melissa Damian referred these matters to the Undersigned Magistrate Judge for disposition. [D.E. 183].

1

along with Defendant Nuhfer, failed to register with the Attorney General of the United States as foreign agents acting on behalf of the Venezuelan government in connection with their efforts to improve relations between the United States and Venezuela.

In compensation for those efforts, Defendant via his consulting operation was ostensibly owed five installment payments of $5,000,000.00 plus a final $25,000,000.00 payment from PDV USA, a wholly owned U.S. subsidiary of Petroleos de Venezuela, S.A. (the state-owned oil company of Venezuela). Ultimately, Defendant allegedly received $15,000,000.00 from PDV USA, some of which the Government claims he distributed to Defendant Nuhfer and Raul Gorrin, a Venezuelan businessman who allegedly assisted in procuring Defendant's contract with PDV USA. Mr. Gorrin was previously indicted by a grand jury in the Southern District of Florida in connection with a bribery scheme (Case No. 18-CR-80160) but is, to the Court's knowledge, residing in Venezuela.

In relation to these charges and supporting facts, Defendant's bond conditions include the surrender of his passport, a requirement that he seek employment, and specific travel restrictions (which do not permit Defendant to travel internationally). [D.E. 30].

## *II.     ANALYSIS*

Defendant now seeks the Court's permission to travel to Mexico and Venezuela. As to Mexico, Defendant seeks to consult a higher-learning institution. The institution is ostensibly seeking to "expand its international profile and alliances in the United States and is in discussion with Defendant Rivera to provide consulting services for this expansion." [D.E. 176 at ¶ 3]. Defendant argues that he must physically go to Mexico to pursue this work opportunity.

As for Venezuela, Defendant seeks to travel to consult certain political candidates for Venezuela's upcoming presidential election. Defendant contends that this work requires him to be "physically present in Venezuela periodically during the remainder of the campaign calendar." [D.E. 177 at ¶ 8]. In support, Defendant presents his purportedly long history of political activism in Venezuela and elsewhere. Further, Defendant contends that because this is paid consulting work, it would help him fulfill the bond requirement that he seek employment.

In response, the Government argues that, based on the nature of his charges, Defendant has substantial foreign ties that present a significant flight risk if Defendant is permitted to travel outside the United States. To that end, the Government points to property in Mexico that Defendant has admitted he owns, an offshore bank account in Mexico, and reported income from Mexican companies. This argument is paired with allegations in the indictments that Defendant has falsified financial records such as tax returns.

The Government also voices concern over Defendant's political history in Venezuela and his apparent connections to Mr. Gorrin who, the Government argues, is an important and influential businessman in Venezuela. If Defendant is permitted to travel to Venezuela, argues the Government, his political and business ties present a risk of flight. Additionally, the Government puts forth that, given the nature of Defendant's charges (i.e., that he is an unidentified agent of the Venezuelan government), it is further probable that travel to Venezuela renders him a flight risk.

Further, the Government asserts that Defendant fails to illustrate why he cannot find similar work in the United States. Plus, the Government argues, even if these consulting opportunities were truly Defendant's only options, Defendant could attempt to pursue the work remotely. Additionally, the Government expresses skepticism because Defendant does not adequately explain why his physical presence would be required in either Mexico or Venezuela, or what the specific nature of the services are such that his physical presence would be required.

We agree with the Government. Given Defendant's clear economic connections to Mexico—including property—we agree that permitting travel to Mexico significantly and unnecessarily increases the likelihood that Defendant may violate his bond. Additionally, as to Defendant's argument that this travel is required for his employment, the Government raises a salient point that Defendant can pursue similar work in the United States and/or could pursue consulting work remotely.

Further, pertinent to Defendant's charges is apparent payment received from the state-owned oil subsidiary of the Venezuelan government (PDV USA) for tens of

millions of dollars. Also pertinent to Defendant's charges is his ostensible relationship with Mr. Gorrin, who is portrayed as a wealthy Venezuelan businessman who has a working relationship with the Maduro regime. Given these facts, we are inclined to agree that permitting Defendant to travel to Venezuela for political purposes significantly and unnecessarily poses a serious risk of flight or otherwise opportunities to violate his bond conditions.

Thus, we find that Defendant's proposed travel plans, if permitted, would undermine the current bond conditions that reasonably assure his appearances. *See, e.g., United States v. Ellard*, No. 2:19-CR-28-SPC-MRM, 2021 WL 1790554, at *1 (M.D. Fla. May 5, 2021) (denying Defendant's motion to travel because, in light of the relevant facts, the requested travel would (*inter alia*) render Defendant a flight risk); *United States v. Pina-Nieves*, 535 F. Supp. 3d 86, 90 (D.P.R. 2021) (same)).

In other words, most defendants free on bond cannot freely travel outside the jurisdiction, especially to foreign places that have direct ties to the allegations that gave rise to the criminal charges filed against them. Defendant seeks to make an exception for himself here, but we find no good cause in this record to grant him such special privileges. That is especially the case where, assuming his employment opportunities are as they are presented at face value, modern technology allows him to engage in such opportunities without usurping his customary bond conditions. This Defendant should not be treated better or worse than anyone else. He can pursue his employment opportunities but within the confines of his current bond.

### *III.   CONCLUSION*

Accordingly, for the reasons set forth above and because the proposed modifications to Defendant's pretrial detention would unnecessarily increase the Defendant's risk of flight, and because he has not shown sufficient good cause to special exceptions, Defendant's motions [D.E. 176; 177] are **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida this 17th day of July, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge