UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 22-CR-20552-DPG-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | VOLUME I OF I |
| | ) | PAGES: 1 - 33 |
| PLAINTIFF(S), | ) | |
| | ) | |
| VS. | ) | DATE OF PROCEEDINGS: |
| | ) | JULY 28, 2023 |
| | ) | |
| | ) | COURTROOM #11-1 |
| DAVID RIVERA, | ) | WILKIE D. FERGUSON, JR. |
| ESTHER NUHFER, | ) | UNITED STATES |
| DEFENDANT(S). | ) | COURTHOUSE |

TRANSCRIPT OF DEFENSE MOTION TO VACATE PROCEEDINGS
BEFORE THE HONORABLE DARRIN GAYLES,
UNITED STATES DISTRICT JUDGE, AT
400 NORTH MIAMI AVENUE,
MIAMI, FLORIDA 33128.

**APPEARANCES**

FOR THE GOVERNMENT:      HAROLD E. SCHIMKAT, ESQ.,
                         NALINA SOMBUNTHAM, ESQ.,
                         JOSHUA PASTER, ESQ.
                         UNITED STATES ATTORNEY'S OFFICE
                         99 NE 4 STREET, 4TH FLOOR
                         MIAMI, FLORIDA 33132

FOR THE DEFENDANT(S):    EDWARD ROBERT SHOHAT, ESQ.,
DAVID RIVERA             DAVID WEINSTEIN, ESQ.,
                         NINA GARCIA, ESQ.
                         JONES WALKER, LLP
                         MIAMI CENTER
                         201 S. BISCAYNE BOULEVARD.
                         SUITE 3000
                         MIAMI, FLORIDA 33131

*Stenographically Reported By:*
*Quanincia S. Hill, RPR*
*Federal Official Court Reporter*
*400 North Miami Avenue*
*Miami, Florida  33128*

*Office No.:  (305)523-3634  E-mail:  Quanincia_hill@flsd.uscourts.gov*

```
FOR THE DEFENDANT(S):      DAVID OSCAR MARKUS, ESQ.,
ESTHER NUHFER                ANITA MARGOT MOSS, ESQ.
                             MARKUS/MOSS, PLLC
                             40 NW THIRD STREET
                             PENTHOUSE ONE
                             MIAMI, FLORIDA 33131
```

*Stenographically Reported By:*
*Quanincia S. Hill, RPR*
*Federal Official Court Reporter*
*400 North Miami Avenue*
*Miami, Florida  33128*

*Office No.:  (305)523-3634  E-mail:  Quanincia_hill@flsd.uscourts.gov*

| | |
|---|---|
| 1 | (Proceedings commencing at 10:00 a.m.) |
| 2 | **THE COURTROOM DEPUTY:**  Calling case number 22-20442, |
| 3 | criminal, the *United States of America versus David Rivera and* |
| 4 | *Esther Nuhfer*. |
| 5 | Counsel, please state your appearances beginning with |
| 6 | the Government. |
| 7 | **AUSA SCHIMKAT:**  Good morning, Your Honor.  Harry |
| 8 | Schimkat for the United States.  With me on asset forfeiture |
| 9 | matters are Nalina Sombuntham and Josh Paster. |
| 10 | **THE COURT:**  All right.  For the Defense. |
| 11 | **ATTORNEY SHOHAT:**  Good morning, Your Honor.  Ed Shohat, |
| 12 | David Weinstein and Nina Garcia, Jones Walker, LLP for David |
| 13 | Rivera.  Mr. Rivera is to my right in the courtroom. |
| 14 | **THE COURT:**  All right. |
| 15 | **ATTORNEY MARKUS:**  But not me.  I'm also to his right. |
| 16 | David Markus and Anita Margo Moss for Esther Nuhfer. |
| 17 | **ATTORNEY MOSS:**  Good morning. |
| 18 | **THE COURT:**  And is Ms. Nuhfer here? |
| 19 | **ATTORNEY MARKUS:**  Yes.  She's right here. |
| 20 | **THE COURT:**  All right.  We're here for -- pursuant to |
| 21 | the Defense motion.  Well, we received a defense motion to |
| 22 | vacate.  I was actually already setting this for a status.  In |
| 23 | any event, I had assumed that this was going to be an issue |
| 24 | that we have to discuss.  This is not the actual hearing on the |
| 25 | motion.  So -- but I want to discuss where we are.  And so why |

1  don't I hear first from the Defense since you filed the pending

2  motion.

3      **ATTORNEY SHOHAT:**  Well, it's pending -- there are two

4  motions pending before you right now, pleadings pending before

5  you:  The Government's objections to Judge Torres' order

6  granting our motion to lift the *lis pendens*, and our motion to

7  vacate the *ex parte* restraining order.

8      We have, in our motion to vacate the *ex parte*

9  restraining order, asked for an extension from the normal

10  14 days that we would have to respond, to 30 days on both the

11  Government's objections and is to the *ex parte* restraining

12  order.  The Government's filed a response on our motion to

13  vacate the *ex parte* restraining order.  And we wanted to get

14  from Your Honor their views on their response generally.  And

15  we filed two days ago a reply to that.

16      Now, Mr. Markus is travelling next week for a

17  sentencing out of town.  And we need an extension cause on the

18  objections to the to Judge Torres' order.  Those are the

19  matters that are currently pending before Your Honor.

