IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Valle

UNITED STATES OF AMERICA,

 Plaintiff,

vs.

DAVID RIVERA and ESTHER NUHFER,

 Defendants.

_____/

# DAVID RIVERA'S SECOND MOTION FOR ADDITIONAL DISCOVERY WITH INCORPORATED MEMORANDUM OF LAW

Defendant, David Rivera ("Rivera"), through counsel, respectfully moves for an order requiring the Government to produce additional discovery which it has declined to produce on request. This is Rivera's second, narrowed and limited, motion seeking discovery of communications between PDV USA and federal prosecutors. As explained below, the discovery Rivera seeks must be produced pursuant to (1) the Fifth Amendment because it may reveal violations of his right to due process; and (2) *Brady v. Maryland*, 373 U.S. 83 (1963), FED. R. CRIM. P. 16(a)(1)(E), and S.D. FLA. L. R. 88.10(c) because it will be favorable to Rivera and necessary for him to prepare a defense.

## FACTUAL AND PROCEDURAL BACKGROUND

As this Court is aware, there is currently related civil litigation ongoing in the Southern District of New York between PDV USA, Inc. ("PDV USA"), and Rivera's company InterAmerican Consulting, Inc. ("IAC"). (This is *PDV USA, Inc. v. InterAmerican Consulting, Inc.*, No. 20-cv-03699, and Rivera will refer to it as the "SDNY Civil Action.") As has been

#103484515v1

admitted by PDV USA's counsel, various members of the Department of Justice ("DOJ")—including, at times, *prosecutors for this criminal* case—met with PDV USA's lawyers on eight occasions prior to the filing of the SDNY Civil Action. *See* Exhibit A[1] (saying that "attorneys at Willkie Farr & Gallagher LLP, outside counsel for PDV Holding, Inc. and Citgo Petroleum Corporation, met (telephonically and in person) with members of the U.S. Department of Justice on [eight] occasions to discuss, among other matters, the subject matter of [this case and a potential SDNY lawsuit], prior to the filing of the lawsuit"). At least one purpose of these meetings appears to have been for DOJ representatives to provide guidance to PDV USA's attorneys on how to litigate the SDNY Civil Action. *See* Exhibit B[2] ("Once the new Board of Directors took control of PDV Holding, Inc., and as part of the ongoing investigations and *with prior consultations with the Department of Justice*, we decided to sue Interamerican Consulting for breach of contract." (emphasis added)).

Having learned of this ongoing relationship between DOJ generally—and prosecutors from this case specifically—and PDV USA, on September 12, 2024, Rivera requested certain related categories of discovery from the Government, which the Government denied on November 14, 2024. Rivera then filed his initial Motion for Additional Discovery [ECF No. 248] (the "Initial Motion") on December 6, 2024. After the Initial Motion was fully briefed,[3] this Court denied it

---

[1] Exhibit A is PDV USA's Response to Interrogatory # 10 from its Second Amended Responses and Objections to Defendant's Second Set of Interrogatories in the SDNY Civil Action. Though marked "Confidential," Exhibit A is no longer confidential as it has been filed on the public docket in the SDNY Civil Action.

[2] Exhibit B is a certified translation of a slide from a presentation made by an unknown PDV USA employee to the PDVSA Ad Hoc Board in 2022.

[3] *See* Government's Response to David Rivera's Motion for Additional Discovery [ECF No. 258]; Rivera's Reply to the Government's Response [ECF No. 261].

2

without prejudice. *See* Order Following Status Conference [ECF No. 264]. According to this Court, Rivera was "not foreclosed from serving a renewed, narrow request for discovery as further detailed on the record" during the January 15, 2025, status conference.

Accordingly, this motion does just that. On January 17, 2025, Rivera requested the following discovery from the Government:

   i. Any PDV USA communications with the U.S. Attorney's Office for the Southern District of Florida (the "USAO SDFL") and/or with DOJ related to the SDFL criminal investigation and case regarding the possibility of filing a lawsuit against Rivera or IAC over the PDV USA contract or payments on that contract.

   ii. Any PDV USA communications with the USAO SDFL and/or with DOJ related to the SDFL criminal investigation and case regarding the conduct of such lawsuit including the deposition or interrogatories or other forms of discovery obtained from IAC or Rivera, including any drafts of same.

