Govt. Ex. 2

# WILLKIE FARR & GALLAGHER LLP

April 23, 2024

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

**VIA ECF**

The Honorable Robert W. Lehrburger
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: PDV USA, Inc. v. Interamerican Consulting, Inc., No: 1:20-cv-03699-JGK-RWL

Dear Judge Lehrburger:

We represent PDV USA, Inc. ("PDV USA") and submit this letter in opposition to Defendant Interamerican Consulting Inc.'s ("Interamerican") letter motion requesting deposition and document discovery into "communications between PDV USA or its affiliates and the DOJ." ECF No. 175.

This case is about whether Mr. Rivera performed $50 million worth of consulting services for PDV USA over a three month period from March – June 2017 pursuant to a March 2017 consulting agreement (the "Agreement"). The Agreement states that PDV USA shall pay Interamerican "as compensation for the completion of the Services, to PDV USA's sole satisfaction[.]" Ex. A at 1. According to Mr. Rivera's counterclaims and sworn testimony, he was engaged by Citgo Petroleum Corporation ("CITGO") to help CITGO form an independent identity from its own parent company, PDVSA. ECF No. 111 at 19–20; Ex. B at 299:19–301:1. PDV USA maintains that Mr. Rivera never performed any consulting services for CITGO or PDV USA—allegations confirmed by dozens of contemporaneous documents cited in an eight count indictment against Mr. Rivera that Mr. Rivera and Interamerican are currently withholding from PDV USA.

As publicly disclosed since 2019, at which time CITGO received a subpoena from DOJ, CITGO has been cooperating with DOJ regarding a multi-year investigation into corruption practices involving PDVSA, among other entities. Based *exclusively* on a single reference in a 2020 public presentation by the PDVSA Ad Hoc Board—which stated that "as part of the ongoing investigations, and with prior consultation with the Department of Justice, we decided to sue Interamerican Consulting"—Interamerican has taken the position that PDV USA brought this lawsuit to "curry favor with the government." ECF No. 175 at 1.

The present dispute arose in connection with PDV USA's response to Interrogatory No. 10, which states in relevant part that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ ECF No. 175–3 at 13 (emphasis added). Based on this response, Interamerican now claims that "PDV USA and its attorneys have communicated extensively with the DOJ regarding this lawsuit." ECF No. 175 at 2. That is incorrect. The

BRUSSELS  CHICAGO  FRANKFURT  HOUSTON  LONDON  LOS ANGELES  MILAN
NEW YORK  PALO ALTO  PARIS  ROME  SAN FRANCISCO  WASHINGTON

Hon. Robert W. Lehrburger

response ▮▮▮ ECF No. 175–3 at 13. And the response makes clear that ▮▮▮. *See id.* ▮▮▮). The response goes on to ▮▮▮. *Id.* at 14. After seeing this response, Interamerican requested the deposition of Mr. ▮▮▮. However, Interamerican agreed to drop its request because PDV USA agreed to educate its 30(b)(6) witness on Mr. ▮▮▮'s recollection of what was discussed at ▮▮▮. Thus, contrary to Interamerican's assertion, ECF No. 175 at 2, n. 4, PDV USA never agreed to educate its 30(b)(6) witness on what was discussed at ▮▮▮, let alone educate her on any other communications between outside counsel and DOJ.

Then, at the 30(b)(6) deposition, Interamerican *never* asked the witness about ▮▮▮. Now, Interamerican wants a do-over *and* wants additional depositions of outside counsel to probe "*any* communications between PDV USA or its affiliates and the DOJ," by which Interamerican presumably means communications between outside counsel and DOJ. Interamerican's motion should be denied.

**First**, Interamerican is not entitled to another bite at the apple because it now realizes it should have asked different questions. The parties agreed that the 30(b)(6) witness would be prepared to testify about ▮▮▮ but Interamerican never asked her about that specific meeting. Even still, PDV USA's 30(b)(6) representative answered numerous questions concerning DOJ communications and related issues. For example, the witness explained what the reference to "prior consultation" with DOJ in the 2020 presentation meant: ▮▮▮[.]" Ex. C at 133:4–134:2. When asked generally whether discussions with DOJ influenced PDV USA's decisions to file the lawsuit, she testified that ▮▮▮ *Id.* at 145:23–146:3; *see also id.* at 116:23-117:4 (testifying about who communicated with DOJ and how often); *id.* at 126:1–17 (testifying about whether consultations with DOJ motivated filing of lawsuit); *id.* at 130:5–16 (testifying about "investigations" referenced in the 2020 Ad Hoc presentation); *id.* at 136:9–19 (testifying about whether DOJ suggested to PDV USA that it should file a lawsuit); *id.* at 137:12–16 (testifying about whether notes or memoranda exist pertaining to the meetings). Interamerican did not use all of its time on the record, and it has never requested that PDV USA supplement any answers in writing.

