UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

No. 22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

 Plaintiff,

v.

DAVID RIVERA and ESTHER NUHFER,

 Defendants.
_____/

## **DEFENDANTS' OMNIBUS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE**

 Defendants David Rivera and Esther Nuhfer, through undersigned counsel, submit this Omnibus Motion *in Limine* to Exclude Evidence (the "Motion"). Specifically, Defendants move this Honorable Court to exclude (1) any references to humanitarian crises in Venezuela; (2) any references before the jury to the civil lawsuit *PDV USA, Inc. v. Interamerican Consulting, Inc.*, No. 20-cv-03699 (S.D.N.Y. 2020); and (3) certain statements made in depositions as part of the aforementioned civil case as well as certain statements purportedly made during law enforcement interviews of witnesses for this case.

### **PRELIMINARY STATEMENT**

 The Court ordered the government to produce—in good faith—an exhibit list by February 4, 2026, so that the parties could meaningfully litigate motions in limine due February 6, 2026. *See* Order Following Status Conference [ECF No. 326] at 4. The government did not do so. Instead, the government served a list that included the kitchen sink, including more than 850 purported trial exhibits.

#110723894v1

For a case the government estimates will last three to four weeks, 850+ exhibits is not realistic. It is far more likely that the government will seek to introduce a fraction of the listed exhibits, if even a quarter. Accordingly, without a narrowed, realistic list of what the government truly intends to offer at trial—<u>and without the actual exhibits themselves</u>—the defense cannot evaluate admissibility, relevance, or prejudice under Rules 401 and 403, nor can it raise targeted motions in limine directed to specific evidence.

Defendants therefore file this motion in limine on discrete legal issues that can be addressed without reviewing the government's exhibits. Defendants may need to supplement or file additional motions in limine once the government narrows its exhibit list to a realistic number it intends to use at trial *and* produces the exhibits themselves to the defense.

## THE LAW

"Only relevant evidence is admissible at trial." *United States v. Akwuba*, 7 F.4th 1304, 1314 (11th Cir. 2021) (citing FED. R. EVID. 402). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. In criminal cases, whether a fact is of consequence is determined through a consideration of "the elements of the offenses charged and the relevant defenses (if any) raised to defeat criminal liability." *United States v. Hall,* 653 F.2d 1002, 1005 (5th Cir. 1981).[1] But even relevant evidence "may be excluded 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Akwuba*, 7 F.4th at 1314 (quoting FED. R. EVID. 403). Similarly,

---

[1] *See Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent for the Eleventh Circuit all decisions of the Fifth Circuit rendered prior to October 1, 1981).

"[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1).

## ARGUMENT

Defendants move this Court to preclude the admission of the following categories of evidence:

1. Any references to humanitarian crises in Venezuela;

2. Any references before the jury to the pending civil lawsuit *USA, Inc. v. Interamerican Consulting, Inc.*, No. 20-cv-03699 (S.D.N.Y. 2020) (hereafter the "PDV USA Civil Suit"); and

3. Certain statements made in depositions for the PDV USA Civil Suit or supposedly made during law enforcement interviews for this case.

Defendants will now discuss each of these in turn.

### I. Any references to humanitarian crises in Venezuela should be excluded under Rules 401 and 403.

Defendants move to bar any evidence or argument about the dire humanitarian conditions in Venezuela (*e.g.*, references to starving children, widespread homelessness, unchecked crime, or human rights abuses). Such references are irrelevant to the charged offenses and risk unfairly prejudicing the jury.

Evidence is relevant only if it "has any tendency" to make a fact of consequence more or less probable. FED. R. EVID. 401. The government's anticipated references to dire conditions in Venezuela do not make any element of the offense (acting as an unregistered foreign agent) more likely. Describing life in Venezuela as "nightmarish," for example, would have no tendency to prove Defendants knowingly performed covered activities for a foreign principal without registering.

