UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

    Defendants.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION
TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY ROGER CRUZ**

    The United States of America, by and through the undersigned attorneys, respectfully submits this response in opposition to the Defendants' Joint Motion to Disqualify AUSA Roger Cruz (DE 327).

## Introduction

    Contrary to Defendants' claim that their motion seeking to disqualify AUSA Cruz from further participation in this case is based on "[m]ultiple undisputed facts" (Mot. at 1-2), it consists of little more than conclusory allegations, speculation, innuendo, and exaggeration.  For example, their primary claim, that AUSA Cruz's spouse's professional and business interests are "directly connected to Ballard Partners" (Mot. at 5), thereby creating a financial conflict of interest for AUSA Cruz, is not remotely accurate.  In fact, these allegations appear to be a complete fabrication by the Defendants.  Ms. Cruz, to the government's knowledge, has no current or past financial relationship with Ballard Partners nor has she ever been engaged to work with Ballard Partners in any of her business endeavors.  Indeed, flagrantly obvious is Defendants' failure, as the moving parties, to allege any specific and identifiable facts or evidence to support their

conclusory assertions that AUSA Cruz's spouse's professional life is "intertwined" with Ballard Partners business affairs. It is not and Defendants' efforts to suggest otherwise through broad statements and conclusory allegations to create a financial conflict of interest where none exists should be rejected by this Court.

Indeed, following Defendants first raising these matters with the government two weeks ago, the prosecution team discussed these matters – including an accurate recitation of the actual facts implicated by Defendants' motion – with their supervisors up through the chief of the criminal section and the U.S. Attorney's Office's designated professional responsibility officer to determine if there was an actual conflict of interest issue that might require AUSA Cruz to recuse himself from this matter. After vetting the matter, including consulting with the General Counsel's Office for Executive Office of the United States Attorneys, it was determined that there was no actual conflict of interest or appearance of such and that AUSA Cruz would not be required to recuse himself from representing the United States, and defense counsel was informed as much.

Unfortunately, that Defendants would continue to pursue this matter is not surprising. Throughout the investigation and prosecution of this case, Defendants have attempted on numerous occasions (as recently as December 2025) to derail this case by, for example, asking DOJ to dismiss the criminal case on the purported grounds that it was a politically tainted prosecution, based on little more than a photograph obtained by Defendants from the internet of a prosecutor (who previously worked on the investigation in a secondary capacity) attending a Hillary Clinton campaign event in 2016. Indeed, even before this Court, Defendant Rivera previously attempted to stall and delay these proceedings by pursuing discovery from the government relating to its communications with the attorneys for PDV USA in its SDNY action


conclusory assertions that AUSA Cruz's spouse's professional life is "intertwined" with Ballard Partners business affairs. It is not and Defendants' efforts to suggest otherwise through broad statements and conclusory allegations to create a financial conflict of interest where none exists should be rejected by this Court.

Indeed, following Defendants first raising these matters with the government two weeks ago, the prosecution team discussed these matters – including an accurate recitation of the actual facts implicated by Defendants' motion – with their supervisors up through the chief of the criminal section and the U.S. Attorney's Office's designated professional responsibility officer to determine if there was an actual conflict of interest issue that might require AUSA Cruz to recuse himself from this matter. After vetting the matter, including consulting with the General Counsel's Office for Executive Office of the United States Attorneys, it was determined that there was no actual conflict of interest or appearance of such and that AUSA Cruz would not be required to recuse himself from representing the United States, and defense counsel was informed as much.

Unfortunately, that Defendants would continue to pursue this matter is not surprising. Throughout the investigation and prosecution of this case, Defendants have attempted on numerous occasions (as recently as December 2025) to derail this case by, for example, asking DOJ to dismiss the criminal case on the purported grounds that it was a politically tainted prosecution, based on little more than a photograph obtained by Defendants from the internet of a prosecutor (who previously worked on the investigation in a secondary capacity) attending a Hillary Clinton campaign event in 2016. Indeed, even before this Court, Defendant Rivera previously attempted to stall and delay these proceedings by pursuing discovery from the government relating to its communications with the attorneys for PDV USA in its SDNY action

against Rivera's company based on unsupported allegations that the government had been unfairly manipulating the civil proceedings to gain an unfair advantage in the criminal case. Ultimately, despite being given two chances to pursue his motion, Rivera's motion was denied because of a failure to proffer any facts or evidence to support such unfounded claims of government misconduct. *See* (DE 276 at 4–5 (order of Magistrate Judge Torres denying Defendant Rivera's motion to compel discovery because the Defendant's motion relied "solely on conjecture to support his collusion theory" and finding that Rivera's arguments were "wholly without persuasive factual support")).

