UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FLORIDA

Case No. 22-20552-CR-DAMIAN

UNITED STATES OF AMERICA,

        *Plaintiff*,

v.

DAVID RIVERA, et al

        *Defendants.*

and

NEIL M. SCHUSTER, PA,
NEIL M. SCHUSTER, individually,

MOVANT,
*Subpoenaed Third Party*

_____/

## MOTION TO QUASH SUBPOENA DIRECTED TO
## THIRD-PARTY ATTORNEY FOR COOPERATING WITNESS

Third-party attorney NEIL M. SCHUSTER, individually, and on behalf of NEIL M. SCHUSTER, P.A. ("Attorney Schuster"), respectfully moves this Honorable Court to quash the third-party subpoena issued by defendant David Rivera ("Schuster Subpoena") (attached hereto as Exhibit ("Ex.") A).  In filing this application, Attorney Schuster relies on the Constitutional, evidentiary, common law and/or other grounds of privilege, as well as Federal Rule of Criminal Procedure ("FRCrP.") 17(c) and Federal Rules of Civil Procedure ("FRCP") 26 and 45(d)(3)(A)(iv).

Florida Rule of Professional Conduct 4-1.6 requires this application.  Rule 4-1.6 states:

**RULE 4-1.6 CONFIDENTIALITY OF INFORMATION**
**(a) Consent Required to Reveal Information.** A lawyer
must not reveal information relating to a client's representation
except as stated in subdivisions (b), (c), and (d), unless the client
gives informed consent.
…..

**(f) Limitation on Amount of Disclosure.** When disclosure is
mandated or permitted, the lawyer must disclose no more
information than is required to meet the requirements or
accomplish the purposes of this rule.

The questions presented to this Honorable Court are limited: (1) without a substantial showing of relevancy and materiality, should a criminal defense attorney with no firsthand knowledge regarding any of the trial matters at issue be required to testify where his client is a cooperating witness, and (2) should that defense attorney be required to produce documents in his client file related to his representation of a cooperating witness, including a document he prepared for his client's interview with the government containing the attorney's mental impressions, legal analysis, and thoughts, and never given to the government?  For the reasons set forth below, Attorney Schuster respectfully requests that this Court answer both questions in the negative and grant the requested relief.

## I.      Introduction and Background

Attorney Schuster's longtime client is Hugo Perera ("Perera"), who isexpected to be called as a government trial witness.   *See* Affidavit of Neil M. Schuster, attached hereto as Ex. B.  Perera is a respected local businessman and entrepreneur.  Perera's status as a prospectivegovernment witness and his participation with Defendant Rivera and his codefendant Esther Nuhfer ("Defendant Nuhfer") (collectively, "the Defendants") has been widely reported in multiple *Miami Herald* articles.  *See, e.g.,* "Rivera sues witness in case accusing ex-congressman of being a secret agent for Venezuela," Miami Herald, Jay

Weaver, December 18, 2024, available at https://www.miamiherald.com/news/local/crime/article295450929.html.

In January 2020, Perera individually, and his related business entities, received Southern District of Florida Grand Jury subpoenas to provide documents and records related to several individuals and businesses, including Defendants Rivera and Nuhfer. *See* Grand Jury subpoenas to Krome Agronomics, LLC, PG & Associates, Inc., and Perera, dated January 9, 2020) (collectively, the "Government Subpoenas"), attached hereto as Ex. C.

Perera hired Attorney Schuster in 2020 to represent him and his related business entities in relation to the government's service of process.  Through Attorney Schuster, Perera fully complied with the Government Subpoenas, both individually and on behalf of his related corporations.  Perera produced documents, emails, text messages, and group chats, which included the Defendants and others.

Attorney Schuster's representation was simple and direct.  Perera was fully available to the government to respond to legitimate investigative inquiries.  Schuster treated the prosecution team's inquiries as justified and entitled to responses.

Without any grant of immunity or proffer agreement, Perera complied with the Government Subpoenas.  Attorney Schuster has continuously represented Perera regarding the government's underlying investigation of the Defendants, and others, for over six years.

