UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

     Defendants.

_____/

## GOVERNMENT'S NOTICE REGARDING EVIDENTIARY ISSUES

The government respectfully submits this notice regarding two evidentiary issues that concern (1) several chat exhibits and (2) two newspaper articles, all of which contain relevant statements made by defendant Rivera.

### 1.    Chat Exhibits

On April 10, 2026, undersigned counsel was informed by defendant Nuhfer's counsel that Nuhfer opposes the introduction into evidence of several chat-composite exhibits involving defendant Rivera (*i.e.*, Government's Exhibits 16, 18, 19, and 21AT).  Each of these exhibits was disclosed to the defense a month or more ago and is based on Rivera's text or WhatsApp communications with one other person who is not Nuhfer—specifically, Rep. Pete Sessions (GXs 16 and 18), Citgo attorney Eduardo Orsoni (GX 19), and an advisor to then-Senator Rubio, Viviana Bovo (GX 21AT).  The government intends to offer these exhibits into evidence through a law-enforcement witness who will testify following Hugo Perera, contemporaneously with several other chat-composite exhibits comprised of WhatsApp messages between (1) Rivera and (2) Nuhfer or Raul Gorrin.

Nuhfer has not objected to the chat-composite exhibits based on Rivera's WhatsApp messages with her and with Gorrin, in view of the Court's previous rulings to the effect that Rivera, Nuhfer, Gorrin, and Perera were participants in a joint venture to obtain payment from the Venezuelan government for political activities, and accordingly those person's communications in furtherance of the venture fall within the co-conspirator exclusion from the hearsay rule. *See* Fed. R. Evid. 801(d)(2)(E). However, because Rep. Sessions, Eduardo Orsoni, and Viviana Bovo were not among the four participants in the alleged joint venture, Nuhfer has taken the position (1) that the statements made by those persons to Rivera are not covered by any hearsay exclusion and are inadmissible, and (2) to the extent the chat-composite exhibits contain Rivera's own statements, those statements would be admissible against him only.

Nuhfer is wrong. The communications in the chat-composite exhibits are from the spring and summer of 2017—squarely within the time period at issue in the superseding indictment—and are directly related to the alleged joint venture. As to Rep. Sessions and Eduardo Orsoni, the chat-composite exhibits concern Rivera's efforts in April, May, and June 2017—in coordination with Nuhfer, Gorrin, and Perera—to arrange a high-level meeting between Exxon officials and the Maduro regime, an episode that was a central part of the alleged FARA conspiracy and that was discussed extensively in the MIA Chat Group throughout the same time period. As for Rivera's chat messages with Viviana Bovo, those concern Rivera's recommendation to Senator Rubio's office in July 2017 that a limited subset of several senior Venezuelan officials be subjected to U.S. sanctions—which Rivera also discussed extensively in the MIA Chat Group—as a prelude to the conspirators' focus shifting in the ensuing months to obtaining sanctions relief for the benefit of Maduro regime insiders (including Erick Malpica Flores).

In other words, Rivera's statements in the chat-composite exhibits, though not made to one of the other three participants in the joint venture, were nonetheless made during and in furtherance of the alleged conspiracy and are excluded from the hearsay rule under Fed. R. Evid. 801(d)(2)(E). The Eleventh Circuit has held that Fed. R. Evid. 801(d)(2)(E) is satisfied when the statements at issue are being "offered against an opposing party and were made during and in furtherance of a joint venture with that party." *United States v. Holland*, 117 F.4th 1352, 1361 (11th Cir. 2024). Here, as explained above, the chat-composite exhibits are based on Rivera's statements in furtherance of the joint venture and are being offered against two of that venture's participants. To the extent Nuhfer's objection is that Rivera's statements in these exhibits cannot be offered against her, but only Rivera, that argument is without merit (as the Court has already recognized).

As for the statements made by the other person in Rivera's text-message conversations at issue here (Rep. Sessions, Eduardo Orsoni, and Viviana Bovo), those statements, though not made by a participant in the joint venture, also may be admitted as non-hearsay for the purposes of "putting [Rivera's] responses in context" and "making them intelligible to the jury." *United States v. Byrom*, 910 F.2d 725, 737 (11th Cir. 1990). Indeed, the law is quite clear that statements made by a non-conspirator (such as a victim) in her communications with a co-conspirator are admissible in this regard. *See, e.g.*, *United States v. Brown*, 125 F.4th 1043, 1055 (11th Cir. 2025) ("Exhibit 47D is a series of text messages between [Brown's co-conspirator] Archer and Minor Victim 2. . . . The district court did not abuse its discretion in admitting Archer's statements under Rule 801(d)(2)(E), and the messages from Minor Victim 2 to Archer provide context to Archer's statements and were not introduced for the truth of the matter asserted and are not hearsay.").

