**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20552-DAMIAN/TORRES**

UNITED STATES OF AMERICA,

vs.

ESTHER NUHFER, et al.,

Defendants.
_________________________________/

# ESTHER NUHFER'S NOTICE REGARDING REQUEST FOR DOWNWARD VARIANCE AND UNRESOLVED OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

Pursuant to the Court's Paperless Order setting Sentencing Hearing, Doc. 507, Esther Nuhfer files this notice informing the Court regarding the status of the request for a downward variance (Nuhfer's Sentencing Memorandum) and which Objections have been resolved and which Objections remain outstanding.

## ESTHER NUHFER IS DESERVING OF A SIGNIFICANT DOWNWARD VARIANCE

On August 6, 2026, Esther Nuhfer filed her Sentencing Memorandum requesting a downward variance. The government failed to respond within the 7 days ordered by the Court. Doc. 507, Paperless Order Setting Sentencing Hearing.

## OBJECTION NO. 1: THE FACTS (¶¶ 9-124)

This objection is unresolved and remains outstanding.

Despite the government's unprofessional criticism of defense counsel's arguments as "absurd," Doc. 577 at 5, the objection to the Offense Conduct portion of the PSR remains outstanding.

The government concedes that the "facts" included within the preliminary portion of the PSR are based on something other than the actual trial testimony. Doc. 589, at 4 (the PSR "consists in significant part of a recitation of the factual allegations set forth in the Superseding Indictment."). This is precisely the problem. While the defense does not disagree with the physical evidence introduced at trial by both sides, such as the numerous chats and text messages, The PSR's unsupported assumptions that every action and decision made was done by or for Esther is patently wrong. One obvious example of this is – at paragraph 35, the PSR states, "To compensate Rivera, Nuhfer, Gorrin, and Perera for their efforts on behalf of the Government of Venezuela, Delcy Rodriguez ordered CITGO executives to enter into a consulting contract with Rivera's company, Interamerican Consulting." This is a pattern that the PSR continually follows – of grouping Esther with other people and incorrectly concluding that she was part of other's thoughts and actions. This specific paragraph is clearly wrong because Delcy Rodriguez was completely unaware of the existence of Esther Nuhfer. She did not direct *anything* in order for Esther Nuhfer to be compensated. Further, no CITGO executive was aware of Esther's existence. She never communicated with anyone from CITGO, PDV USA, or PDVSA. The government could not sincerely say otherwise.

**OBJECTION NO. 2: ROLE CALCULATION (¶¶ 148, 162) AND UNDERLYING FACTS -- Esther's Sentencing Guidelines Should Be Reduced By 4 Points Because She Was A Minimal Participant.**

This objection is unresolved and remains outstanding.

Although the government for the second time mocks defense counsel's objection as "absurd," Doc. 589 at 9, the facts it points to regarding role are consistent with the facts in Nuhfer's Objections and support a finding that she was a minimal participant. It is able to recite many things Esther said (none of which was to Venezuelan or U.S. officials) and conduct surrounding the

contract, but nothing substantive that Esther did directed toward political activities, i.e. involvement in the Exxon resolution or lobbying U.S. public officials for Maduro. Esther's absence of conduct on the meat of the FARA violations and, in contrast, the active involvement of other participants in the foreign principal's objectives are what make her deserving of a role reduction.

**OBJECTION NO. 3: THE VALUE OF LAUNDERED FUNDS (¶¶ 158, 164, 167, 217) AND UNDERLYING FACTS -- The PSR Incorrectly Includes a 20-Level Increase For The Amount of Laundered Funds**

This objection is unresolved and remains outstanding.

The defense took the very government friendly view that it could count the entire amount that Esther received for the money laundering guidelines -- $3,500,000 (even though that amount was not charged by the government and even though there is no jury verdict on that amount). However, upon reflection and a more thorough review of the caselaw, the maximum amount that Esther should be responsible for is the $455,704.09 (the amount reflected in Count 6). Even if the Court were to add up all of the substantive money laundering counts (4-8) and find that those David Rivera transfers and deposits were jointly undertaken and reasonably foreseeable to Esther, the total amount would be $1,400.747.93 (which would yield only a 14 level increase). There is no basis in the law or the facts to hold her responsible for $15,000,000 as the probation office suggests where it includes clean money (i.e., money that went to Perera and Gorrin). The law cannot be stretched to say that Esther should be responsible for money that went to them while they are permitted to keep the money.

**OBJECTION NO. 4: THE SIX-LEVEL NATIONAL SECURITY ENHANCEMENT (¶ 159) AND UNDERLYING FACTS**

This objection is unresolved and remains outstanding.

The government curiously cites a case – *Att'y Gen. v. Wynn*, 104 F.4th 348 (D.C. Cir. 2024) – to support its position that Esther should receive a 6-level "national security" enhancement (essentially an addition of over 5 years) but the government quote from the case is not the holding and it is a case that has absolutely nothing to do with when to apply a national security enhancement. As to the only two cases it could find that apply the enhancement, those cases involve criminal activities that dwarf what happened in this case. In the case against Prakarel Michel, the defendant was involved in two years-long massive schemes involving underlying illegal activity (not the case here) and was convicted of, in addition to FARA, conspiracy to make illegal foreign contributions, concealment of material facts, 2 counts of causing political committees to make false statements in FEC reports, 2 counts of witness tampering, and conspiring to make false statements to a bank. Dawn Hanna was also involved in underlying criminal activity (not the case here) which involved violating the U.S. trade embargo with Iraq after 9/11, shipping goods to Iraq utilizing suppliers in Europe and shipping goods through third countries to conceal her actions. She additionally used complex payment instruments, created fake licenses, and submitted false shipping documents. She was ultimately sentenced to six years in prison.

Notably, the government makes <u>no</u> attempt to distinguish Paul Manafort – a much more serious FARA case involving tens of millions of dollars lobbying for the government of Ukraine, moved through secret off-shore accounts and shell corporations to hide the money. In a case where the government sought enhancements for sophisticated laundering, aggravating role, and obstruction, the government rightly decided that the national security enhancement did **not** apply to Manafort. The same should be true for Esther.

* * * * *

Respectfully submitted,

MARKUS/MOSS PLLC
40 N.W. Third Street, PH 1
Miami, FL 33128
Telephone: (305) 379-6667
Facsimile: (305) 379-6668

By: /s/ David Oscar Markus
David Oscar Markus
dmarkus@markuslaw.com

/s/ A. Margot Moss
A. Margot Moss
mmoss@markuslaw.com