20      **THE COURT:**  Okay.  So for the joint motion, so that's

21  now fully briefed, right?

22      **ATTORNEY MARKUS:**  What's fully briefed, Your Honor, is

23  the joint motion to vacate the protective order.

24      **THE COURT:**  Right.

25      **ATTORNEY MARKUS:**  And you can probably tell from our

1   pleading that we were upset about what happened in the

2   procedural, how the Government proceeded on those properties.

3        What had happened was we had litigated over the past

4   five months on this *lis pendens* issues what the Government

5   labelled in the indictment as substitute assets.  We win before

6   Judge Torres.  Judge Torres said you can't place the *lis*

7   *pendens* on substitute asset.  The Government then, on the same

8   properties, comes *ex parte* to this Court as we're discussing

9   with them how to proceed, instead of filing a normal motion and

10  letting us respond to it, they come *ex parte* and say, we can

11  now trace it only after they lost before Judge Torres.  We

12  thought that was wrong to do it that way.  And so what we're

13  asking the Court to do is give us an opportunity to respond to

14  their motion that they filed *ex parte*.  We believe they're

15  totally wrong on both the merits and how they're proceeding.

16  And so we'd just like an opportunity to respond to that motion

17  before the Court rules that those properties are restrained.

18       **THE COURT:**  So does it matter procedurally whether or

19  not, on the *ex parte* motion from the Government, does it matter

20  procedurally whether or not the Court's order granting the

21  motion is vacated and we start from square 1, or I take it up

22  essentially as a motion for reconsideration?

23       **ATTORNEY MARKUS:**  Well, I think we would prefer it to

24  be vacated for a couple reasons.  The Government thinks that

25  once there's an order in place, that we have extra hurdles that

1    we need to satisfy to get it vacated.   In other words, in the

2    normal case where they haven't litigated a *lis pendens* for five

3    months, where they haven't indicted these properties as

4    substitute assets, they may come to the Court and say, hey, *ex*

5    *parte*, we're concerned that the Defense may alienate these

6    properties, we need an *ex parte* order.

7            Once that's done, there are some cases, and we'll

8    dispute about whether this is necessary or not, but the

9    Government says the Defense then needs to show need to get

10   access to those properties.   They need to show that they need

11   that money or those assets for counsel.   We dispute that.   But

12   if the -- if the order's not in place, if we're just responding

13   in the normal course and we can show that they can't trace,

14   that they can't show that that money is traceable to the

15   offense, we wouldn't have to show a need.   The Court would just

16   side with us, in other words, and not grant a restraint.

17           So we believe the reason they went *ex parte* is because

18   they knew that if they got this order in place, there would be

19   extra hurdles that we would need to jump over to get access to

20   that proper.   And that's why we think it was wrong for them to

21   do it that way.

22           **THE COURT:**   All right.

23           **ATTORNEY SHOHAT:**   Let me add just one thing, if you

24   don't mind, Your Honor.

25           When they came to Your Honor *ex parte*, they relegated

```
 1    the whole litigation before Judge Torres to a single somewhat
 2    opaque footnote without laying out the details of five months
 3    of litigation and causing Judge Torres to enter a 23-page order
 4    which ultimately granted our motion to lift the lis pendens.
 5    It is simply wrong, respectfully, to proceed that way.  And
 6    important, and I think it's an important value in the criminal
 7    justice system that the Government not be allowed to get away
 8    with doing that.  They should have, first of all, as David
 9    alluded to, we were in the process of discussing how to proceed
10    with them on the lis pendens issue, and they weren't telling us
11    that at that very time they were going ex parte.  We had no
12    hint until we saw it that that's exactly what they did.
13         And it's simply wrong.  And the appropriate procedure
14    here would be not to recognize that -- that kind of proceeding
15    by the Government under these unique circumstances where these
16    very properties are being litigated.  And let us start by
17    treating their motion as a regular motion, not ex parte, and
18    allowing us to respond to it out right.
19         THE COURT:  So are you suggesting that this kind of
20    motion could not be submitted ex parte?
21         ATTORNEY SHOHAT:  No, Your Honor.  That's not what
22    we're suggesting.  We're suggesting in this particular
23    circumstances of this case, the fact that the statute
24    authorizes, under certain circumstances, the Government to
25    proceed ex parte, we recognize that.  But the -- but the basis
```

1   for that law is that there is some risk of alienation of the

2   properties that creates a interest of the Government to proceed

3   *ex parte* and get a restraining order.  There was no such risk

4   here.  And beyond that, these very properties were in

5   litigation, they had lost a motion.  And only after they lost

6   their effort to sustain the *lis pendens*, only then did they,

7   behind everybody's back, proceed *ex parte*, relegating the

8   motion before Your Honor, the *ex parte* motion, relegating all

9   that litigation to a footnote.  It's just not right.  And I

10  don't think the Court respectfully should countenance that

11  process.

12        When there was no risk of alienation of those

13  properties, zero, the *lis pendens* are in place.