   iii. Any PDV USA communications with the USAO SDFL and/or with DOJ related to the SDFL criminal investigation and case regarding PDV USA's position on the filing of a FARA registration including but not limited to advice provided by the USAO SDFL and/or DOJ regarding the filing.

   iv. Any PDV USA communications with the USAO SDFL and/or with DOJ related to the SDFL criminal investigation and case in which PDV USA describes Rivera's tasking under the March 2017 contract between PDV USA and IAC.

   v. Any PDV USA communications with the USAO SDFL and/or with DOJ related to the SDFL criminal investigation and case in which PDV USA denies violation of FARA and/or blames Rivera for its failure to file a FARA registration.

   vi. Any PDV USA communications with the USAO SDFL and/or with DOJ related to the SDFL criminal investigation and case, as well as any substantive statements by PDV USA which relate to the charges in the original or superseding indictment(s).

Because the Government declined those requests on January 28, 2025—while neither confirming nor denying that such information exists—Rivera now seeks an order from this Court compelling the Government to produce the requested discovery.

3

#103484515v1

**ARGUMENT**

The Government must produce the requested information because it will reveal (1) whether the Government has impermissibly managed aspects of the SDNY Civil Action to gain an advantage in this criminal proceeding, such that it has violated Rivera's due process rights under the Fifth Amendment, and (2) the nature of the relationship between the Government and PDV USA, such that Rivera can properly prepare a defense.

I. **By *managing* a civil action to gain an advantage in a related criminal proceeding, federal prosecutors would have violated Rivera's due process rights.**

Pursuant to his Fifth Amendment due process rights, Rivera is entitled to know whether the Government traded a possible indictment against PDV USA in exchange for the opportunity to be "second chair" in PDV USA's civil action against Rivera (so that it could obtain information to be used against Rivera in this criminal prosecution).[4] If the Government did so, Rivera would be entitled to suppress certain evidence that the Government secured from *that case* from being used in *this case*. After all, "where the government has undoubtedly manipulated simultaneous criminal and civil proceedings, both of which it controls, 'there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means.'" *Sec. & Exch. Comm'n v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) (quoting *Sterling Nat'l Bank v. A-1 Hotels, Int'l, Inc.*, 175 F. Supp. 2d 573, 579 (S.D.N.Y. 2001)); *see also United States v. Kordel*, 397 U.S. 1, 11–12 (1970) (stating that a criminal defendant's Fifth Amendment rights

---

[4] To be clear, the basis for this Motion isn't simply that evidence generated in the SDNY Civil Action has been obtained by the Government for use in this criminal proceeding; instead, Rivera believes—based on discovery from the SDNY Civil Action and other statements about PDV USA-Government collusion—that the Government may have *directed* aspects of that SDNY Civil Action.

could be violated in "a case where the Government has brought a civil action solely to obtain evidence for its criminal prosecution").

Depending on what the requested discovery reveals, Rivera may move to suppress certain evidence that the Government obtained through its participation in the SDNY Civil Action. Indeed, such relief would be available to Rivera under *United States v. Scrushy*, 366 F. Supp. 2d 1134 (N.D. Ala. 2005). There, a criminal defendant successfully moved to suppress his own deposition testimony that the prosecuting USAO had obtained through impermissible shadow involvement in a parallel SEC civil proceeding. *See id.* at 1135. According to the court, "the prosecution may use evidence acquired in a civil action in a subsequent criminal proceeding *unless the defendant demonstrates that such use would violate his constitutional rights or depart from the proper administration of criminal justice.*" *Id.* at 1138 (quoting *United States v. Teyibo*, 877 F. Supp. 846 855 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 681 (2d Cir. 1996) (emphasis added)). "To be parallel," continued the court, "the separate investigations should be like the side-by-side train tracks that never intersect." *Id.* at 1139. But in *Scrushy*, the civil action and the criminal investigation "improperly merged" when the USAO "called the SEC office, gave the SEC advice or 'preferences' regarding the content of the deposition [of the defendant] and its location, and recruited the [the SEC accountant who was handling the civil deposition to also] participate in the interviews of [witnesses] in the criminal investigation." *Id.* at 1137. Because "the SEC civil investigation became inescapably intertwined with the criminal investigation," and "[b]ecause the Government manipulated the simultaneous investigations for its own purposes," the court found that "the utilization of [the defendant's] deposition in [the criminal] case depart[ed] from the proper administration of justice" and thus "must be excluded." *Id.* at 1140. Again, Rivera suspects that

the Government has been manipulating the SDNY Civil Action for its own purposes—namely, to gain an impermissible upper hand in this criminal action.