**Second**, although PDV USA did instruct the witness to not answer certain questions on grounds of privilege and/or work product, Interamerican fails to show that any of those instructions were improper. The *only* example Interamerican provides is a single question in which Interamerican asked PDV USA's 30(b)(6) witness whether information PDV USA received from external counsel shaped the decision regarding whether to bring this lawsuit—a question that directly calls for privileged communications and work product. ECF No. 175 at 2 (Ex. 4). PDV USA and this Court have no way of knowing what other objections Interamerican claims were improper. *See Loguidice v. McTiernan*, 2016 WL 4487779, at *1 (N.D.N.Y. Aug. 25, 2016) (denying plaintiff's

request for relief when she did "not provide to the Court . . . the specific questions that were asked of [the deponent] that she believes were improperly objected to as attorney-client privileged").

**Third**, on the merits, the discovery Interamerican now seeks raises insurmountable privilege issues. Interamerican's discovery appears directed at the theory that "Willkie attorneys instructed PDV USA to bring this lawsuit to help Citgo avoid scrutiny by the Department of Justice." ECF No. 175–6 at 1. What Willkie attorneys advised their client to do or not do is unquestionably protected by the attorney-client privilege. And even the communications that Willkie attorneys had (or did not have) with DOJ are privileged for the same reason—under Interamerican's theory, those communications would only matter to the extent that Willkie attorneys communicated them to PDV USA and then PDV USA acted upon them in deciding whether to bring the lawsuit.

**Fourth**, the testimony Interamerican seeks is totally irrelevant to the parties' claims and defenses. Interamerican claims that the requested communications "will almost certainly shed light on whether PDV USA was truly dissatisfied [with Interamerican's performance] . . . or simply acting at the behest of the DOJ." ECF No. 175 at 2. But Interamerican offers no explanation why or how communications with DOJ in 2019 and 2020 are relevant to whether PDV USA was satisfied with Interamerican's performance in early 2017. PDV USA's motivation to file this lawsuit in 2020, has no conceivable bearing on whether Interamerican performed anything in 2017 or whether PDV USA was satisfied with Interamerican's performance under the contract when it ceased paying in 2017.[1]

**Fifth**, like Interamerican's request for another deposition of Mr. Doe, at the very least, Interamerican should not be permitted to take depositions until the Missing Documents are produced. If Interamerican is entitled to probe PDV USA's "satisfaction" with Mr. Rivera's purported services, Interamerican should first be required to produce the dozens (if not more) of documents it is withholding that demonstrate the Agreement was never even designed to provide consulting services to "satisfy" PDV USA, but instead was designed to "creat[e] the *false appearance* that [Mr. Rivera] w[as] providing consulting services to PDV USA." *United States v. Rivera, et. al.,* 1:22-cr-20552 (S.D. Fla.), ECF No 3 at p. 5, ¶ 3 (emphasis added). PDV USA should at least be first afforded an opportunity to show these documents to the Court.

**Finally**, Interamerican requests "any documents between the DOJ and PDV USA (or any of its affiliates and attorneys) relating to this litigation that it has not already produced." ECF No. 175 at 3. It is not clear what Interamerican is seeking here because, as Interamerican notes in its letter, *id.* at 1, n. 2, the parties already agreed on the scope of Interamerican RFPs 9 and 10 concerning these topics. PDV USA did not "renege" on its agreement to produce responsive documents subject to a reasonable search. In fact, PDV USA reviewed tens of thousands of documents from a four-plus year time period from at least eight agreed upon custodians, including CITGO's then-general counsel. Responsive documents have either been produced or logged, and Interamerican has never moved to compel the production of anything on PDV USA's privilege logs.

---

[1] Interamerican does not even attempt to explain how communications with DOJ *after* the filing of this lawsuit could support its far-fetched theory about PDV USA's motivations for filing suit.

- 3 -

Hon. Robert W. Lehrburger

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP
By: */s/Jeffrey B. Korn*

Jeffrey B. Korn
Brady M. Sullivan
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
JKorn@willkie.com
BSullivan@willkie.com

Michael J. Gottlieb
1875 K Street, N.W.
Washington, D.C. 20006
(202) 303-1000
MGottlieb@willkie.com

*Attorneys for Plaintiff*


cc: All counsel of record (by ECF)

- 4 -