3

Likewise, evidence must be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403. Any references to the difficulty of life for the average Venezuelan would inflame juror emotion and invite decision on an improper basis. This risk is acute in Miami, where many potential jurors have personal or family experience with severe hardship in Venezuela. *See* Defendants' Joint Motion to Continue Trial [ECF No. 313] (discussing this topic in much greater detail). Allowing the government to gratuitously portray Venezuela as hellish would distract the jury and unfairly bias the verdict.

Indeed, Defendants' concern here is simply the inverse of the more common evidentiary concern that the needless harping by the government on a defendant's wealth or life of luxury would impermissibly play on a jury's notions of socioeconomic fairness. *See, e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."); *United States v. Sheppard*, No. 22-cr-20290, 2023 U.S. Dist. LEXIS 173652, at *10–11 (S.D. Fla. Sept. 27, 2023) (conditionally granting a defendant's motion to exclude photographs of the defendant's luxury home when such photos would serve no purpose but to "appeal to the jury's class bias"). Accordingly, just as courts do not allow prosecutors to manipulate jurors by shifting the focus of a trial from probative and material evidence to irrelevant and highly inflammatory depictions of a defendant's lifestyle, so, too, should this Court prohibit the government from inflaming the jurors' emotions about Venezuela by emphasizing the poverty and hardship experienced by the Venezuelan people, an exercise that would serve no probative value.

## II.  Any references to the PDV USA Civil Suit should likewise be excluded under Rules 401 and 403.

As this Court is aware, there is ongoing civil litigation between PDV USA, Inc., ("PDV USA") and Defendant Rivera's company, Interamerican Consulting, Inc. ("IAC"), in the Southern

4

District of New York (case number 20-cv-03699). Defendants move, pursuant to Rules 401 and 403, to preclude any references before the jury to the PDV USA Civil Suit generally and to the underlying allegations specifically—namely, that PDV USA has sued IAC for (i) breach of the 2017 consulting agreement and (ii) unjust enrichment. IAC has denied those allegations and has countersued for the remainder of the fees owed. Furthermore, Esther Nuhfer and her company Communication Solutions have no part in this lawsuit.

To the extent the PDV USA Civil Suit is even relevant—which it is not—its probative value of any material fact would be substantially outweighed by the risks of unfair prejudice to both Defendants as well as confusion of the issues. After all, Defendant Rivera has never denied that IAC entered into a contract with PDV USA; indeed—and as just mentioned—IAC filed a counterclaim against PDV USA to recover the fees it believes it is still owed pursuant to that contract. Furthermore, whether IAC breached the consulting agreement with PDV USA is irrelevant to whether Defendants violated FARA—those two determinations are entirely independent of each other, and a conclusion about one of those questions means nothing as related to the conclusion about the other. This alone is enough to exclude any references to the lawsuit or the allegations underpinning it. *See Hardesty v. Kroger Co.*, No. 16-cv-00298, 2022 U.S. Dist. LEXIS 43300, at *8–9 (S.D. Ohio Mar. 11, 2022) (excluding any reference under Rules 401 and 403 to a "separate lawsuit . . . raising different claims," as such evidence "simply ha[d] no bearing on the [instant] case" and risked portraying the party "in an unfairly prejudicial light").

As for prejudice, a reasonable juror, upon hearing the nature of the civil suit, could conclude that Rivera has a history of defrauding business partners or engaging in opaque and possibly criminal activities involving Venezuela. In other words, a juror would be making

character assessments about Defendant Rivera based on nothing more than untested *allegations* by a non-party to this case.