For these and the reasons set forth below, this Court should deny Defendants' motion to disqualify AUSA Cruz from continuing to participate in this case.

## Factual Background

To place the issues raised in Defendants' motion in proper context, included below are background facts relating to Ms. Cruz and the issues raised by Defendants.

A.  Background Regarding Ms. Cruz

Ms. Cruz is an attorney who currently is a Vice President of GLC Real Estate, Inc. ("GLC"), where she acts primarily as a consultant to developers in the realm of workforce housing and transit-oriented developments. She and her partner opened the firm about a year ago. Before that, Ms. Cruz worked for Florida East Coast Industries ("FECI"), as a Vice President of Corporate Development for roughly ten years. FECI was a major landowner of transit-oriented property in Miami-Dade County and is most widely known for its contribution to the development of the Brightline Train, which is Florida's first and only highspeed train, currently operating from Miami to Orlando.

3

Prior to FECI, Ms. Cruz was Chief of Staff to a local County Commissioner named Jose "Pepe" Diaz. Ms. Cruz started working for Miami Dade County as a legislative aide sometime in late 2001 and worked there in one capacity or another prior to eventually becoming Chief of Staff to Commissioner Diaz. She remained with Miami Dade County until she joined FECI around 2015.

Ms. Cruz graduated law school in 2001, passed the bar in July 2001, and has been a member in good standing of the Florida Bar since that year. She obtained her undergraduate degree from a local state school in 1998 and graduated high school locally in 1994. Ms. Cruz has been a life-long resident of Miami-Dade County, aside from three years of law school in Boston, Massachusetts.

B.   Relationship to Ballard Partners

Ms. Cruz is not engaged in business activities with Ballard Partners in matters relating to the "Underline," the Greater Miami Expressway Agency ("GMX"), or the rock mining industry. Ms. Cruz, independently, through her professional work, represents clients before GMX and also represents the rock mining industry. None of this work concerned or concerns Ballard Partners. Moreover, Ms. Cruz has never received any compensation from or had any financial relationship with Ballard Partners (or the individual Ballard employees named in Defendants' motion) and she has never worked jointly with Ballard Partners or its individual employees on any lobbying or other related business matters while working for FECI, GLC Development, or otherwise.

Ms. Cruz did testify before the Florida Public Service Commission in support of Florida Power and Light's ("FPL") rate increase, but that was not through or in conjunction with Ballard Partners. Ms. Cruz does not know to what extent Ballard Partners' may provide services to FPL.

C. <u>Ms. Cruz's Political Interactions with Defendants</u>

To Ms. Cruz's knowledge, there is no truth to the allegation that Defendant Rivera had an adversarial relationship with Commissioner Jose "Pepe" Diaz while Ms. Cruz served as his Chief of Staff. To her knowledge, Jose "Pepe" Diaz was a local county commissioner while Rivera was either a state representative or a one-term member of the United States House of Representatives and Ms. Cruz was not involved in any political disputes involving Rivera. In fact, she does not even recall having any formal meetings or conversations with Rivera. To her knowledge, there were no political disputes, legislative issues, or local government matters involving policy and political conflicts involving Rivera and Jose "Pepe" Diaz such that it would be accurate to label them "political adversaries."

Ms. Cruz has not worked closely with Nuhfer and definitely has not "worked with her since the late 1990s." In fact, as mentioned above, Ms. Cruz was in high school in the 1990s and she obtained her undergraduate degree in 1998 and graduate degree in 2001. This all occurred well before Ms. Cruz worked for Miami-Dade County or had the occasion to know who Nuhfer was. From Ms. Cruz's perspective, there has never been a long-standing relationship with Nuhfer that later became adverse or otherwise. She has never had an adverse political, lobbying, or campaign related interest with Nuhfer.

D.  The Birthday Party

AUSA Cruz and his wife recently attended a private birthday celebration at the home of Jose Felix Diaz (no relation to Jose "Pepe" Diaz), who is a personal friend. Their sons row on the same high school crew team. They share a carpool and they are neighbors. To AUSA Cruz's knowledge, there were no potential witnesses from this case (including Brian Ballard, Sylvester Lukis, and Bridget Nocco) that attended the party and, if there were potential trial witnesses present, neither AUSA Cruz nor his wife spoke with them. Nor was Susan Wiles (the current White House Chief of Staff and former Ballard Partners' employee) at the birthday party, as far as AUSA Cruz knows. Indeed, AUSA Cruz did not even know that Jose Felix Diaz worked at Ballard Partners (he is the managing partner of Ballard's Miami office) until the day AUSA Cruz received a letter by email from defense counsel identifying the issues raised in Defendants' motion. And it bears noting that Jose Felix Diaz is not now and has never been a potential witness in the pending criminal case.