This Honorable Court should quash the testimony portion of the Rivera Subpoena because Defendant Rivera has not established – and cannot establish – that Attorney Schuster's testimony is relevant, material and favorable to the defense.  *See, e.g., United*

*States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).   Attorney Schuster has no connection whatsoever to any of the allegations in the Superseding Indictment concerning the Defendants' activities as purported unregistered agents of the Government of the Bolivarian Republic of Venezuela.  *See* Ex. B.  Attorney Schuster has never interacted with the Defendants, Raul Gorrin, Marco Rubio, Brian Ballard, Susan Wiles, Pete Sessions, Bolivarian Republic of Venezuela President Nicolas Maduro, any executives at Citgo, or any executives at Exxon.   *Id.*   As such, his anticipated testimony is not relevant to the Defendants' alleged activities.

As a point of comparison, Attorney Schuster has even less to do with the allegations in the Superseding Indictment than White House Chief of Staff Susan Wiles – a subpoenaed trial witness whose subpoena United States Magistrate Judge Edwin G. Torres quashed. *See* DE 358, Order on Motion to Quash Trial Subpoena Directed to White House Chief of Staff Susan Wiles; *see also* DE 330, Government's Motion to Quash Trial Subpoena Directed to White House Chief of Staff Susan Wiles ("Government's Motion to Quash the Wiles Trial Subpoena") and DE 350, Government's Reply in Support of Motion to Quash Trial Subpoena Directed to White House Chief of Staff Susan Wiles ("Government's Reply"). Attorney Schuster adopts the government's legal reasoning in both its Motion to Quash the Wiles Trial Subpoena, its Reply, and the Order of Magistrate Judge Torres.

While Attorney Schuster does not occupy an office next to the President of the United States, there is no legal justification for failing to apply the "material, favorable, and necessary" standard differently to Attorney Schuster..

Regarding the *duces tecum* portion of the Schuster Subpoena, originally demanded Attorney Schuster's "entire file" related to his six-year representation of witness Perera.

Rivera's counsel then agreed to narrow his request to demand only "non-privileged" materials..  In response, if this Court does not quash the *duces tecum* portion of the Rivera Subpoena, Attorney Schuster has agreed to produce his correspondence with the Department of Justice and all the materials Perera produced in response to the Government Subpoenas (despite the government's assurance that it has already produced these same materials as part of its discovery obligations).

If this Court does not grant the instant Motion to Quash the Rivera Subpoena, the final matter in controversy related to the *duces tecum* portion of the Rivera Subpoena is Defendant Rivera's request for "the statement prepared by Mr. Perera which you read during his government debrief on 2/26/20 as reflected in the following statement contained in the FBI 302 from that debrief: 'The CHS (Perera) prepared a typed statement which was read to the group by attorney Neil Shuster.'"  *See* Ex. A.

Rather than a "statement prepared by Mr. Perera," the document at issue is an internal file memo that Attorney Schuster prepared, after speaking with his client, which Attorney Schuster used in a presentation to the government.  *See* Ex. B.  That document included Attorney Schuster's mental impressions and thoughts which he referred to, paraphrased from, added to, and spoke extemporaneously about while addressing the government at a meeting ("the Schuster Memo").  *Id.*   As such, the Schuster Memo is protected attorney work product and is not subject to disclosure.  The FBI 302 referenced in the Schuster Subpoena describes, in part, what Attorney Schuster said at that meeting.

II.      **This Court Should Quash the Testimony Portion of the Rivera Subpoena.**

a. Legal Framework.

In its robust and successful effort to quash the trial subpoena served on Ms. Wiles –

an individual with a vastly greater connection to the Defendants than Attorney Schuster –

the government summarizes the law on defendants' rights to compel testimony:

> Although the Sixth Amendment guarantees a criminal defendant the right "to have compulsory process for obtaining witnesses in his favor," U.S. Const. amend. VI, the Supreme Court has recognized that this right does not entitle a defendant "to secure the attendance and testimony of any and all witnesses" he might wish to testify at trial.  United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).  Rather, by its terms, the Sixth Amendment guarantees a defendant "compulsory process for obtaining *witnesses in his favor.*"  *Id.* (emphasis in original).

> Consequently, a defendant who seeks to compel a witness's attendance at trial must "make some plausible showing of how their testimony would [be] both material and favorable to his defense."  Id.; see also United States v. North, 910 F.2d 843, 889 (D.C. Cir. 1990) (applying this standard to affirm the district court's quashing of Oliver North's trial subpoena to former President Ronald Reagan in a prosecution of obstruction-related offenses arising from the Iran Contra affair); United States v. Naghdi, 953 F.2d 1389 at *1-2 (9th Cir. 1992) (affirming district court's refusal to enforce Rule 17 subpoenas to several high level government employees where defendant failed to make a plausible showing as to the nature of their anticipated testimony in support of his purported public authority defense, which the court found to be otherwise "inherently incredible").