In short, Nuhfer's objection is without merit.

2.      **Newspaper Articles**

A.      Background

The government intends to offer into evidence redacted copies of two newspaper articles, attached hereto as Exhibits A and B, that were published by the Miami Herald and the New York Times in May 2020 shortly after PDV USA filed its lawsuit in the Southern District of New York (SDNY) against Interamerican Consulting. As discussed further below, the government seeks to admit the articles (as redacted) because they contain highly probative statements that Rivera made to the newspapers when reached for comment about the lawsuit, including Rivera's statements that the millions he received under the PDV USA agreement were all provided to the Venezuelan opposition. In addition, that Rivera made these statements to the Times and the Herald is substantially corroborated by evidence already adduced in trial, including acknowledgments by Rivera himself of having communicated with the press about his use of funds received under the PDV USA agreement.

With the government's redactions—which were made in view of the Court's *in limine* rulings barring detailed discussion of the claims and allegations in the SDNY litigation, as well as negative-reputation evidence as to Rivera—the articles first describe, in broad terms, how PDV USA had sued Interamerican Consulting to recover the millions paid under the $50 million agreement in this case, as context for the statements Rivera made when reached for comment. That there was a $50 million agreement between Interamerican and PDV USA, that Rivera received many millions thereunder, and that PDV USA sued Interamerican in the SDNY are all facts that are in evidence at this stage of trial (including from the admitted deposition transcripts that include cover pages identifying the parties and case caption in the SDNY litigation).

Rivera's quoted statements in the articles—in particular, that all of the money he obtained under the PDV USA agreement was used to support the Venezuelan opposition—align with those in his text message to witness Brian Ballard on May 16, 2020 (admitted as GX82), in which Rivera stated to Ballard:

> FYI, my statement to the Washington Post: 'This was an operation managed by the Citgo 6 dissidents inside Citgo, including ALL of the funds, every penny, in consultation with the Venezuela opposition, including Lilian and Leopoldo Lopez, in an effort to undermine PDVSA and Maduro's control.  There was NEVER any involvement by PDVSA and solely involved Maduro opponents inside Citgo and within the opposition.  Some of whom paid dearly for their participation in this noble effort and are today sitting in Maduro's gulag as a result.  And the NSC and State Department were fully aware.  I welcome any scrutiny of this operation and any opportunity to reveal its true worthy nature.'

The quotes of Rivera's statements in the New York Times and Herald articles are in the same vein.  As quoted in the Miami Herald, Rivera stated (in relevant part): "All those funds went to the opposition for anti-Maduro protests in the summer of 2017.  I never saw a penny of it.  That's all I know."  The article further related Rivera's statements that "[The Citgo 6] managed that entire . . . operation, including all the money, in coordination with the Venezuelan opposition, including Leopoldo Lopez," and that the Trump administration including the State Department "[was] aware of everything."  Rivera is similarly quoted in the New York Times article as stating that "[the Citgo 6] managed that entire effort, including all the money, in coordination with the Venezuelan opposition, including Leopoldo [Lopez]."

At this stage of trial, the jury has heard considerable evidence that Rivera did not give the opposition "all the money" he obtained under the PDV USA agreement but instead divvied up those funds between the four participants in the alleged scheme.  (Still more evidence demonstrating the falsity of Rivera's claims to the Herald and New York Times will be adduced later in trial as part of the government's proof for the charged money laundering counts.)  Rivera's

statements as quoted in the two articles, in other words, are undoubtedly relevant and probative with respect to the element of willfulness embedded in the pending charges, and more generally with respect to Rivera's consciousness of guilt.