14        **THE COURT:**  Okay.  Before I hear from the Government, I

15  do want to make sure we're all clear about one thing:  I was

16  fully aware of the litigation that occurred before Judge

17  Torres.  And I reviewed the report and recommendation and the

18  objections at the same time I reviewed the *ex parte* order --

19  the *ex parte* motion.  And again, I knew that we were ultimately

20  going to get to this point where we are going to be litigating

21  these issues because it was strongly contested those issues

22  about the *lis pendens* before Judge Torres.  Of course, the kind

23  of motion, the subject of the *ex parte* motion, as I understood

24  it, is something that can be handled *ex parte*.  The issue was

25  whether or not it should be handled *ex parte*.

1          And so the issue for the Court, I have -- I had

2    questions which I'm going to address with the Government today:

3    Do I further -- I didn't think it was appropriate for me to

4    then have *ex parte* communications with the Government to ask

5    those questions, especially under the circumstances.  So

6    having, at that time, found probable cause, I looked at the

7    assets at issue.  I thought it was better to proceed and then

8    come back and deal with the issue.

9          So I don't want anyone to have the impression that I

10   didn't understand what was going on.  I understood fully what

11   was going on.  But I knew that this was going to be an issue

12   that we were going to have to discuss again.

13        **ATTORNEY SHOHAT:**  Just so we're clear, Your Honor:  I

14   didn't mean to suggest that Your Honor wasn't fully aware of

15   what was going on for five months before Judge Torres.  What I

16   meant to suggest is the way the Government treated it in an *ex*

17   *parte* motion without fully explaining it and giving the Court

18   the opportunity at least to say, why are we proceeding *ex parte*

19   here, that's what seems strange to us.  And there was in my --

20   in our view, absolutely no reason, notwithstanding the fact

21   that the statute authorizing it.  Statutes authorize a lot of

22   things but that doesn't mean it's necessarily right to do it.

23   And it's not right to do it in this circumstance.

24        **THE COURT:**  Well, it did seem strange to me under the

25   circumstances.  And I turn to the Government now to explain why

 1   things were submitted in this fashion.  For example, when did

 2   you know that the -- what were formally designated as

 3   substitute assets were tainted assets?  I'd like to know when

 4   you realized that.  And if it was before Judge Torres issued

 5   his report, why -- whether you notified him.  And if you

 6   didn't, why not.

 7        So who would like to address those issues?

 8        **AUSA SOMBUNTHAM:**  Good morning, Your Honor.  Nalina

 9   Sombuntham on behalf of the United States.  I'll be addressing

10   these questions.

11        I think, on the Government's end, we fully anticipated

12   that there would be litigation and consternation from the

13   defendants.  And we tried to tee up this matter before the

14   Court in a way that was consistent with district practice and

15   to minimize litigation.  I don't know if we achieved that goal

16   standing here today but I wanted to get into it a little bit

17   first.

18        On the issue about -- and I want to make one thing

19   clear:  On the issue of filing it *ex parte* or filing it on the

20   docket, the challenge itself, the hurdles that Mr. Markus was

21   raising, would be there regardless.  Yesterday, and we did not

22   cite this in our response, but we did provide a citation to

23   defense counsel yesterday.  And it so happens that Mr. Shohat

24   was involved in litigation in 2011 in *United States versus*

25   *Steiner*.  It was a case indicted in 2008.  And the Government

1  sought protective orders for real property in that case.  And

2  Judge O'Sullivan, after hearing from all parties prior to the

3  restraint, ultimately concluded the same thing that we are

4  advocating here, a post-restraint challenge where defendants

5  would need to make a showing of need and convince the Court

6  that the *Barker* factors weigh in their favor to take this

7  challenge up prior to trial in the interest of due process

8  rather than just at trial.

9       And so no matter how it was presented to the Court, it

10  would still be the same litigation on the back end.  And so

11  rather than delay proceedings further in the light of Judge

12  Torres' orders and defense -- defendants' unwillingness to

13  pursue a stay, we presented an *ex parte* as a normal course.

14       I know Your Honor has reviewed many applications in the

15  past where we've asked for protective orders *ex parte*.  That

16  was the procedure that was in place in *Kaley*, in most recently

17  in the *Gosney* case, that was affirmed by the Eleventh Circuit

18  this year in February.  And so I think no matter how we present

19  it, we would end up in this space.

20       Understanding that there might be an issue, we included

21  in our application, not only the footnote but it's exhibit with

22  the entire order because we wanted to make sure that the Court

23  had everything before it, you know.  We know that you're aware

24  of the litigation.  But in case when you're reviewing this, it

25  wasn't front and center, we wanted to make sure that

1    application package was complete.

2         When we were able to finalize the package and submit

3    it, we also told counsel at that juncture that we were -- we

4    had changed our position.  And this goes to your question I

5    think Your Honor just asked, which is:  When did we know?

6    We've been always investigating these assets.  They appear on

7    the indictment because we're aware of the assets in the first

8    instance.  And that investigation, as Your Honor's aware from

9    the application itself and the tracing chart that we supplied

10   in support, that we also have given now to defense counsel,

11   which we requested to be able to do so in the actual second

12   protective order, that is a significant undertaking.  It takes

13   time.  It takes review of bank records and subsequent

14   investigation and everything else.