Similarly in *United States v. Bhatia*, 545 F.3d 757 (9th Cir. 2008), a criminal defendant moved to dismiss the indictment against him on res judicata and collateral estoppel grounds. *See id.* at 758. According to the defendant, "there was privity between the government and a [non-government] third party in a civil fraud action" such that the government "'took the laboring oar' in the civil action." *Id.* Although the Court of Appeals found that this was not the case, it did *examine the record* before making such a determination. "Cooperation," said the court, "is not the same as control." *Id.* at 760. But, noted the court, had the Defendant been able to show "that the government *controlled or influenced* the civil litigation," the result would have been different. *Id.* at 760.[5] Rivera is entitled to make such a showing here, but he can only do that if the Government produces the discovery requested.

What *Scrushy* stands for directly—and *Bhatia* obliquely—is that federal prosecutors cannot *surreptitiously* control a *seemingly* legitimate, parallel civil proceeding to generate evidence from an individual to be used against that same individual in a separate criminal case. To do so would run afoul of the Fifth Amendment. But that is exactly what Rivera suspects is happening here. Indeed—as mentioned above—PDV USA has admitted in discovery from the

---

[5] The court made a similar observation in *Prousalis v. United States*, No. 06-cv-12946, 2007 U.S. Dist. LEXIS 63025 (S.D.N.Y. Aug. 24, 2007). There, a criminal defendant argued—among other things—that the Government had "violated his Fifth Amendment rights by not advising him prior to his deposition" in a related civil action involving private entities "that he was under [criminal] investigation." *Id.* at *40. While that argument ultimately failed—and isn't on all fours with this case—the court noted that the criminal defendant had "not shown that the Government was a party to *or contributed in any way to the litigation strategy* employed" by one of the private parties in the civil action. *Id.* at *43. The inference, then, is that if the criminal defendant had made such a showing, the result may have been different. And again, a criminal defendant can only make such a showing if he is able to access whatever communications may exist between the Government and the private entity litigating the parallel civil proceeding.

SDNY Civil Action that it has colluded on multiple occasions with the prosecutors in this case, including Harold Schimkat. *See* Exhibit A (saying that "attorneys at Willkie Farr & Gallagher LLP, outside counsel for PDV Holding, Inc. and Citgo Petroleum Corporation, met (telephonically and in person) with members of the U.S. Department of Justice on [eight] occasions to discuss, among other matters, the subject matter of this lawsuit, prior to the filing of the lawsuit"); Exhibit B ("Once the new Board of Directors took control of PDV Holding, Inc., and as part of the ongoing investigations and *with prior consultations with the Department of Justice*, we decided to sue Interamerican Consulting for breach of contract." (emphasis added)). Rivera is entitled to know the nature of those consultations.

Furthermore, while the Government can "conduct parallel civil and criminal investigations without violating the due process clause," it cannot do so "in bad faith." *United States v. Avery*, No. 14-cr-00379, 2016 U.S. Dist. LEXIS 36380, at *14 (N.D. Ga. Feb. 5, 2016). Rivera submits that conducting a parallel civil proceeding *via a non-government plaintiff* like PDV USA is the epitome of "bad faith." After all, a defendant in a civil action brought by a government agency like the SEC would understand that said government agency is on the same team—so to speak—as federal prosecutors who might initiate (or already have initiated) a prosecution against him. Indeed, such a defendant would normally be warned that information he provides that government agency could find its way into a separate criminal investigation. *See id.* at *17–18 (describing such warnings). Entirely different, however, is the situation involving Rivera; instead of litigating against a government agency in the SDNY Civil Action, Rivera's company—IAC—was litigating against PDV USA, *a commercial entity*. Rivera, then, had no reason at the material times to think that the Government was in any way involved *in that lawsuit*; it was only discovery that was

produced *after* the SDNY Civil Action was filed—and *after* Rivera was deposed—that revealed the apparent collusion between the Government and PDV USA.