In terms of confusing the issues, needless references to the untested allegations underpinning the arguably baseless PDV USA Civil would inject into *this criminal case* legal issues and unresolved factual questions from *a separate civil case*. A reasonable juror might infer that if Rivera breached a contract to achieve—in exchange for no or little work—a $50 million payday, the likelihood that he violated FARA is even greater. Indeed, federal courts routinely exclude discussions at trial of any references to a separate lawsuit. *See Avomeen Holdings, LLC v. Thanedar*, No. 17-cv-13703, 2019 U.S. Dist. LEXIS 225297, at *10–11 (E.D. Mich. July 25, 2019) (finding that the introduction into a federal civil trial references to "unsupported allegations" from a related state-court suit was a "perfect example of evidence that would likely confuse the issues for the jury and that courts should exclude under [Rule 403]."). This Court should do the same.

### III. Certain statements either made in depositions for the *PDV USA Civil Suit* or noted as having been made in FBI 302 reports for *this case* should be excluded.

The following statements—either as made in depositions for the PDV USA Civil Suit or as purportedly made during law enforcement interviews for this case—should be excluded under Rules 401, 403, 404, 602, and/or 802. The following statements are exemplary, as Defendants will object on the same bases to myriad similar statements that the government will attempt to introduce during trial.

1. **Arnaldo Arcay Deposition in the PDV USA Civil Suit from November 17, 2022:**

   Q: "[C]ould you please describe your understanding of why your colleagues believed that PDV USA should assign the Interamerican consulting contract to PDVSA?"

   A: "Well, if we all share the same concerns about the size of the contract, that the contract was for PDVSA's benefit, and that we didn't

>know what services were being provided—were being provided or where the money was going. Some of them also research—some of my colleagues researched Mr. Rivera on this for where he had been the subject of serious ethical misconduct and allegations." 36:9–25.

This testimony is classic, excludable hearsay. Furthermore, this testimony would be highly prejudicial to Defendant Rivera under Rule 403, as "serious ethical misconduct and allegations" could mean literally anything. Likewise, such testimony also falls squarely within the ambit of Rule 404(a)(1), as "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." And this statement would not meet any of the exceptions under Rule 404(a)(2), as there is no "pertinent trait" being described by Arcay—instead, Arcay is making a generalized, subjective assessment of Rivera's character and moral compass. Accordingly, Defendants move this Court to exclude this statement and the many others like it in which witnesses have cast broad, non-specific aspersions on Rivera's character as being "corrupt," "unethical," "crooked," or the like.

2. **Agent Sean Slattery noted the following in his April 13, 2022 302 Report for the March 29, 2022, interview of <u>Gina Coon</u>, a former treasurer of Citgo Petroleum:**

   i. "Coon did not know why the [PDV USA-IAC contract] was being transferred. Coon's [*sic*] believed the transfer decision came from conversations between company executives, including Jose Pereira, Gustavo Cardenas, and Dan Addison." Page 3.

This is pure speculation. Coon goes from admitting that she "did not know" the reason for the supposed transfer of the contract to immediately speculating as to what that reason could have been. Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Here, Coon clearly has *no knowledge* of the matter, personal or otherwise. Much of the government's case impermissibly rests on pure speculation by individuals who were adjacent to the events in question

7

but had no direct, personal knowledge of the nuances of those events. *See United States v. Hawkins*, 934 F.3d 1251, 165 (11th Cir. 2019) (noting that a witness cannot "venture[ ] into speculation" and thus "usurp[ ] the jury's function, which is to draw its own inferences from the evidence presented"). But because neither guesses nor assumptions are evidence, such statements must be excluded.

> ii. "Coon personally felt an 'intense buzz' surrounding the [IAC] contract, and an individual from the 'controller's group' did a Google search of David Rivera. The results were linked to articles about Rivera being a 'corrupt Congressman.' Coon assumed that was basis for the reviews being conducted on the contract. Coon was aware of other 'closed door' meetings that occurred on the topic that included company executives." Page 3.

The same objections apply here as to Arcay's generalized assessments of Rivera's character previously—these are vague, speculative, inadmissible hearsay depictions of Rivera's supposed moral compass. Reputational haymakers like this cannot be admitted into evidence.