E.  Personal Animosity Allegations

AUSA Cruz does not believe that he ever said that "I looked forward to the opportunity to convict a Markus client and put Markus in his place." Even defense counsel's motion caveats these purported quotes, whatever their source, stating that it may have been "words to that effect." AUSA Cruz has no personal animus towards Markus or any other defense counsel involved in this case. To that end, it bears noting that AUSA Cruz joined the prosecution team in this case in December 2025 and filed his notice of appearance in early January 2026. Prior to his involvement, two separate grand juries in 2022 and 2023 returned the indictments in this case finding probable cause for the FARA, money laundering, and tax charges pending against

Defendants and AUSA Cruz is co-counsel with two other prosecutors, one of whom has been assigned to this case since the pre-indictment investigative stage of the proceedings.

### **Legal Standard**

The Government must "wield its formidable criminal enforcement powers in a rigorously disinterested fashion[.]" *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987). Accordingly, both the Constitution and federal law forbid federal prosecutors "from representing the Government in any matter in which they, their family, or their business associates have any interest." *Id.* at 803 (citing 18 U.S.C. § 208(a)); *see also United States v. Esformes*, 60 F.4th 621, 634 (11th Cir. 2023) ("The decision in *Young* established a categorical rule against the appointment of an interested prosecutor[.]" (alteration accepted) (internal quotation marks omitted)). To ensure that criminal proceedings comply with this "basic notion[ ] of fairness[,]" courts possess a limited supervisory power to disqualify Assistant United States Attorneys upon a showing that the prosecutor is impermissibly "interested" in the outcome of the case. *Young*, 481 U.S. 808; *see also United States v. Anderson*, 93 F.4th 859, 869 (5th Cir. 2024) ("[C]ourts have allowed disqualification of government counsel in limited circumstances.").

Nevertheless, disqualifying an Assistant United States Attorney is a "drastic measure" that can only be deployed "in limited circumstances." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (citation omitted); *see also United States v. Isaacson*, 752 F.3d 1291, 1308 n.11 (11th Cir. 2014) ("It bears mention that a stronger showing of a conflict is generally required for prosecutorial recusal than judicial recusal."); *Anderson*, 93 F.4th at 869 ("[I]nstances in which the courts have found it necessary to disqualify a particular United States Attorney are rare[.]" (quoting *United States v. Zagami*, 374 F. App'x 295, 297 (3d Cir. 2010))); *United States v. Childers*, No.

7

CR-24-102-G, 2024 WL 3953993, at *1 (W.D. Okla. Aug. 27, 2024) ("Motions seeking the disqualification of opposing counsel are viewed with suspicion, however, and the Court must guard against the possibility that disqualification is sought to secure a tactical advantage in the proceedings." (internal quotations omitted)). That is because the "doctrine of separation of powers requires judicial respect for the independence of the prosecutor" absent egregious exercises of prosecutorial discretion. *United States v. Williams*, 68 F.4th 564, 571 (9th Cir. 2023) (quoting *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991)); *accord Bolden*, 353 F.3d at 879.[1]

Although the Eleventh Circuit has not yet articulated a specific standard for disqualifying Assistant United States Attorneys, it is well-settled that a federal prosecutor cannot be disqualified "absent a violation of the Constitution, a federal statute, or a procedural rule" since courts "do not dictate to the Executive branch who will serve as its prosecutors . . . unless compelled by the law to do so." *Williams*, 68 F.4th at 571–72 (alterations accepted) (quoting *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992)). Courts have found that an AUSA cannot be disinterested as a matter of law when: (1) the AUSA previously represented another party in the case; (2) the AUSA will act as a witness at trial on behalf of the Government; (3) the AUSA has a pecuniary interest in the outcome of the case; or (4) the AUSA is facing a bona fide civil action alleging bad faith in the performance of his or her official duties. *See Anderson*, 93 F.4th at 869; *Bolden*, 353 F.3d at 878–79; *Zagami*, 374 F. App'x at 297. "[P]roof of a conflict must be clear and convincing

---

[1] Given these constitutional concerns, Defendants' reliance on *Norton v. Tallahassee Memorial Hospital*, 689 F.2d 938 (11th Cir. 1982)—which addressed the standard for disqualifying private attorneys in a civil cases—is inappropriate. (Mot. at 3). Even if *Norton* applied in this case, that test still requires the movant to show "a reasonable possibility that some specifically identifiable impropriety did in fact occur." *Norton*, 689 F.2d at 941. For all the reasons discussed below, the Defendants' allegations cannot satisfy even this modest requirement.

to justify removal of a prosecutor from a case." *United States v. Kahre*, 737 F.3d 554, 574 (9th Cir. 2013).