> In determining materiality, at least one district court has found that "in the Sixth Amendment context … evidence is material if its exclusion might prejudice the outcome of the defendant's case." United States v. Rosen, 520 F. Supp. 2d 802, 811 (E.D. Va. 2007) (enforcing defense Rule 17 subpoenas to the then-Secretary of State and other high-level current and former officials based on defendants providing the court with specific information concerning how their anticipated testimony would relate to the actual defense the defendants intended to pursue at trial).  Moreover, where a defendant does not have access to a proposed witness, "a defendant need not explain precisely how a witness may testify; rather, events to which a witness

might testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality." Id. Mere speculation, however, that a witness's testimony would be favorable to the defense is insufficient to compel the enforcement of a subpoena *ad testificandum.* Id.

FN 6 – In addition, the testimony that a defendant seeks to elicit at trial must also be consistent with the Federal Rules of Evidence such as relevancy determinations under Rule 401 and not be subject to exclusion under Rule 403 on grounds that its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id.

DE 330 at 8-10.

In its Reply, the Government further illustrates the legal grounds for quashing a subpoena directed at a non-party with no firsthand information regarding criminal allegations:

A defendant is not entitled to compulsory process unless he makes "some plausible showing of how [the witness's] testimony would [be] both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). To be "material," there must be "a reasonable likelihood that the testimony could have affected the judgement of the trier of fact" or, put another way, the witness's testimony "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ….; and then quoting Kyles v. Whitley, 514 U.S. 419, 434-35 (1995)). A defendant cannot satisfy this standard based on conclusory allegations or speculation about how a witness might testify. See United States v. Schaefer, 709 F.2d 1383, 1386 (11th Cir. 1983) ("A defendant cannot simply hypothesize the most helpful testimony the [witness] could provide. Rather, he must show some reasonable basis to believe that the [witness] would testify to material and favorable facts." (citing Valenzuela-Bernal, 458 U.S. at 873)); United States v. De La Cruz Suarez, 601 F.3d 1202, 1213 (11th Cir. 2010) ("De La Cruz made no showing, other than his own conclusory allegations, that the testimony of the repatriated migrants would

have been material to the case, and favorable to him."); United States v. Tipton, 572 F. App'x 743, 748 (11th Cir. 2014) ("Here, Tipton fails to show that Hall's testimony was material and favorable because he cannot state with certainty what her testimony would have contained.").

DE 350, Government's Reply, at 3-4.

In granting the Government's Motion to Quash the Wiles Trial Subpoena, the Magistrate Court notes:

> The party issuing the subpoena must thus bear the burden to show that the proposed witness's testimony would provide a "material and plausible benefit to their case." *Valenzuela-Bernal*, 458 U.S. at 867. And it is the Court's responsibility – not the opposing party's – "to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *Tomison*, 969 F. Supp. at 594 (citing Bowman Dairy Co., 341 U.S. at 221).
> ****
> The Defendants' response ultimately fails to meet the relevancy and necessity thresholds they must demonstrate for the Court to enforce this subpoena. ***And they have not done so under the standard that would apply to a private witness as well as under the heightened standard that applies here*. ..** conclusory allegations of relevance and admissibility are not sufficient because "[s]pecificity is the hurdle on which many subpoena requests stumble…. It also serves to prevent the subpoena from being converted into a license for what the Supreme Court … decried as a 'fishing expedition.'" *United States v. Jackson*, 155 F.R.D. 664, 67 (D. Kan. 1994).
> Defendants' effort here fails for similar reasons. They cannot show that Ms. Wiles testimony would be relevant, material or vital to their defense of these factual and legal allegations. As Judge Hoeveler found in a different high-profile case, that burden is not met simply because a defendant hopes that subpoenaed evidence will turn up something useful. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991). We are enforcing the same principle here by finding that the proffer supporting this subpoena failed to articulate a plausible likelihood of favorability. And quashing this subpoena would not

<u>interfere with Defendants' Sixth Amendment rights. It instead enforces them properly.</u>

DE 358, Order on Motion to Quash Trial Subpoena Directed to White House Chief of Staff Susan Wiles at 10, 14-15 (emphasis added).