The two news articles at issue were listed on the government's preliminary exhibit list produced to the defense on February 4th, and copies were included in the government's production of its trial exhibits on February 11th.  On April 10th, counsel for Nuhfer objected to the introduction of the articles with redactions, which objection Rivera's counsel joined in yesterday. In the government's understanding, counsel's objection is principally based on their view that the quotes in the articles are excluded under the rule against hearsay (not that Rivera was quoted inaccurately).[1]

### B.  Discussion

As to authenticity, it is black-letter law that newspaper articles are self-authenticating under Fed. R. Evid. 902(6).  *See, e.g.*, *Serendipity At Sea, LLC v. Underwriters at Lloyd's of London*, 56 F.4th 1280, 1288 n.2 (11th Cir. 2023) ("[N]ewspaper articles are self-authenticating.").

Newspaper articles containing quoted remarks may present a hearsay-within-hearsay issue because they contain out of court statements by the quoted individual, within a news article that is

---

[1] Counsel advised the government of *United States v. Goldstein*, 8:25-cr-6 (D. Md.), a tax- and mortgage-fraud case in which the defendant's statements to the New York Times were quoted in an article published shortly before trial.  The government sought to admit these statements for purposes including the truth of the matter asserted (*e.g.*, the defendant acknowledged winning millions in high-stakes poker matches and conceded that he had intentionally failed to disclose gambling debts on his loan applications).  After the court denied the government's motion to admit portions of the article as exempted from the rule against hearsay, and the government then subpoenaed the reporter to testify about the statements, a subset of the statements were admitted pursuant to the parties' agreement.  *See* Reuters, "Deal in Tom Goldstein's Tax Fraud Trial Spares Journalist Toobin from Testifying" (Feb. 5, 2026), *available at* https://www.reuters.com/legal/government/deal-tom-goldsteins-tax-fraud-trial-spares-journalist-toobin-testifying-2026-02-05/.  This out-of-district matter is distinguishable for multiple reasons including that the government is not seeking to admit declarant statements for the truth of the matter asserted, and there is substantial corroboration that Rivera gave the statements to the Herald and Times, as described herein.

itself an out-of-court statement. *See Mandal v. City of New York*, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006); *see also United States v. Baker*, 432 F.3d 1189, 1211 & n.23 (11th Cir. 2005) (noting double-hearsay issue as to parts of Miami Herald article that were offered primarily to establish the truth of their contents and also reflected a reporter's account of what eyewitnesses observed). Under Fed. R. Evid. 805, however, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." Here, the first stage of the hearsay-within-hearsay analysis is straightforward: Rivera's statements that were quoted in the Herald and Times articles are plainly non-hearsay because they are being offered against Rivera only, who is a party opponent. *See* Fed. R. Evid. 801(d)(2)(A).

The second part of the Rule 805 analysis—concerning the news reporters' accounts of what Rivera stated to them—also supports admission of the redacted articles pursuant to a hearsay exclusion, namely, Fed. R. Evid. 801(d)(2)(B). Under Rule 801(d)(2)(B), a statement is non-hearsay where it "is offered against an opposing party" and "is one the party manifested that it adopted or believed to be true." To be admissible under Rule 801(d)(2)(B), the statement "(1) 'must be such that an innocent defendant would normally be induced to respond,' and (2) there must be sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Santos*, 947 F.3d 711, 724 (11th Cir. 2020). Here, the first of these conditions is plainly satisfied by the evidence that Rivera was aware of, and responded to, the contemporaneous news reporting regarding the PDV USA lawsuit (including the aforementioned trial testimony and text message). As to the second condition, there are "sufficient foundational facts" in evidence for the jury to conclude that Rivera heard, understood, and acquiesced in the Herald's and Times' accounts of his statements as quoted in the news articles.

First, as already noted, Rivera texted Brian Ballard, shortly following the articles' publication, to relay his "statement" to yet another news outlet of assertions substantially identical to those quoted in the Herald and Times articles. Ballard testified that Rivera sent these text messages after Ballard learned of the $50 million agreement from press coverage in 2020, and then spoke on the phone with Rivera to express his "surprise" and "shock about it." Ex. C, Trial Tr. (March 31, 2026) 82:17–25 & 83:1–6. In addition, another witness, Bertica Cabrera Morris, testified that she had "conversations with defendant Rivera regarding things that he said to newspapers in which he was quoted about what . . . he did with money that he received in this case." Ex. D, Trial Tr. (March 30, 2026) 127:12–15; *see also id.* 127:20–25 ("Q. And what did the defendant Rivera tell you about whether or not he received for his own benefit the millions of dollars that were reported? A. They did, and he used that to help with the opposition[.]"); *id.* 128:15–25 ("Q. What was his response as far as why he kept speaking to newspaper reporters that would quote him directly, ma'am? What did he say to you? A. Well, he lied. You know, he didn't care about – you know, he'd get – the Miami Herald was not one of his best friends. So he didn't care if they kept his name alive.").[2]