15        And so although we had been working towards that, I

16   think I can speak for all of us here on July 6th, July 7th, or

17   shortly after the July 4th holiday, we were caught a little bit

18   off guard that Judge Torres was going to issue the orders.  We

19   had been trying to finalize the package for grand jury

20   presentment.  And the truth is that we had not been able to do

21   so prior to Judge Torres' orders.  And I think, you know, if we

22   could have saved ourself that timeline, we would have

23   definitely done so.

24        **THE COURT:**  So I want to get back to you became aware

25   that these were tainted assets.  When did the Government --

1    when did agent come to you and say, we can trace the money from

2    these accounts to these properties?  When did that occur?

3        **AUSA SOMBUNTHAM:**  I mean, it's not as simple as that,

4    Your Honor.  So what happens is that we had to first identify

5    assets, and then we had commence tracing.  There was a healthy

6    suspicion based on how the bank accounts were that all the

7    assets that we had identified may be traceable to the charged

8    offenses.  I think you're aware of this is excess of

9    $20 million that were deposited into these accounts.  These

10   assets were either purchased or paid off during the timeframe

11   of the offense.  These are things that I think both defendants

12   and counsel are aware of as well as the United States.

13       It took -- we had to engage forensic accountants.  They

14   go through a trace, we look at the trace, we review it to make

15   sure it's a sound one.  I know we present for probable cause.

16   But we want to be able to show and substantiate that in a

17   detailed manner.  And so it took weeks of litigation, I mean

18   weeks of review while that litigation was going on.

19       And so I think fairly, probably towards end of May,

20   June, we were finalizing overall, and so at that time, and

21   again, it was not -- it was not actually final.  Up until the

22   submission of the *ex parte* package, the agent was still

23   reviewing evidence in support of probable cause.  We were still

24   that very week reviewing with the forensic accountants tracing.

25   And so we presented and we advised defense counsel of our

1    position when we were certain because in light of the fact that

2    if there -- if we weren't certain, I think we would still be in

3    this position where they would say that government counsel

4    indicated that assets were tainted when they were not.

5         And so I don't know if we would be in a different

6    position particularly.  It might be a different issue before

7    the Court.

8         And I think -- I think the other thing to recognize,

9    and we would support with Eleventh Circuit precedence in

10   *Bissell* in that the procedure that we are advocating for that

11   was set forth there in *Bissell* but also used in *Kaley* and

12   affirmed in *Gosney* is that there's no pretrial restraint

13   hearing.  And so even if we had filed and we had this

14   proceeding, we would still end up in the same position.  And so

15   the Congress -- I think, I think Mr. Shohat was going over what

16   the intent of *ex parte* was in the statute.  We reviewed that

17   very carefully as well.  And it's not only the dissipation of

18   assets, but there's a strong presumption that if there is

19   probable cause, restraint should be in place and only if there

20   are constitutional issues to implicate the Sixth Amendment or

21   the Fifth Amendment should there be a hearing.  So that is

22   always post restraint.  And *Bissell* makes that clear.  *Kaley*

23   makes that clear.  And *Gosney* makes that clear.  And that also

24   comports with the Supreme Court's holding in *Monsanto* where if

25   the Court finds probable cause, it should issue a restraining

1  order.

2  **THE COURT:**  I get all that.  But what you're telling me

3  is the Government was aware in May or June that the properties

4  that you designated as substitute assets were actually tainted

5  assets subject to -- subject to forfeiture.  And you let Judge

6  Torres -- well, you let litigation continue and you let Judge

7  Torres spend a lot of time taking up issues unnecessarily.

8  That's what it sounds like to me.

9  **AUSA SOMBUNTHAM:**  Your Honor, I'd like to make one

10 thing clear.  There are five assets that are being released.

11 There's two substitute real properties that's still subject to

12 litigation.  And I know you're distilling to the fact that we

13 were aware and made him do it.  That's not the case.  We very

14 much are aware of potential crimes, potential assets.  We do

15 the analysis.  It is the Government's burden to show probable

16 cause.  We take that very seriously.  And so we don't present

17 that publically to the grand jury, to Court until we're ready

18 to do so.

19      If we went on what we thought, it would be very

20 difficult for us -- we would have different issues before the

21 Court today about potential things we should have done versus

22 what we shouldn't have done.  So I have to weigh that and

23 balance.  We have -- we know the litigation's on going.  We

24 could have also thought at the same time once we complete the

25 analysis that we simply did not have it and we shouldn't be

1    pursuing this as tainted property.  And I don't know if --

2            **THE COURT:**  You do understand --

3        **AUSA SOMBUNTHAM:**  Yes.

4        **THE COURT:**  -- this reeks of gamesmanship.  The timing

5    couldn't have been worse.  You waited until Judge Torres ruled

6    on the substantive issues that had been pending for quite a

7    while and then you submit the *ex parte* order.  And it's not to

8    suggest that you could not submit the order *ex parte* or the

9    motion *ex parte*, generally, and whether or not there's actual

10   probable cause.  It seems like you're wasting the Court's time.

11   The Defense can speak for themselves about the time that they

12   feel that they've wasted.  But it seems like the Government

13   simply filed this because it lost, at least in the report and

14   recommendation, or the order, and I understand that's an issue

15   to be resolved as well.

16       **AUSA SOMBUNTHAM:**  Understood, Your Honor.  And I think

17   everyone at this table would wish that we could have presented

18   it in a different timeframe.  And again, I emphasize the

19   timeframe was in fact the one that we had to pursue under the

20   circumstances.