Finally, just because PDV USA had its own legitimate reasons to sue IAC in the SDNY Civil Action did not entitle the Government to encourage the filing of that suit, let alone direct aspects of it. *See United States v. Melvin*, No. 14-cr-00022, 2015 U.S. Dist. LEXIS 152732, at *59 (N.D. Ga. May 27, 2015) (noting that "the SEC and the [USAO] must keep their investigations on parallel tracks and cannot merge them by, for example, having the SEC take actions or seek evidence solely for the benefit of or at the direction of the USAO" (quoting *United States v. Harris*, No. 09-cr-00406, 2010 U.S. Dist. LEXIS 126612, at *9 (N.D. Ga. Dec. 1, 2010))). In other words, prosecutors cannot litigate a civil action—especially one to which no government entity is a party—even if only on a part-time basis.

The predication suggests that likely Government misconduct in the SDNY Civil Action will have unfairly prejudiced Rivera because his lack of knowledge about the Government's role as "second chair" has impacted his defense in that case, which has in turn put him at an unfair disadvantage in this case. Had Rivera been so aware, his strategic decisions as a corporate officer in the SDNY Civil Action may very well have been different. As to his deposition and the various interrogatories that he answered as a corporate representative, for example, Rivera may have been less extensive in his responses and more inclined—at times—to assert his Fifth Amendment privilege. To be clear, this isn't an issue of Rivera second-guessing his civil litigation strategy to date; this is a question of fundamental fairness as guaranteed by the protections afforded to criminal defendants. Accordingly, Rivera is entitled to know the full scope of the Government's participation in—or perhaps even control of—the SDNY Civil Action. What Rivera will or will not do with that information is up to him. But Rivera cannot be forced to accept the Government's

word that it hasn't encroached on his Fifth Amendment rights by using the SDNY Civil Action as a proverbial stalking horse. *See United States v. Gonzalez-Gonzalez*, 258 F.3d 16, 24 n.3 (1st Cir. 2001) (noting that a criminal defendant "is not expected to take the government at its word as to the materiality of [particular] evidence").

## II. Rivera is entitled to know the extent of the Government-PDV USA relationship because this is favorable information necessary to his preparing a defense.

Under Rule 16, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph [various materials] if the item is within the government's possession, custody, or control and . . . *the item is material to preparing a defense*." FED. R. CIV. P. 16(a)(1)(E)(i). And under *Brady*, the Government must disclose to a criminal defendant evidence that would be "favorable" to him. *Brady*, 373 U.S. at 87. Here, evidence as to the details of the nature of the relationship between the Government and PDV USA is both directly "material" to Rivera's preparation of a defense and "favorable" to him.

The Government must produce the requested discovery because PDV USA plays an integral and essential role in *this case*. *See* Superseding Indictment [ECF No. 122] General Allegations ¶ 17; Count 1—General Allegations ¶¶ 3, 5–7, 10, and 13; and Count I—Overt Acts ¶¶ 3, 6–10, 25, 28, 33, 34, 39, 40, 45, and 77. After all, the Government asserts that PDV USA was intricately involved in the alleged FARA violations and money laundering offenses, yet PDV USA has somehow avoided indictment. Exactly how PDV USA has managed to do this becomes less perplexing in light of the *eight meetings* that have occurred between PDV USA employees and representatives of the DOJ (again, to include *the lead prosecutor in this case*—Harold Schimkat—twice). The benefits don't appear to have flowed in only one direction, either. Somehow, for example, the Government obtained from PDV USA the transcript of Rivera's

9

deposition testimony from the SDNY Civil Action despite a protective order[6] being in place to prevent such a leak from occurring.

Accordingly, Rivera must be allowed to understand the precise nature and extent of the relationship between PDV USA and the Government so that he can properly prepare to meet the evidence produced by PDV USA. The requested discovery, then, is both "material to the preparation of [Rivera's] defense," FED. R. CRIM. P. 16(a)(1)(E), and "favorable to [the] accused," *Brady*, 373 U.S. at 87. This is true regardless of whether any PDV USA employees testify against him because such discovery would expose how (and why) the Government has overlooked PDV USA's identical conduct in exchange for a "second chair" role in the "stalking horse" SDNY Civil Action. Furthermore, this information must be "disclosed in time for it to be effectively used by the defense." *United States v. Shaygan*, 661 F. Supp. 2d 1289, 1316 (S.D. Fla. 2009), *rev'd on other grounds*, 652 F.3d 1297 (11th Cir. 2011).