3. **Agent Timothy Lawler noted the following in his 302 Reports for the multiple interviews of <u>Hugo Perera</u>:**

> i. Perera "was hesitant to meet Rivera since [he] knew about Rivera from newspaper articles the past criminal election case involving Rivera." Perera "did not want to get involved in anything illegal." March 10, 2020, 302 Report of January 29, 2020, Interview at 4.

This is an entirely irrelevant statement under Rule 401 since Perera—despite whatever reservations he purportedly had about working with Rivera—did indeed partner with Rivera (and Nuhfer, Ballard Partners, Gorrín, and others) on multiple Venezuela-related projects. And to the extent that this Honorable Court disagrees and believes that this statement has some shred of probative value, it should be excluded under Rule 403 as being highly prejudicial to Rivera and Rule 404 as being impermissible character evidence. The allegations against Rivera regarding

8

election wrongdoing have never been substantiated, and—even if they had been—have no bearing on the FARA violation alleged in the present case.

    ii.    Perera "*thinks* Rivera mentioned having communications with PDVSA regarding the payment" and "*thought* Rivera disguised the fact that the money came from Russia, and instead made it appear to come from PDVSA." *Id.* at 10 (emphases added).

This is pure speculation and should be excluded as such under Rules 401, 403, and 602. Again, the government cannot be permitted to build its case on a foundation of shot-from-the-hip guesses.

    iii.    "[Rivera] would do anything to make money through his connections and to include making money with Raul Gorrín." August 27, 2020, 302 Report of February 26, 2020, Interview at 1.

Again, this inadmissible speculation under Rule 602. Furthermore, that Rivera would supposedly "do anything to make money" could mean anything. Accordingly, such a sweeping statement is precluded by Rules 403 and 404(a)(1). These are generalized aspersions on Rivera's character that serve no probative value.

    iv.    Perera "realized that he was working with a crooked politician claiming he had powers to work out the Vz issues." *Id.* at 2.

This must be excluded under Rule 403 as being highly prejudicial to Rivera and under Rule 404(a)(1) as being impermissible character evidence. The phrase "crooked politician" is extremely prejudicial and has no probative value—it is simply an *ad hominem* attack on Rivera's character.

Lastly, the improper attacks on David Rivera are not admissible against Esther Nuhfer. The statements are not relevant to her at all and the "guilt by association" ramifications of such irrelevant evidence would unduly prejudice the case against her.

\* \* \*

9

#110723894v1

WHEREFORE, Defendants David Rivera and Esther Nuhfer respectfully ask that Court grant this Motion *in limine* and preclude the admission of the evidence discussed herein.

**Respectfully submitted on February 6, 2026,**

| | |
|---|---|
| **JONES WALKER LLP**<br>201 S. Biscayne Blvd., Suite 3000<br>Miami, FL 33131<br>Tel: (305) 679-5700<br>By:  */s/ Edward R. Shohat*<br>     **Edward R. Shohat**<br>     Florida Bar No. 152634<br>     eshohat@joneswalker.com<br>     **David S. Weinstein**<br>     Florida Bar No. 749214<br>     dweinstein@joneswalker.com<br>     **Thomas P. Bardenwerper**<br>     Florida Bar No. 1044458<br>     tbardenwerper@joneswalker.com<br><br>*Counsel for David Rivera* | **MARKUS/MOSS PLLC**<br>40 N.W. Third Street, PH1<br>Miami, FL 33128<br>Tel: (305) 379-6667<br>By:    */s/ David Oscar Markus*<br>     **David Oscar Markus**<br>     Florida Bar No. 119318<br>     dmarkus@markuslaw.com<br>     **A. Margot Moss**<br>     Florida Bar No. 91870<br>     mmoss@markuslaw.com<br>     **Melissa Madrigal**<br>     Florida Bar No. 93241<br>     mmadrigal@markuslaw.com<br><br>*Counsel for Esther Nuhfer* |

#110723894v1