## Legal Argument

The Defendants argue that AUSA Cruz must be disqualified for five reasons: (1) AUSA Cruz's wife "is currently engaged in several ongoing business activities that are directly connected to Ballard Partners" and Ballard Partners "currently employs multiple critical witnesses" (Mot. 5); (2) AUSA Cruz and his wife attended a birthday party "in an intimate setting at the home of Ballard Partners' leadership" which would (supposedly) cause a "reasonable observer [to] question whether such off-duty fraternization with the employer of multiple key witnesses might compromise the prosecutor's impartiality" (Mot. 7); (3) AUSA Cruz's wife has an "antagonistic political history" with the Defendants; (4) AUSA Cruz purportedly "expressed a personal grudge against Defendants' lead counsel" (Mot. 9); and (5) the "cumulative effect" of these prior four "circumstances" creates a "profound appearance of conflict and compromised impartiality" (Mot. 11). All of Defendants' arguments are meritless.

**First**, contra to the allegations in the Defendants' Motion, the "financial fortunes of AUSA Cruz's household" are not aligned with Ballard Partners. (Mot. 5). It is true that a spouse's financial interests are imputed to the AUSA. *See* 18 U.S.C. § 208(a); 5 C.F.R. § 2635.402(b)(2). But disqualification is required only "if the particular matter *will have a direct and predictable* effect on that [financial] interest." 5 C.F.R. § 2635.402(a) (emphasis added). A matter will only have a "direct and predictable effect" on a financial interest "if there is a close causal link between any decision or action to be taken in the matter and any expected effect on the matter on the financial interest" *and* "if there is a real, as opposed to a speculative, possibility that the matter will affect

9

the financial interest." *Id.* § 2635.402(b)(1)(i)–(ii).

Neither prong is met here. There can be no "close causal link" between this action and AUSA Cruz's financial interests because neither he nor his wife have a financial interest or business relationship with Ballard Partners. AUSA Cruz's spouse certainly is not "collaborating with [Ballard Partners] in highly lucrative endeavors." (Mot. 6). Even if there was some kind of "causal link" between the Cruz household's finances and Ballard Partners (which there is not), Defendants' Motion is premised on the purely speculative notion that "Ballard Partners' witnesses *might* come under scrutiny, or their clout *may* diminish" based on what happens at trial. (Mot. 6 (emphasis added)). Since this matter will not have "a direct and predictable effect" on AUSA Cruz's financial interests, this first ground for disqualification fails as a matter of law.

**Second**, the mere fact AUSA Cruz attended a birthday party hosted by one of Ballard Partners' senior partners (Jose Felix Diaz) does not create a basis for disqualification. As discussed above, no one at the birthday party is slated to be a witness at trial. Although the Defendants question the propriety of this "off-duty fraternization with the employer of multiple key witnesses," they fail to explain how an AUSA attending the birthday party of a family friend—who has no relationship to any of the witnesses in this case beyond sharing an employer—violates any federal law or regulation. In short, no reasonable person would question AUSA Cruz's partiality merely because he has a personal relationship with a person who shares the same employer as some of the potential witnesses in this case. *See* 5 C.F.R. § 2635.502(a).

**Third**, the Defendants have proffered no evidence that AUSA Cruz's wife "has been personally and professionally at odds with both Defendants." (Mot. 8). AUSA Cruz's wife does not have "a long professional and social relationship" with Defendant Nuhfer. (Mot. 8). The

10

Motion's argument to the contrary is categorically false.

AUSA Cruz has also never had a personal or professional relationship (hostile or otherwise) with Defendant Rivera. The only link the Defendants can muster up is that AUSA Cruz's wife once worked for Jose "Pepe" Diaz, who Defendants summarily assert is a "well-known political adversar[y]" of Defendant Rivera. (Mot. 8). Even if Diaz and Rivera could be considered political rivals, no reasonable person would assume that "AUSA Cruz's prosecutorial decisions are influenced by the antagonistic political history between his wife" and Rivera because of a prior professional relationship with Jose "Pepe" Diaz. (Mot. 8). The Court should not give any credence to this speculative and patently frivolous argument. *See Kahre*, 737 F.3d at 574 ("[P]roof of a conflict must be clear and convincing to justify removal of a prosecutor from a case."); *United States v. Scotton*, No. 12-CR-60049, 2014 WL 46496, at *2 (S.D. Fla. Jan. 6, 2014) (denying motion to disqualify AUSA based on "unsubstantiated allegations" and "wild speculation").