The Ms. Wiles unmet "private witness" standard is applicable to Attorney Schuster. That standard serves as grounds to quash the testimony portion of the Schuster Subpoena. Defendant Rivera cannot show that Attorney Schuster will provide material and favorable testimony at trial. Defendant Rivera has not – and cannot – allege any fact that links Attorney Schuster's anticipated testimony to the core issues in this case – that is, the Defendants' alleged lobbying and other political activities undertaken at the behest of the Government of Venezuela, their alleged willful failure to register with the U.S. Attorney General as foreign agents, and money laundered therefrom.

**b. <u>Attorney Schuster's Anticipated Testimony is not "Material and Favorable" to the Defendants.</u>**

**i. <u>Attorney Schuster has no firsthand knowledge about any of the allegations in the Superseding Indictment.</u>**

Attorney Schuster has never interacted with either Defendant. Ex. B. He is a criminal defense attorney – not a lobbyist. *Id.* Beyond the many *Miami Herald* articles authored about Defendant Rivera's alleged participation with Venezuela, Exxon, or Citgo, Attorney Schuster's knowledge of the facts alleged in the Superseding Indictment is based on privileged communications. ***A substantial pre-trial showing of relevancy and admissibility should be required to validate a subpoena to the lawyer for a government witness.***

Contrary to the headline-grabbing efforts to secure the testimony of Chief of Staff Wiles, Secretary of State Marco Rubio, and Bolivarian Republic of Venezuela President Nicolas Maduro, Defendant Rivera cannot articulate *how* Attorney Schuster's testimony might tend to exonerate the Defendant.

To the extent the Defendants seek to ask Attorney Schuster about his communications with Perera, those communications are privileged, and Attorney Schuster will not divulge them. If required to testify at trial, and if arguably asked about any such protected communications, Attorney Schuster will, as his client has instructed, invoke the attorney-client privilege on behalf of Perera. Attorney Schuster's invocation of privilege, notwithstanding any Court admonitions to the contrary, will likely be construed by the jury as suggesting that Perera has something to hide.

As Defendant Nuhfer articulates in her Motion to Sever, "limiting instructions" are at times "futile." *See* DE 343, Defendant Esther Nuhfer's Motion to Sever in the Event that the Court Admits David Rivera's Deposition Testimony, at 2 ("The nature and extent of the prejudice to Esther Nuhfer makes limiting instructions futile as the jury will certainly think that if Rivera lied as the government contends, then he did so to cover up for the supposed crimes he commited with Nuhfer.") and 9 ("As the Eleventh Circuit recognized in *United States v. Cook*, the 'naïve assumption that prejudicial effects can be overcome by instructions to the jury' is 'all practicing lawyers know to be unmitigated fiction.' 557 F.2 1149, 1154 (5th Cir. 1977)."). While the government does not possess the due process rights of a criminal defendant, it is reasonable to presume that the unintended – or intended – effect of the testimony portion of the Schuster Subpoena is to attempt to diminish Perera's credibility through Attorney Schuster. This Court should not allow it.

To the extent the Defendants seek to ask Attorney Schuster about why Perera's conduct was distinguishable from that of the professional lobbyist and former politician on trial, such legal analysis would be patently inadmissible – and hardly "favorable" to the Defendants.  To the extent the Defendants seek to ask Attorney Schuster about any of the conduct the Defendants are charged with in the Superseding Indictment, Attorney Schuster has no firsthand information about any facet of the allegations.  His only connection to this matter is his representation of a cooperating witness.

### ii.  Attorney Schuster's potential testimony would be cumulative to the testimony of his client Perera.

Second, Attorney Schuster's client Perera – a man with direct firsthand knowledge of the Defendants' conduct – is expected to testify at trial.  Even if, assuming arguendo, Attorney Schuster did possess some shred of relevant information concerning the claimed FARA violations (he clearly does not), Perera has greater knowledge.  *See Valenzuela-Bernal*, 458 U.S. at 873 (holding that testimony is not "material and favorable" if it is "merely cumulative to the testimony of available witnesses"); *see also Schaefer*, 709 F.2d at 1384 (same); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (quashing subpoena directed at the Commissioner of the FDA because "[t]he record discloses that testimony was available from alternate witnesses.").

Defendant Rivera has not shown – and cannot show – that Attorney Schuster possesses any unique knowledge regarding the facts of this case.  Attorney Schuster can in no way corroborate any theoretical defense the Defendants have already put forward or could possibly present at trial.  Any claim otherwise "is based on nothing but speculation and wishful thinking."  *See* DE 350, Government's Reply on Motion to Quash, at 6.