Moreover, on July 27, 2022, Rivera testified at deposition in the SDNY litigation about how he had made statements to the press in May 2020 after the filing of the PDV USA lawsuit drew media attention that same month. In his testimony, Rivera essentially acknowledged that he had prepared a statement for a different Miami Herald reporter concerning his (Rivera's) relationship with Raul Gorrin. Ex. E, SDNY Depo. Transcript 531:11–25, 532:1–6, & 533:4–12

---

[2] Relatedly, emails to be offered into evidence through the same law-enforcement witness reflect that Rivera, after learning of inquiries from the press in 2017, communicated with others in preparing responses to such inquiries (including the Miami Herald). For example: Exhibit F is an email (translated from Spanish) from Rivera to Raul Gorrin, in which Rivera proposed a 14-point response to a Miami Herald reporter's inquiries for a December 2017 article about Gorrin's efforts to influence U.S.-Venezuela policy.

("[Q.] There is a WhatsApp message to Carolina Sivoli dated May 16, 2020, at 11:24 a.m.  Do you see that? A. Yes. And in your WhatsApp message, you wrote to Ms. Sivoli a statement that says: 'FYI: My statement to The Miami Herald regarding my relationship with Raul Gorrin:" Did I get that right? A. Yes. *** [A.]  I'm not sure I ever made this statement to The Herald. Q. The text of the WhatsApp message says: 'FYI, my statement to the Miami Herald regarding my relationship with Raul Gorrin:' Did you mean anything other than, here is my statement that I sent to the Miami Herald regarding my relationship with Raul Gorrin? A. Yeah, it would have been my statement to the Herald.").[3]

On analogous facts, courts have concluded that a party may adopt, pursuant to Fed. R. Evid. 801(d)(2)(B), that the party's quoted statement in a news publication was indeed provided by that party to the news organization.  *See United States v. Lesh*, 2021 WL 4941013, at *4 (D. Colo. Oct. 22, 2021) (defendant, during a podcast interview, did not dispute the accuracy of a quote attributed to him in an article published in a news magazine); *see also Rivera v. Inc. Village of Farmingdale*, 29 F. Supp. 3d 121, 131 (E.D.N.Y. Dec. 31, 2013) (collecting cases in which deposition testimony supported a finding of a party's adoption of quoted statements in news publications).  Finally, there is no suggestion that Rivera ever contacted the Herald or Times to seek a correction or retraction of his quotations in the article (and indeed, Rivera has continued to provide quotations to the same Miami Herald reporter for other news articles, as recently as this year).  And as noted above, the defense does not appear to dispute the accuracy of Rivera's quoted statements in the two articles.

---

[3] At other points in this transcript excerpt Rivera refuses to acknowledge that he provided this statement to the Miami Herald, although he acknowledges having communicated with the reporter from the Herald on other occasions.  *E.g.*, *id.* 536–17–24, 541:14.  Regardless, for purposes of Rule 801(d)(2)(B), this deposition testimony further supports that Rivera acquiesced in the news organizations' accounts in May 2020 of his statements as they were quoted in the articles.

In short, there are facts in evidence that support a finding that Rivera heard and acquiesced in the Miami Herald's and New York Times' accounts that he had provided the quotations at issue in those publications' articles; Rivera's quotes are statements of a party opponent (and in all events are not being offered for the truth of the matter asserted); and the quotations are not only relevant but highly probative of Rivera's consciousness of guilt.  Accordingly, his statements in the articles are admissible under Fed. R. Evid. 805.

### Conclusion

The government respectfully submits the foregoing notice regarding evidentiary issues for the Court's consideration.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:      /s/ David J. Ryan

Harold E. Schimkat, AUSA
Roger Cruz, AUSA
Court ID No. A5500567
Fla. Bar No. 157971
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

&

David J. Ryan
Trial Attorney, National Security Division
Special Bar ID No. A5503306
District of Columbia Bar No. 888325195
950 Pennsylvania Ave., NW, Room 7700
Washington, DC 20530
Tel: (202) 353-7842
David.ryan2@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 12, 2026, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

_/s/ David J. Ryan_
David J. Ryan