21           So if we could -- if we could have done things

22   differently, I think there might have been a different result.

23   We would have.  I think in this instance, no one wants to be

24   filing after the report and recommendation coming out.  I don't

25   think anyone at this table had intended it that way.  It just

1  simply went.  We were forced to finalize and present in light

2  of defense -- defendant's unwillingness to stay.

3       **THE COURT:**  So is there a danger?  I mean, we're

4  talking about real property.  I mean, if we -- we're not really

5  talking about assets that could be secreted quickly.

6       So I mean, Judge Torres' order, report and

7  recommendation, until I resolve the issue either adopting it or

8  not, I mean, they are still -- the *lis pendens* are still there.

9  So whether or not, you know, the order that I issued in place,

10  aren't they still restrained?

11      **AUSA SOMBUNTHAM:**  So they're subject to *lis pendens*.  I

12  think this is part of the communications that I outlined in our

13  response.  And anticipating the Court's concern, we put maybe a

14  fuller representation of our communications post Judge Torres'

15  order.  When Judge Torre's order was issued, they were titled

16  as orders.  And --

17      **THE COURT:**  I'm sorry.  I need you to answer my direct

18  question first --

19      **AUSA SOMBUNTHAM:**  Sorry.

20      **THE COURT:**  -- before you move on because I don't want

21  anything to get lost.

22      Aren't they restrained in any event, whether or not

23  that order I issued most recently is in place or not?

24      **AUSA SOMBUNTHAM:**  Well, they're not restrained.

25  They're subject to *lis pendens*.  And the question is whether or

1   not they're going to be sold or alienated somewhat.  That can

2   happen subject to *lis pendens*.  The defense counsel was asking

3   us to release the *lis pendens* after Judge Torres made his

4   order.

5        **THE COURT:**  There's an objection.  They're not final

6   until I rule on those.

7        **AUSA SOMBUNTHAM:**  Right.  So this is the issue that we

8   were part of the correspondence.  And I'm sorry to dive into

9   what I thought was an individual explanation is that when we

10  initially got the orders, we asked defense counsel if they're

11  willing to stay, because we were taking them as orders,

12  initially.  They did not agree to the stay.

13       There's a dispute amongst the parties whether you

14  really should be considering Judge Torres' rulings as orders

15  subject to Section 636(B)(1)(A) or a report and recommendation

16  under 636(B)(1)(B).  And what -- during the course of the week

17  that transpired between when Judge Torres' orders were entered

18  and the week that we sought probable cause determination from

19  the Court on the restraining order, we were putting together

20  the package as well as researching this issue about whether the

21  fairly, the report should be considered as an appeal or should

22  it be considered as an R and R.

23       So the question still remains as to whether the *lis*

24  *pendens* are valid because Judge Torres voided, as part of his

25  order, the *lis pendens*.  And so I understand defense counsel's

1   position that they were in communications with us and they may

2   not have been any risk; but their unwillingness to agree to a

3   stay and everything else that was going on.  And understanding

4   that already we were in a timeline that I think the Court has

5   called potential gamesmanship, we tried to as much as possible,

6   protect the Government's interest, set forth our basis for how

7   we're proceeding, make sure that the Court was alerted to the

8   fact that Judge Torres' orders were was in place, specifically

9   asked the Court in the second potential order to let us release

10  the application in full, including the tracing charts to

11  defense counsel, to tee up the challenge that we knew was going

12  to be coming.

13         **THE COURT:**  Did you ask Judge Torres for a stay of his

14  order if it is an order?

15         **AUSA SOMBUNTHAM:**  No.  So this was the conversation

16  that we were having overall was that we were asking about the

17  stay, and Judge Torres -- sorry.  We were asking about the stay

18  in terms of what their position was.  They said that, you know,

19  obviously a stay requires a showing that we would succeed on

20  the merits.  And I don't know standing here today that we will.

21  But I think we have arguments here that should persuade the

22  Court.  And so we decided that in the meantime when we knew

23  that these assets and we were able to put that package another,

24  that these three, again that's a delay further alerting

25  everybody here of the issue that they were tainted assets.  We

1    should do so.  And again, our position that they're tainted

2    assets, we can't make a probable cause presentation, and we

3    need to present that to the Court, the grand jury, the

4    magistrate.

5         So even if we thought it was, I think there would have

6    been a dispute about that as well.

7         **THE COURT:**  So what I'm trying to get from what you

8    just said is you're -- it seems like you're suggesting that if

9    I consider it a report and recommendation, the *lis pendens*

10   remains in place until I consider the objections to the report,

11   if it is a report; and then absent a stay issued by the Court,

12   then his order has removed the *lis pendens*.

13        **AUSA SOMBUNTHAM:**  Yes.

14        **THE COURT:**  Okay.  So my earlier question was whether

15   or not I had issued an order on your *ex parte* application for

16   second post indictment protective order.  My question was that:

17   Did -- was that necessary to restrain the assets?

18        **AUSA SOMBUNTHAM:**  Yes.

19        **THE COURT:**  And so your answer is what?  Maybe?

20        **AUSA SOMBUNTHAM:**  Yes.  It's a classic attorney answer.