### III. Rivera's evidentiary showing is more than sufficient to justify additional discovery.

Rivera has done more than enough from an evidentiary perspective to justify the additional discovery he seeks. Starting with the direct evidence, PDV USA has admitted that "attorneys at Willkie Farr & Gallagher LLP, outside counsel for PDV Holding, Inc. and Citgo Petroleum Corporation, met (telephonically and in person) with members of the [DOJ] on [*eight*] occasions to discuss, among other matters, *the subject matter of this lawsuit*, prior to the filing of this lawsuit." Exhibit A at 12–13. Indeed, AUSA Harold Schimkat—*who is the lead prosecutor for the present criminal proceeding*—attended two of those meetings. *Id.* at 13. And a PDV USA employee told the PDVSA Ad Hoc Board that "[i[n March 2017, PDV USA, an affiliate of PDV

---

[6] That is ECF No. 55 in the SDNY Civil Action.

10

Holding, Inc., entered into a consulting contract with Interamerican Consulting for $50 million. . . . Once the new Board of Directors took control of PDV Holding, Inc., and as part of the ongoing investigations, *and with prior consultation with the Department of Justice*, we decided to sue Interamerican Consulting for breach of contract." Exhibit B at 1. These two exhibits, then, clearly show that the Government—*including the lead prosecutor in this case*—has such a close relationship with PDV USA that the former directed aspects of the latter's lawsuit. For the reasons already articulated above, Rivera is therefore entitled to know the nature of both that relationship and that role. Indeed, each of these exhibits standing alone would be enough to justify Rivera's Motion.

Rivera has also identified compelling circumstantial evidence to further support the proposition that the Government and PDV USA are acting in tandem. Again, PDV USA has somehow avoided indictment in this criminal case despite (1) being a major player in the events alleged; and (2) having only filed a FARA registration years after the contract at issue and *only after* collaborating with the Government. This is further evidence, then, of a years-long, ongoing, intimate relationship between the Government and PDV USA. While it's common for prosecutors to have a close relationship with a cooperating witness, it's far less common for that cooperating witness to be litigating its own civil lawsuit against the same defendant. While such a scenario could theoretically unfold aboveboard—*i.e.*, the two actions are litigated separately—the potential for impermissible Government meddling in the civil action to gain an advantage in the criminal proceeding (via the "silver plattering" of evidence from the former case to the latter) is great. Rivera, then, is entitled to learn more about the nature of the Government's relationship with PDV USA so that he can determine whether that relationship is (or is not) proper.

To require Rivera to produce *even more evidence* than he already has just to prevail on this Second Motion *for Additional Discovery* would be both nonsensical and contrary to caselaw; it can't be that Rivera is only entitled to the evidence he seeks if he can present that very evidence. This is circular logic. Indeed, Rivera only needs to make *some threshold evidentiary showing* to prevail. *See United States v. Kowalewski*, No. 13-cr-00045, 2014 U.S. Dist. LEXIS 165404, at *61 (N.D. Ga. Oct. 7, 2014) ("[T]he Court's inquiry into the Government's investigation was occasioned by *some threshold evidentiary showing giving rise to a reasonable concern about the intertwinement*[.]" (quoting *United States v. Gangar*, No. 07-cr-00010, 2007 U.S. Dist. LEXIS 84472, at *4–5 (W.D. Va. Nov. 15, 2007)). Accordingly, Rivera has done more than enough from an evidentiary perspective to prevail on his Motion.

WHEREFORE, Rivera respectfully moves this Court to enter an order requiring the Government to produce information which it has declined to produce on request in accordance with the Fifth Amendment, FED. R. CRIM. P. 16(a)(1)(E), *Brady*, and S.D. FLA. L.R. 88.10(c).

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 88.9(a), undersigned counsel certifies that he has conferred with AUSA Harold Schimkat regarding this motion. Mr. Schimkat has advised the undersigned that the Government opposes this motion.

Dated this 3rd day of February, 2025.

        Respectfully submitted,

        **JONES WALKER LLP**
        201 S. Biscayne Blvd., Suite 3000
        Miami, FL 33131
        Tel: (305) 679-5700
        By:   */s/ Edward R. Shohat*
                **Edward R. Shohat**
                Florida Bar No. 52634
                eshohat@joneswalker.com

#103484515v1

**David S. Weinstein**
Florida Bar No. 749214
dweinstein@joneswalker.com
**Thomas P. Bardenwerper**
Florida Bar No. 1044458
tbardenwerper@joneswalker.com

#103484515v1