**Fourth**, the Defendants have not provided any evidence that AUSA Cruz has a "strong personal animus" against Defendant's Nuhfer's lead counsel. (Mot. 9). This argument is premised upon unverified "information received by the defense" that AUSA made an antagonistic comment against defense counsel. Of course, this Court cannot disqualify an AUSA based upon hearsay and innuendo. *See Kahle*, 737 F.3d at 574; *Scotton*, 2014 WL 46496, at *2.

Moreover, even if the Court assumes AUSA Cruz made the comment in question, disqualification is not appropriate for two additional reasons. One, the Defendants have provided zero legal support for their novel theory that an AUSA can be disqualified based on comments he made about a defense attorney—as opposed to a defendant—in a context that was unrelated to the defendant's criminal prosecution. *Cf. United States v. Gotti*, 782 F. Supp. 737, 745–46 (E.D.N.Y.

1992) (denying motion to disqualify where AUSA "took exception" to defense counsel's decision to serve "a subpoena on the hospital where [the AUSA's] wife was employed for the production of her personnel records").[2] Two, there is "no legal authority . . . that a district court should disqualify a potentially angry prosecutor. Unlike judges, '[p]rosecutors need not be entirely neutral and detached.'" *United States v. Ziesman*, 409 F.3d 941, 951 (8th Cir. 2005) (quoting *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249 (1980)); *see also Kahre*, 737 F.3d at 575 (holding that a prosecutor's "isolated remarks do not constitute clear and convincing evidence of misconduct stemming from an impermissible conflict of interest"). In sum, the court cannot disqualify an AUSA based on an unsubstantiated story that he might have used intemperate language when referring to defense counsel in an unrelated context, particularly where, as here, the AUSA is member of three-person prosecution team.

**Fifth**, the Defendants' "cumulative effect" argument necessarily fails because all of the other arguments made in their Motion either fail as a matter of law or are meritless on their face. *Cf. Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) ("As demonstrated above, none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate.").[3]

---

[2] The Defendants reference this Court's decision in *United States v. Shaygan*, 661 F. Supp. 2d 1289 (S.D. Fla. 2009), *rev'd*, 652 F.3d 1297 (11th Cir. 2011), where (in the Defendants' retelling) "personal animus drove another Southern District of Florida prosecutor to take inappropriate actions" against the same defense counsel. (Mot. 10). AUSA Cruz was not one of the prosecutors involved in *Shaygan*, so it is puzzling how that case has anything to do with AUSA Cruz's partiality here.

[3] The final page of the Defendants' Motion asserts that the Government would not be prejudiced if the Court disqualified AUSA Cruz because he "was a very recent addition to a robust, competent, and experienced prosecution team that has already been handling this case for over three years." (Mot. 12). Of course, the Court does not need to address the issue of prejudice because the Defendants have failed to produce any legitimate basis to disqualify AUSA Cruz. That said, the

## Conclusion

For the reasons set forth above, this Court should deny Defendants Joint Motion to Disqualify Assistant United States Attorney Roger Cruz.

                                            Respectfully submitted,

                                            JASON A. REDING QUIÑONES
                                            UNITED STATES ATTORNEY

By:    */s/ Harold E. Schimkat*
          Harold E. Schimkat
          Assistant United States Attorney
          Court ID No. A5500567
          99 N.E. 4th Street, 4th Floor
          Miami, Florida 33128
          Office: (305) 961-9298
          Cell: (786) 378-4344
          Harold.schimkat@usdoj.gov

                                            &

*/s/ David J. Ryan*
David J. Ryan
Trial Attorney, National Security Division
Special Bar ID No. A5503306
District of Columbia Bar No. 888325195
950 Pennsylvania Ave., NW, Room 7700
Washington, DC 20530
Tel: (202) 353-7842
David.ryan2@usdoj.gov

---

Government notes that disqualifying AUSA Cruz would be tremendously prejudicial since this Court would be dictating the members of its trial team by judicial fiat. As several courts have persuasively explained, this kind of act typically violates the separation of powers doctrine and must only be exercised in the most extreme circumstances. *See Williams*, 68 F.4th at 571 (9th Cir. 2023); *Bolden*, 353 F.3d at 879. This case comes nowhere close to warranting such judicial interference.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                       */s/ Harold E. Schimkat*
                                       Harold E. Schimkat
                                       Assistant United States Attorney