As the government asserts in its successful effort to quash the subpoena to Ms. Wiles, "Binding Eleventh Circuit precedent is clear: Defense counsel's fervent hopes about what a witness *might* say does not satisfy the 'material and favorable' standard."  *Id.* at 7, citing *Schaefer*, 709 F.2d at 1386; *Tipton*, 572 F. App'x at 748.  Defendant Rivera has not shown that Attorney Schuster has some pertinent knowledge that relates to a potential defense, or, even if he did possess such knowledge, that his testimony would not be cumulative of Perera's expected testimony.  *See Valenzuela-Bernal*, 458 U.S. at 873.

### iii.  The context of Defendant Rivera's relationship with Perera merits consideration of the  true motives behind the Schuster Subpoena.

In addition to considering Attorney Schuster's complete lack of firsthand knowledge relevant to the facts of this case, this Honorable Court should consider the history between Defendant Rivera and Perera in determining whether the testimonial portion of the Rivera Subpoena is targeted at producing relevant and material admissible evidence, or whether its issuance was meant to unduly harass a cooperating witness and his attorney.  Along with taking the highly unusual step of subpoenaing Perera's criminal defense attorney, Defendant Rivera and Perera are engaged in ongoing litigation..

Defendant Rivera, through one of his business entities, sued Perera in Circuit Court in Miami.  *Interamerican Consulting Inc. v. Krome Agronomics, LLC et al., Circuit Court for the Eleventh Judicial Circuit, State of Florida,* Case No: 2024-022897-CA-01.  Dismissing the case and sanctioning Defendant Rivera's attorney and a Rivera-related corporation, the Circuit Court stated, "…Plaintiff's [Rivera's] Complaint contains three material allegations that were necessary to establish its claim for breach of contract: ….. ***Defendants submitted competent substantial evidence that Plaintiff and its counsel knew or should have***

***known that those allegations were false.  Above all, Defendants submitted Plaintiff's own sworn testimony to the contrary."*** (Bold and italics added for emphasis).  After dismissal, Defendant Rivera and Perera, either individually or through their corporate entities, sued each other.

If this Honorable Court does not quash the testimonial portion of the Rivera Subpoena, the Defendants may seek to bar Attorney Schuster from the courtroom during trial and during Perera's testimony because Attorney Schuster would later be called to testify.  This is another potential method by which to harass and/or intimidate a witness with potential Fifth and Sixth Amendment implications.

### c. Allowing Defendant Rivera to subpoena the attorney representing a witness against him sets a harmful precedent.

It is unlikely that this Honorable Court will see repetitious subpoenaing of the White House Chief of Staff, the United States Secretary of State, and a foreign head of state forcefully taken into United States custody.  However, if this Court does not quash the Rivera Subpoena, it can all but guarantee an avalanche of similar subpoenas to criminal defense counsel for every witness testifying in this District who might assist a government investigation.  An adverse ruling would have a profound impact and almost certainly bog down courts with unnecessary litigation.

If this Court does not quash the Schuster Subpoena, every attorney representing a cooperating witness – ***despite having no firsthand information about the matters at issue regarding the defendant(s)*** – should expect a trial subpoena.  Allowing criminal defendants to subpoena counsel for cooperating witnesses will have a chilling impact on the legal profession.  Defense attorneys will have to weigh whether they want to be dragged

into litigation and potentially forced to testify in court as part of their representation of those who aid a government investigation.  Trials will be beset with irrelevant sideshows regarding attorney-client privilege and attorney work product.  Lawyers will try and commit important facts to memory to avoid creating writings that could later be under subpoena.  Beyond judicial economy, there are multiple policy reasons to apply the standard that a defendant may only force an individual to testify if their expected testimony is material and favorable to the defense.  Attorney Schuster's expected testimony is neither and this Court should quash the testimony portion of the Schuster Subpoena.

III.   **This Court should not require the production of the opinion work product document Attorney Schuster prepared for a government interview with his client.**

Attorney Schuster respectfully requests that this Honorable Court quash the Schuster Subpoena in its entirety.  If it does not quash the *duces tecum* portion of the Subpoena, Attorney Schuster respectfully requests that this Court limit the *duces tecum* portion of the Rivera Subpoena to the documents Attorney Schuster has agreed to produce if his Motion to Quash is not granted in full.