21   It depends on what the Court views in Judge Torres' orders.

22        **THE COURT:**  Okay.  So as I understood it, you objected

23   to the 30 days that the Defense requested to respond to the

24   objections -- well, first, do you object to 30 days for them to

25   respond to the objections?

1      **AUSA SOMBUNTHAM:**  If needed, we don't object.  We just

2  had no reasonable explanation.  I think today Mr. Shohat

3  explained that Mr. Markus will be away next week.  I think that

4  should be fine.

5      It's a little unclear if they were running the 30 days

6  from the time of our filing the objections or if they're asking

7  for an additional 30 days, I think that's an issue.

8      **THE COURT:**  Okay.  Anything else before I turn back to

9  the Defense?

10      **AUSA SCHIMKAT:**  No, Your Honor.

11      **AUSA SOMBUNTHAM:**  No, Your Honor.

12      **ATTORNEY SHOHAT:**  Your Honor, first of all, regarding

13  the 30 days, we're asking for a total of 30 days, not another

14  30 days.  Instead of 14 days being the deadline, 30 days be the

15  deadline.

16      When they called us or contacted us to ask us whether

17  we would agree for a stay, to a stay, I took that as a prelude

18  to a motion for stay.  Would be agree to it?  And therefore, it

19  could be an unopposed motion for a stay of Judge Torres'

20  orders.  And of course we consulted and determined that that

21  would be inappropriate for us to do because we didn't believe

22  they could make the requisite showing of likelihood of success

23  on appeal, and as was communicated to the Court, that was the

24  position we gave the Government.

25      We anticipated that we would immediately get or shortly

1    get a motion for a stay.  At no time during that discussion did

2    they say they were contemplating or in the process of seeking

3    an *ex parte* restraining order.

4         Regarding the *lis pendens*, if they had asked us in the

5    discussion about a stay whether we would agree not to alienate

6    the properties until the litigation was final, 'yes' would have

7    been our answer.  And it's we want the Court to be very clear

8    today that we have no intention, until Your Honor enters a

9    final determination on Judge Torres' motion, to take any action

10    with respect to the *lis pendens*.  Actually, it would be the

11    Government's action if you affirm Judge Torres' order to take

12    steps to left the *lis pendens*.  The uniplay between that and

13    what the Government has done now is before the Court on our

14    motion to lift the *ex parte* restraining order.

15         Let us be clear about one thing:  We do not agree, so

16    it's perfectly clear, and we'll fully flush this out in our

17    coming papers with Your Honor, we do not agree that either

18    *Gosney* or *Kaley* determines the issue of whether a defendant has

19    a right to a tracing hearing without a showing of need.  In

20    both of those cases, the defendants made a showing of need.

21    The issue was not determined.

22         So we believe that issue is still an open issue and

23    we're going to lay out why it is not appropriate to allow the

24    Government to restrain assets they cannot trace notwithstanding

25    what has been presented to the Court.  We intend to show the

 1    Court that the tracing is inappropriate with respect to --

 2    certainly to Mr. Rivera's property, and I believe Mr. Markus

 3    intends to do the same with respect to Ms. Nuhfer's, that case

 4    law in the Eleventh Circuit that they have not even mentioned

 5    controls the situation and changes it dramatically, completely.

 6    We'll lay all that out in our papers just so we're perfectly

 7    clear on this issue.

 8          And we think that given the fact that they now concede

 9    that they knew, pretty much knew, that these assets would not

10    be -- are believed -- or believed these assets were traceable

11    and preparing a package to go to the grand jury in May or June

12    when Judge Torres entered a 23-page order in July is very

13    telling.  And it's why we think the Court could not countenance

14    this procedure and lift that restraining order.  We're not

15    going -- we stipulate that nothing will be done with those

16    properties until final determinations are made by Your Honor

17    and let us proceed accordingly.  Thank you.

18          **THE COURT:**  Is there -- if I do what you request and

19    vacate that order, the most recent order, is there -- I mean,

20    Judge Torres heard from -- heard argument from you all and any

21    representations from the Government were made specifically to

22    him regarding the properties.  I mean, I'm familiar with the

23    issues.  But is this something that -- I mean, ordinarily, I

24    would say, well, the judge who heard the issue regarding the

25    *lis pendens* should probably hear this as well to see if there

1    are any inconsistencies.  But procedurally, we're in a posture

2    where that, his order or R and R has been rejected and so

3    procedurally, it's not really before him anyway.

4            **ATTORNEY MARKUS:**  I don't think it matters one way or

5    the other, Your Honor, if it's before this Court or before

6    Judge Torres.  Ultimately, I think it will be before this Court

7    either way, so may we save a little time if the Court vacates

8    it, we brief it, and it's before this Court on a parallel track

9    with the appeal of Judge Torres' order.

10           So I think whether you refer the motion or keep it,

11   it's both -- it's going to end up before the Court anyway and

12   of course the appeal objections are before the Court.

13           Just to point out, I think a couple things to

14   underscore.  One is, again, there was no concern about the

15   properties being alienated.  Before, we were in discussions

16   with the Government both about the stay and about the

17   properties themselves.  And so we were not -- we could not have

18   done anything with the properties.  The only way the *lis*

19   *pendens* could get lifted is if the Government went to the clerk

20   of the state court and lifted them.  So there was no concern

21   about that when they came *ex parte* to the Court.