### a.   **The Schuster Memo is Protected Attorney Work Product.**

If this Honorable Court does not quash the Rivera Subpoena in its entirety, it should not force Attorney Schuster to provide the specific document Defendant Rivera seeks – the Schuster Memo – because that document is protected attorney work product that is not subject to production.  The FBI 302 referenced in the Rivera Subpoena is factually incorrect – Attorney Schuster prepared the document, ***not*** witness Perera.  Although Attorney Schuster represented to the government, in essence, that the statement "was Perera's," Attorney Schuster prepared the Schuster Memo himself, alone, and delivered the statement,

himself, alone, using the statement in part, after speaking to Perera.  Attorney Schuster never provided a copy of the statement to anyone outside his office, except to prepare and file this Motion.

Attorney Schuster conducted lengthy and wide-ranging interviews with Perera regarding various matters related to the government's investigation.  *See* Ex. B.  Attorney Schuster synthesized that information, decided what was important to memorialize, and drafted the Schuster Memo.  *Id*.  The Schuster Memo contains Attorney Schuster's mental impressions, thoughts, and opinions regarding the matters he discussed with his client.  *Id*.  Attorney Schuster then partially read and partially paraphrased the Schuster Memo to the government investigators during witness Perera's interview, and later followed a similar procedure when a government agent called him and asked that he relay the information again.  *Id*.  Attorney Schuster purposefully did not provide the Schuster Memo to the government because it was his work product.

Documents that attorneys prepare for their client's interview sessions – such as the Schuster Memo – are not discoverable.  *Cf*., *e.g.*, *United States v. Shah*, Case No. 19 Cr. 833, 2022 WL 1284550, *3 (S.D.N.Y. Apr. 29, 2022) (unreported) (quashing subpoena that requested "All attorney notes or other documents prepared by [counsel] from each Proffer Session attended by [the client] in connection with this Matter."); *United States v. Lischewski*, No. 18-CR-00203, 2019 WL 5684537, *1-3 (N.D. Cal. Nov. 1, 2019) (unreported) (granting cooperating witness' counsel's motion to quash defendant's subpoenas demanding appearance and production of documents related to counsel's telephone conversation with government, stating, "Defendant's subpoenas are a result of his desire to impeach [the cooperating witness] at trial—but again, he will have an opportunity to cross-examine him

with the benefit of the Government's notes…   Moreover, given that the Government has made its production, including notes of the call in question… Defendant's desire for 'a more fuller' disclosure is outweighed by the 'strong societal interest that the notes be given the greatest protection.'") (citations omitted); *United States v. Arias*, 373 F. Supp. 2d 311, 312 (S.D.N.Y. 2005) (quashing subpoena to attorney representing potential cooperating witness against defendant holding that "notes taken by a defense lawyer [during proffer sessions preceding or following a cooperating witness's entry into a cooperation agreement with the government] are work product protected against discovery").

In *Shah*, the District Court discussed the protection of attorney work product material:

> Attorney work product is ordinarily protected from discovery pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure" and "According to Rule 26(b)(3), 'documents and tangible things that are prepared in anticipation of litigation or for trial' are not discoverable unless '(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party [seeking discovery] shows that it has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.' *Id.* 26 (b)(3)(A)(i)-(ii).  Moreover, even if the party seeking discovery manages to show the "substantial need" and "undue hardship" needed to overcome the shield of Rule 26(b)(3)(A), the court must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  *Id.* 26(b)(3)(B).

2022 WL 1284550 at *3.

Here, Defendant Rivera received an FBI 302 report that contains a summary of the information contained in the Schuster Memo.  Defendant Rivera has not – and cannot – make the required "'substantial showing' that he is unable to obtain needed information because he already has the disclosures made by the Government" in the FBI 302 referenced

in the Rivera Subpoena.  *See Lischewski*, 2019 WL 5684537 at \*1-2 (stating, "fact work product may be discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means," citing Fed. R. Civ. P. 26(b)(3)).

*Arias* explains why the protection of materials such as the Schuster Memo is so important:

> "In performing his various duties … it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *United States v. Nobles*, 422 U.S. 225, 237, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).  Defendant's subpoena, if authorized by the Court, would deter defense attorneys from doing their jobs in the most effective way possible.  "Were such materials [as those sought by Arias] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.  An attorney's thoughts, heretofore inviolate, would not be his own….  And the interests of the clients and the cause of justice would be poorly served." *Id.* at 237-38, 95 S.Ct 2160.