22           You know, the timing with the end of May and June with

23   them finalizing it, again, just to underscore what Mr. Shohat

24   said is so telling.  They have said to us numerous times in

25   e-mails how important that Judge Torres' issue was to them.

1    They were waiting to see if they were going to get a favorable

2    decision.  That's what was going on here.  They lost and then

3    they came running to this Court *ex parte*, which was wrong.

4         I know this cost Judge Torres a lot of time writing

5    that order, but I'm here for Ms. Nuhfer.  I mean, she's had to

6    scramble to come up with money to fight this *lis pendens* stuff

7    before Judge Torres for the last five months and now is going

8    to have to deal with this issue.  It's not right.  We were in

9    discussions with them.  And they came *ex parte* to this Court

10   instead of just filing a normal motion.  They waited to see

11   what would happen before Judge Torres, they lost, they got

12   caught, and then they came to this Court.  It was wrong.

13        **THE COURT:**  All right.  Anything final, counsel?

14        **AUSA SOMBUNTHAM:**  Your Honor, I just want clarify a

15   couple of things that defense counsel has made to make sure

16   that it's crystal clear before the Court.

17        The motion is not moot.  There are two real properties

18   that are substitute assets as recently as last week.  Defense

19   counsel's indicated those real properties would be required, or

20   they wanted those property, at least, because they haven't been

21   able to show need for fees.

22        So although we agree, you know, this timing is not the

23   best, there's no issue of mootness.  If we thought there was an

24   issue of mootness, we would have raised that for sure before

25   the Court.

1          That's the first thing.

2          The second is the conversation about stay, and we've

3    outlined that in our response.  If the Court really wants to

4    entertain that, we have the e-mails.  Shortly after Judge

5    Torres issued their ruling and before the United States request

6    for a stay, defense counsel was asking us to release the *lis*

7    *pendens* so they can retain -- be retained as counsel.  So I am

8    -- today is the first time that they have sort of agreed

9    overall.  I understand that may not, you know, there's sort of

10   an open question about that.  I've already told you during the

11   course of the last few weeks our position has changed between

12   what the orders were at the time versus now being an R and R.

13   That is definitely in a flux.  This happened earlier this

14   month.  We are here before the end of the month.

15          **THE COURT:**  But I don't understand that argument.  I

16   mean, well, I understand it.  But if the Defense -- if you want

17   a stay and the Defense doesn't respond within a reasonable

18   period of time, 24 hours, 48 hours, on the agreement, then you

19   just file the motion.  I mean, I don't understand why you would

20   wait until the Defense was on board.  So what.

21          **AUSA SOMBUNTHAM:**  So this is buttressing the other

22   thing that we were looking at at the time, which is trying to

23   finalize that these were traceable assets and present that

24   package in terms of being able to announce it.  And obviously,

25   with the adverse ruling in place, this discussion all happened

1    after the adverse ruling.

2          And just to correct one more thing on your point, we

3    did not do oral arguments on the motion to release *lis pendens*.

4    We were highly anticipating there would be oral argument, so we

5    really were got off guard a little bit by Judge Torres' orders

6    earlier this month.  So we haven't been able to address his

7    questions and our representations are all -- those are in the

8    docket in our filings.  And one of the things we have raised in

9    our objection is to ask the Court for oral argument in light of

10   the ruling -- the rulings.

11         **THE COURT:**  So the -- there was the motion to dissolve

12   the *lis pendens*, which I think was filed in March.

13         **AUSA SOMBUNTHAM:**  Yes.  March 13th, 2023.

14         **THE COURT:**  The Government filed a response on

15   April 4th.  And the reply wasn't until May 30th, which was --

16   and then the order wasn't issued until July.

17         **AUSA SOMBUNTHAM:**  Yes.  July 6th and 7th, I believe,

18   right after the Fourth of July holiday.

19         **THE COURT:**  All right.  Let's start with a couple of

20   observations, right.

21         So this issue was referred to Judge Torres.  The issue

22   of course, was whether or not the properties or some of the

23   properties that the Government identified as substitute assets,

24   whether or not they could place a *lis pendens* on those

25   substitute assets either under federal or Florida law.  And the

1    briefing on that issue was completed in May, on May 30th.  And

2    Judge Torres issued what is titled as an Order on the Joint

3    Motion on July 6th.  And I note that these were really

4    substantive issues that, undoubtedly, it took a lot of time to

5    consider.

6         But between -- well, some time between the Government's

7    response, the Government's April 4th response to the motion and

8    Judge Torres' order, the Government became aware that these

9    properties, at least in his opinion, were not substitute assets

10   but actually directly subject to forfeiture because they were

11   tainted assets.  But the Government took no action in notifying

12   the Court or even requesting the Court to hold off on issuing

13   an order.  There are a number of ways that could have been

14   done, just simply ask for the Court to hold off ruling based on

15   some other developments.  But it didn't.  And so the timing

16   here seems really bad.  Judge Torres issued his order on

17   July 6th, and then the *ex parte* motion was submitted to me.  It

18   was filed on July 14th.