373 F.Supp.2d at 313-14.

Attorney Schuster should not be ordered to produce the Schuster Memo which contains his thoughts, opinions, and decisions on what was worth memorializing and discussing.  This is particularly the case when the requesting defendant already has the functional equivalent of the information in an FBI 302 report and will have the opportunity to cross-examine Attorney Schuster's client Perera about the subject matter.  This Court should quash the Rivera Subpoena in its entirety.  If it does not, this Court should limit the *duces tecum* portion of the Rivera Subpoena to the nonprivileged materials that Attorney

Schuster has agreed to produce if this Motion is not granted, and specifically exclude the Schuster Memo from required production.

### b. **Attorney Schuster did not waive privilege by partially reading and partially paraphrasing and adding to the Schuster Memo in a meeting with the government.**

As noted, Attorney Schuster prepared and then partially read, partially paraphrased, and added to the Schuster Memo during a meeting with the government.  This information is summarized in an FBI 302 which has been provided to the Defendants.  Attorney Schuster purposefully did not provide a written copy of the Schuster Memo to the government because that document was his protected attorney work product.

In *United States v. Zahn*, No. 3:22-CR-23-BJD-MCR, 2022 WL 17811346, at *1 (M.D. Fla. Dec. 19, 2022), the defendant issued a subpoena directed to law firm Nelson Mullins. The defense subpeona  sought production of a schedule of documents, records, communications, or other items related to that firm's role in the investigation of the Special Investigatory Committee on Jacksonville Electric Authority matters.  That investigation ripened into a federal criminal fraud prosecution of defendant Zahn and others.  Zahn sought communications between Nelson Mullins's attorneys or employees and the government's "Prosecution Team."

Like the facts before this Court, the trial judge quashed the subpoena, relying in part on this District's opinion in *Brown v. NCL (Bahamas), Ltd.*, 155 F. Supp. 3d 1335, 1339 (S.D. Fla. 2015) (quashing lawyer subpoena *duces tecum* for report provided to the police by the lawyer).  Like the facts here, *Zahn* served a criminal trial subpoena for a report the firm gave the prosecution (the issue before this Court is distinguishable in that Attorney Schuster

purposely did not provide his written statement to the government).  *Zahn* quashed the subpoena and stated:

> [U]upon review of the subject documents *in camera* …. the legal memorandum, dated January 11, 2021, and related emails … are protected from disclosure under the work product privilege. The legal memorandum is absolutely privileged as opinion work product prepared in connection with the development of JEA's litigation and trial strategies in the civil action against Mr. Zahn…
>
> ***Moreover, the work product privilege has not been waived by Nelson Mullins's voluntary disclosure of the memorandum to the prosecutor in this case for the purpose of cooperating with the Government.*** … Further, to the extent the Government and JEA had a common interest to secure an indictment for a mutual adversary, the disclosure of the memorandum did not result in a waiver of the work product privilege.  …   JEA's counsel voluntarily produced the memorandum in response to the prosecutor's request pursuant to a one-way flow of information during a grand jury investigation, which did not waive the work product privilege as to the withheld documents.  *See, e.g., Brown*, 155 F. Supp. 3d at 1336 (finding that "NCL did <u>not</u> waive work-product protection by giving a copy of a one-page, work-product document to port police upon request").

2022 WL 17811346, at *10 (emphasis added).

Both *Zahn* and *Brown* involve a written document that was provided to the government and in both cases the subpoena was quashed on privilege grounds.  Here, Attorney Schuster purposefully never produced the Schuster Memo to the government. Analyzing the issue of work product privilege waiver, then SDFL Magistrate Judge Robin S. Rosenbaum notes, "Due to the sensitive nature of work-product materials and the policy behind maintaining their secrecy, generally speaking, when work-product protection has been waived, it is 'limited to the information actually disclosed, not subject matter waiver.'" *Stern v. O'Quinn*, 253 F.R.D. 663, 683 (S.D. Fla. 2008) (citing *Continental Casualty Co. v.*

*Under Armour, Inc.,* 537 F. Supp. 2d 761, 773 (D. Md. 2008) (citing *Duplan Corp. v. Deering Milliken, Inc.,* 540 F. 2d 1215, 1223 (4th Cir.1976); Epstein, *The Attorney–Client Privilege and the Work Product Doctrine* 612 (2001) ("[I]nadvertent or even intentional disclosure of work-product documents will not necessarily constitute waiver as to all such documents."); 6 James Wm. Moore, *et al., Moore's Federal Practice* § 26.70[6][c] (3d ed. 2004) at 26–467 ("A waiver of work-product protection encompasses only the items actually disclosed. Thus disclosure of some documents does not imply that work product protection has been destroyed for other documents of the same character.")).