19        The Government, of course, is saying that, you know,

20   just took time to put everything together to submit the *ex*

21   *parte* application.  The -- Agent George's affidavit, which is

22   18 pages long with lots of detail about the properties and --

23   this chart tracing the properties, I mean, it's dated

24   July 14th.  But it obviously took some time to put that

25   together.

1          You know, I reviewed the *ex parte* motion and everything

2    submitted for it in support of it.  I recognized, I mean, at

3    the time, as I said before, I also reviewed the -- Judge

4    Torres' order and the objections and the underlying pleading.

5    So I was aware that the Government was taking a different

6    position.  And as I said before, I had some questions, but I

7    didn't think it was appropriate for me to have any *ex parte*

8    communications with the Government about the questions that I

9    had, which include the questions that I asked her today.

10          Considering everything, I mean, I just think it --

11    well, and again, I think the affidavit -- I found that the

12    affidavit provided probable cause, which isn't a especially

13    high standard, showing that assets that the Government alleges

14    that the Defendants received is ill gotten gains, had flowed

15    through accounts and were used to purchase the substitute

16    properties.  But given everything here and the timing, and

17    given the Defendant's agreement not to alienate the subject

18    property, I am going to vacate that earlier order, the *ex parte*

19    order.  I am going to give -- well, Mr. Shohat, you said

20    30 days, extend the objection period to 30 days.

21          **ATTORNEY SHOHAT:**  Yes, Your Honor.

22          **THE COURT:**  From 30 days.  The response time now to the

23    *ex parte* motion, you want that on the same date or what?

24          **ATTORNEY SHOHAT:**  Could we have one second?

25          **THE COURT:**  Sure.

1    **ATTORNEY MARKUS:**  Your Honor, on the objections, we're

2  good for a total of 30 days.  But I think on the other motions,

3  since we're going to need to now respond with our own tracing

4  analysis, we'd as for 30 days from today just to respond.

5    **THE COURT:**  I'll just make both the objections and your

6  response to the --

7    **ATTORNEY MARKUS:**  Yes.

8    **THE COURT:**  -- *ex parte* application due 30 days from

9  today.

10    **ATTORNEY MARKUS:**  Thank you, Your Honor.

11    **THE COURT:**  I -- starting back from scratch, so to

12  speak, on the protective order, I think it's warranted here, so

13  that we're all -- there's no cloud over those proceedings.  And

14  as I indicated earlier, the defendants agreeing not to alienate

15  any of the subject properties.  So I don't think there's no

16  harm.  So we'll see where we are at that point.

17    Anything else we need to take up today from the

18  Defense?

19    **ATTORNEY MARKUS:**  The only other thing, Your Honor, the

20  arraignment, I believe is scheduled on August 14th.  So we

21  would just ask that that be postponed until after this issue is

22  addressed.

23    **ATTORNEY SHOHAT:**  I just want note that we have asked

24  the Government for discovery regarding the tracing at issues.

25  We have not brought this matter to the Court but they haven't

1    responded to us yet.  We may have a motion if they don't give

2    us the discovery we've requested to allow us to appropriately

3    respond.  We have asked them for it.

4         **THE COURT:**  I'll let you deal with that with the

5    Government in the first instance and then we'll take it up.

6         So regarding the arraignment, you're asking that that

7    be continued for another?

8         **ATTORNEY MARKUS:**  I think we should just take it off

9    the calendar for now, Your Honor, until this issue is resolved

10   or if we need a place setter, we can set it some time in

11   October.  Yeah.  Sometime in October, Your Honor.

12        **THE COURT:**  Is there an objection to the Government

13   rescheduling the arraignment?

14        **AUSA SCHIMKAT:**  No, Your Honor.

15        **THE COURT:**  So we'll reschedule that for another

16   60 days.

17        Is there anything else from the Government?

18        **AUSA SOMBUNTHAM:**  Your Honor, because Mr. Shohat raised

19   this, I think we're going to head on the same procedure that we

20   rest -- that we set forth that we have a difference of opinion

21   about how the challenge will proceed.  I'm anticipating right

22   now that the briefing here would be on the initial application

23   for the protective order itself.  And I think a threshold

24   showing here is required is a financial need from the defense,

25   from the defendants for this retained counsel and the *Barker*

1    factors.  I don't think we are agreeing in this juncture to the

2    different procedure.

3          **THE COURT:**  Well, there's an application pending.

4    Defense will respond and we'll see where we are.

5          **AUSA SOMBUNTHAM:**  Okay.  Okay.  I just wanted to

6    clarify.  Thank you, Your Honor.

7          **THE COURT:**  All right.  And if you'll just submit a

8    proposed order.

9          **ATTORNEY MARKUS:**  Yes, Your Honor.

10          **THE COURT:**  Thank you.  Have a good weekend.

11          (Proceedings concluded at 10:51 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I certify that the foregoing pages represent a true and correct transcript of the official electronic sound recording as provided to me by the U.S. District Court, Southern District of Florida, as taken on the date and time previously stated in the above matter.

I certify that the foregoing pages represent a true and correct transcript of the above-styled proceedings as reported on the date, time, and location listed.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was reported, and further that I am not financially nor otherwise interested in the outcome of the above-entitled matter.

Date:  August 30, 2023

/s/Quanincia S. Hill, RPR
Quanincia S. Hill, RPR
Official Court Reporter
Southern District of Florida