Here, Attorney Schuster **never disclosed the written document** that Defendant Rivera now seeks.  Attorney Schuster's oral statements to the government did not waive privilege as to the Schuster Memo which he partially read from,added to, and partially paraphrased to government investigators.

In *Brown,* 155 F. Supp. 3d at 1338, Magistrate Judge Goodman cites Judge Rosenbaum's opinion in concluding that disclosure of a particular statement was covered by the work product privilege, and not waived, even though a copy of this statement was provided to the police.  Magistrate Goodman's opinion concludes that waiver applies only if it was intentionally disclosed in a manner that was likely to be revealed to his adversary. Here, Attorney Schuster's client Perera was engaged in a non-adversarial cooperative effort while the government was investigating others.  *See id.* at 1341.

Considering privilege, and because the Defendant already has the functional equivalent of this statement, in an FBI 302 report, no production should be required.

### c. <u>Ordering the disclosure of the Schuster Memo would set a damaging precedent for this District and is contrary to the interests of justice.</u>

Analogous to allowing Defendant Rivera to force a criminal defense attorney to testify at trial, albeit without firsthand knowledge related to at the facts at issue, providing Defendant Rivera access to attorney work product material creates an equally damaging precedent. If this Honorable Court does not quash the Rivera Subpoena in its entirety, or, alternatively, limit the *duces tecum* portion of the Rivera Subpoena as requested, every criminal defense attorney in this District should expect a subpoena for materials they prepared in advance of their clients' interviews with the government.

Beyond its harm to judicial economy, more importantly, allowing Defendant Rivera access to this protected attorney work product would have a chilling effect on those considering whether to potentially assist the government. Allowing criminal defendants access to documents created by attorneys during the representation of their clients prospectively undermines the confidentiality of their communications and exposes the witness – as here – to harassment and intimidation. Allowing such forage would chill counsel's communication with the client and the government. It would adversely limit the manner an attorney might preserve his mental impressions for fear of being required to produce those materials to the defense.

It is a distinct possibility that an adverse ruling here will cause lawyers to cease creating documents they need to use in representing witness clients for fear that they later may be ordered to produce those materials to the defense. There are Fifth and Sixth Amendment implications for both witnesses and their defense counsel. Allowing Defendant Rivera access to the Schuster Memo would chill a manner of future communication that otherwise would serve the interests of justice.

Beyond constitutional and privilege issues, this Court should consider public policy matters and the potential impact of its ruling, including witness safety and the disincentives to cooperate with a government investigation, as it determines whether to quash or limit the *duces tecum* portion of the Rivera Subpoena.

## IV.      Conclusion and Certificate of Conference.

Unlike the situation with Ms.Wiles, after discussion, the government takes no position.  Counsel for Movant advised counsel for Defendant Rivera that it would be moving to quash the subpoena.

Based on the foregoing, Attorney Schuster respectfully requests that this Honorable Court quash the Rivera Subpoena in its entirety.  Alternatively Attorney Schuster respectfully requests that this Court quash the testimony portion of the Rivera Subpoena and limit the *duces tecum* portion to the non-privileged materials Attorney Schuster has agreed to produce (i.e., Attorney Schuster's written communications with the government and Perera's responses to the Government Subpoenas).

Respectfully Submitted,

**RABIN & LOPEZ, P.A.**
One Southeast Third Avenue
Suite 2600
Miami, FL 33131
Tel: 305•358•1064
Email: sjr@miamilawyer.com

*s/Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

**JOSEPH M. SCHUSTER**
101 NW 8TH ST
Suite 200
Miami, FL 33136
Tel:  305-610-8330
Email:  joe@josephmschuster.com

*s/Joseph M. Schuster, Esq.*

JOSEPH M. SCHUSTER, ESQ.
FL Bar № 0115812

## CERTIFICATE OF CM/ECF SERVICE

I HEREBY CERTIFY that on February 24, 2026, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to the corresponding parties.

*s/Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.