**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20552-DAMIAN**

**UNITED STATES OF AMERICA**,

v.

**ESTHER NUHFER**, *et al.*,

Defendants.
_________________________________/

**ORDER ON DEFENDANT ESTHER NUHFER'S**
**MOTION FOR NEW TRIAL [ECF NO. 531]**

**THIS CAUSE** is before the Court on Defendant Esther Nuhfer's Motion for New Trial [ECF No. 531], filed May 29, 2026.

THE COURT has reviewed the Motion, the Government's Response [ECF No. 550], Nuhfer's Reply [ECF No. 562], the pertinent portions of the record, and relevant authority and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

After a six-week trial, a federal jury convicted Defendant Esther Nuhfer ("Nuhfer") on all counts charged against her in the Superseding Indictment, including conspiracy to violate the Foreign Agents Registration Act, 18 U.S.C. § 951(a) ("FARA") (Count 1), violation of FARA (Count 2), conspiracy to commit money laundering (Count 3), and engaging in monetary transactions in criminally derived property (Count 6). [ECF No. 489].

The evidence at trial showed, generally, that Nuhfer and her co-defendant, David Rivera, sought to unlawfully enrich themselves by engaging in political activities in the United States on behalf of the government of Venezuela, by representing the interests of the

government of Venezuela before officials of the United States Government in an effort to influence United States foreign policy towards Venezuela and by concealing those efforts by failing to register under FARA as agents of the government of Venezuela. The evidence also showed that the Defendants created the false appearance that they were providing consulting services to the American entity, PDV USA. The evidence further showed that the Defendants were paid more than $20 million for their work on behalf of the Venezuelan government and that they used the proceeds from their work in violation of FARA to engage in financial transactions in violation of money laundering statutes.

In the Motion now before this Court, Nuhfer seeks a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, or alternatively, a new trial pursuant to Federal Rule of Criminal Procedure 33.

The Motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

### *A. Motion For Judgment of Acquittal*

"[A] district court may set aside a guilty verdict and enter judgment of acquittal if there is insufficient evidence to sustain the verdict." *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004); Fed. R. Crim. P. 29. However, a guilty verdict will be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hunt*, 187 F.3d 1269, 1270 (11th Cir. 1999) (emphasis in original). When considering a motion for judgment of acquittal, "[t]he district court must determine whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a reasonable doubt." *Williams*, 390 F.3d at 1323 (citations omitted); *United States v. Medina*, 485 F.3d 1291, 1296–97 (11th Cir.

2007). Because a jury may choose among reasonable constructions of the evidence, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Williams*, 390 F.3d at 1323–24 (quoting *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990)).

***B. Motion For A New Trial***

Under Federal Rule of Criminal Procedure 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The power of a court to grant a new trial under Rule 33 is much broader than the power to grant a motion for acquittal under Rule 29. *United States v. Ward*, 274 F.3d 1320, 1323 (11th Cir. 2001). The decision to grant or deny a criminal defendant's motion for new trial rests within the district court's sound discretion. *United States v. Rafferty*, 296 F. App'x 788, 797 (11th Cir. 2008). Even so, the trial court is not free to "reweigh the evidence or set aside the verdict simply because it feels some other result would be reasonable." *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004) (citation omitted). "The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (citation omitted). This ensures that the district court's judgment is not substituted for that of the jury. *Id.* In this Circuit, "[c]ourts are to grant [new trials] sparingly and with caution, doing so only in those really 'exceptional cases.'" *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985).

## III. DISCUSSION

As discussed more specifically below, Nuhfer argues that she is entitled to a judgment of acquittal on grounds the Government failed to introduce sufficient evidence to support her conviction on any of the charges against her. In the alternative, Nuhfer contends that the

interest of justice warrants a new trial. In response, the Government points to substantial evidence that was admitted at trial and highlights Nuhfer's involvement, directly and indirectly, in much of that evidence.

Initially, the undersigned notes that Nuhfer raised many legal challenges before and during trial, all of which this Court addressed in written and oral orders. This Court acknowledges that Nuhfer has preserved those challenges for appeal.

Having presided over the entirety of the jury trial and having seen and heard all of the evidence presented to the jury, the undersigned observed that Nuhfer's overall strategy or theme throughout the trial was that there was a lack of direct evidence implicating her in the conduct and acts revealed through the Government's evidence. She essentially attempted to convey that although the Government presented a mountain of evidence to support the jury's guilty verdict, only a small part of that mountain directly implicated or involved her. Whether that is true or not – that is, whether there may have been more evidence of her co-conspirators' acts – the fact is, the Government did present substantial evidence, direct and circumstantial, supporting the jury's verdict as to Nuhfer herself.

With the foregoing in mind, this Court turns to Nuhfer's arguments in the Motion now before this Court.

### *A. Foreign Agents Registration Act*

FARA states that "[n]o person shall act as an agent of a foreign principal unless he [or she] has filed with the Attorney General a true and complete registration statement . . . as required by [law]." 22 U.S.C. § 612(a). An "agent of a foreign principal" is broadly defined as "any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign

principal" and "who directly or through any other person" engages in specified conduct in the interests of that foreign principal. *Id.* § 611(c)(1). That specified conduct includes (1) "engag[ing] within the United States in political activities for or in the interests of such foreign principal" and (2) "act[ing] within the United States as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal." *Id.* § 611(c)(i)–(ii).

While Nuhfer consistently insists that FARA is only about a failure to register, the undersigned disagrees. Rather, as a district court in the District of Columbia explained, "These laws are not just about paperwork; their object is to ensure that no person acts to advance the interests of a foreign government or principal within the United States unless the public has been properly notified of his or her allegiance." *United States v. Manafort*, 318 F. Supp. 3d 1, 4 (D.D.C. 2018). Review of the FARA statute reflects that it expressly prohibits "acting" as a representative of a foreign entity without submitting the required notification to the Attorney General.

***B. The FARA Convictions***

Nuhfer contends the Government failed to introduce sufficient evidence to sustain her FARA convictions (the conspiracy and substantive counts) on grounds (1) there was no evidence of an unlawful agreement to violate FARA and (2) there was no evidence that she engaged in political activities as required for a FARA violation.

As set forth above, "[t]he evidence is sufficient if a reasonable jury could find that the evidence established the defendant's guilt beyond a reasonable doubt." *United States v. Jimenez*, 972 F.3d 1183, 1190 (11th Cir. 2020). This Court finds there was more than sufficient evidence admitted during the trial from which a reasonably jury could (and did) find Nuhfer

guilty beyond a reasonable doubt of the conspiracy and substantive FARA charges against her.

1. <u>The FARA Conspiracy Charge.</u>

With respect to the conspiracy to violate FARA, as the jury was instructed, a "conspiracy" is "an agreement by two or more persons to commit an unlawful act." [ECF No. 491 at 13 (Jury Instructions)]. To prove a conspiracy, the government must present evidence of (1) "an agreement among two or more persons to achieve an unlawful objective," (2) "knowing and voluntary participation in that agreement," and (3) "an overt act by a conspirator in furtherance of the agreement. *Jimenez*, 972 F.3d at 1190–91.

In the Superseding Indictment, the Government alleges that the unlawful objective of the conspiracy was violation of FARA. The parties indicated their agreement during trial that for the FARA violation, the Government must prove: (1) that the defendant acted in the United States as an agent of a foreign principal, in this case the government of Venezuela; (2) that the defendant failed to submit a true and complete registration statement with the Attorney General of the United States detailing information about the defendant's foreign agency, as required by law; and (3) that the defendant acted knowingly and willfully. *See* 22 U.S.C. §§ 612(a) and 616(a).

Nuhfer argues that there was no evidence at trial that she entered into or was part of an agreement to violate FARA and, therefore, there was insufficient evidence to convict her of the FARA conspiracy charge. *See* Mot. at 5-6. This argument is a slightly different twist on an argument she made during trial. During trial, Nuhfer argued that she cannot be guilty of a conspiracy to do something she could not be found guilty of in the first place. *See* ECF No. 439 at 1–2. This Court pointed out that her argument was flawed because it is well established

that "[a] person . . . may be liable for conspiracy even though [s]he was incapable of committing the substantive offense." *See* ECF No. 458 (April 15, 2026 Order Denying Motion for Judgment of Acquittal – 4/15/26) (citing *Salinas v. United States*, 522 U.S. 52, 64 (1997) (citation omitted)).

In that earlier Motion, Nuhfer's theory was that if she is not found to have acted as an agent of the Venezuelan government, then she is not capable of violating FARA, and by extension, she is not capable of conspiring to violate FARA because she would have had no obligation to register under the statute. In denying the Motion, this Court discussed concepts regarding general conspiracy law and the FARA statute that are relevant to her Motion now before this Court, in which she argues that she cannot be guilty of the FARA conspiracy because there was no evidence that she entered into an agreement to violate FARA. Like her previous challenge to the FARA conspiracy charge against her, her argument now before this Court also lacks merit.

As this Court previously explained, the Government has no obligation to demonstrate that each conspirator agreed personally to commit—*or was even capable of committing*—the crime that is the object of the conspiracy. Rather, it is sufficient for the conspirators to agree that some member of the conspiracy would commit the offense. *See* ECF No. 458 at 8 (citing *Ocasio v. United States*, 578 U.S. 282, 289 (2016) ("Not only is it unnecessary for each member of a conspiracy to agree to commit each element of the substantive offense, but also a conspirator may be convicted 'even though [s]he was incapable of committing the substantive offense' [her]self.") (quoting *Salinas,* 522 U.S. at 64); *see United States v. Rabinowich*, 238 U.S. 78, 86, (1915) ("A person may be guilty of conspiring although incapable of committing the objective offense."). Therefore, this Court explained in the prior Order that if Nuhfer

conspired with others for those others to commit the underlying crime and she provided support for those co-conspirators to commit that offense, then she is just as guilty as the co-conspirator(s) who committed the underlying offense. Thus, by example, if the jury finds that Nuhfer was not acting as a foreign agent, and, as such, was not required to register, she may still be guilty of conspiracy if she provided support to others to act as unregistered foreign agents. [ECF No. 458 at 8-9].

So too with respect to the Motion now before this Court, the Government was not required to prove that Nuhfer entered into an agreement to herself violate FARA or even that she could have violated FARA herself. Rather, to prove Nuhfer guilty of the FARA conspiracy charge, the Government needed to prove that she conspired with others to engage in acts that violated FARA even if she herself did not engage in such acts. And, turning directly to Nuhfer's argument, to do so, the Government was not required to demonstrate that she had a formal agreement to violate FARA, but, instead, a conviction may be sustained on the basis of "circumstantial evidence [demonstrating] a meeting of the minds to commit an unlawful act." *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1182 (11th Cir. 2006). As the Eleventh Circuit explained in *Arias-Izquierdo*:

> "Because the crime of conspiracy is 'predominantly mental in composition,' it is frequently necessary to resort to circumstantial evidence to prove its elements." *Id.* (quoting *United States v. Shabani,* 513 U.S. 10, 16 (1994)). The government is therefore not required to demonstrate the existence of a "formal agreement," but may instead demonstrate by circumstantial evidence a meeting of the minds to commit an unlawful act. *Id.* Proof that the accused committed an act which furthered the purpose of the conspiracy is an example of the type of circumstantial evidence the government may introduce to prove the existence of agreement. *United States v. Sullivan,* 763 F.2d 1215, 1218–19 (11th Cir.1985).

449 F.3d at 1182.

The Government presented substantial evidence demonstrating that Nuhfer joined with Rivera to unlawfully enrich themselves by engaging in political activities in the United States on behalf of the government of Venezuela before officials of the United States government, in an effort to influence United States foreign policy toward Venezuela. Moreover, the evidence showed that Nuhfer joined with Rivera to conceal their efforts by failing to register under FARA as agents of the government of Venezuela and by creating the false appearance that they were providing consulting services to PDV USA, an American entity, as opposed to the Venezuelan entity PDVSA. The Government also presented evidence that Nuhfer engaged in several overt acts to advance their objective. The Government identifies examples in its Response, including evidence that Nuhfer worked with Rivera to draft the PDV USA agreement using FARA filings submitted by others who actually did register. The evidence also showed that Nuhfer drafted a letter from the Venezuelan foreign minister to the acting U.S. Secretary of State inviting Representative "Pete Sessions to travel to Venezuela and meet with President Maduro and other government officials on matters of mutual concern to our two countries," and that she arranged meetings between and among U.S. politicians, Venezuelan officials, including members of the Venezuelan opposition and members of Maduro's government, and oil company executives. And the Government presented evidence that Nuhfer was aware of FARA's requirements, as well as evidence from which the jury could infer that she knew that her conduct and that of her co-conspirator, Rivera, fell within the FARA regulations and required registration.

At bottom, regardless of whether there was a formal agreement to violate FARA, the jury could have easily found, based on the evidence presented at trial, that Nuhfer conspired

with Rivera to violate FARA. Therefore, the evidence was sufficient to support the jury's guilty verdict as to Nuhfer on the FARA conspiracy count.

2. <u>The Substantive FARA Charge</u>.

As to the substantive FARA count, Nuhfer avers that there was neither evidence that she lobbied any U.S. politician nor that she acted on the request of the Venezuelan government. But lobbying a U.S. official or acting at the request of a foreign principal is not the only way one becomes an agent of a foreign principal for purposes of the FARA statute. A person may be an agent of a foreign principal if he or she acts "in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person . . . whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal," 22 U.S.C. § 611(c)(1), or "purports to act as, or who is or holds himself [or herself] out to be" an agent of a foreign principal, *id.* § 611(c)(2) – a point Nuhfer ignores in her submissions. In essence, "nearly anyone who represents the political or public-relations interests of a foreign principal in the United States is covered under FARA." *Att'y Gen. of U.S. v. Wynn*, 636 F. Supp. 3d 96, 98 (D.D.C. 2022). This broad scope of persons aligns with FARA's purpose, which is to "prevent covert influence over U.S. policy by foreign principals," by ensuring that the public "is informed of the true source or sponsor behind the information being disseminated for its consideration." *United States v. Craig*, 401 F. Supp. 3d 49, 54 (D.D.C. 2019).

The evidence at trial demonstrated that Nuhfer actively and intentionally acted as an agent of the Venezuelan government. Nuhfer's claim that there was no evidence to support her conviction under FARA ignores both direct and circumstantial evidence admitted at trial. Again, the Government identifies specific examples in its Response, including Nuhfer's

drafting of the invitation letter from the Venezuelan foreign minister to the U.S. Secretary of State that led to Rivera and other individuals, including a U.S. congressman, flying in a private jet to Caracas, Venezuela, to meet with then-President Maduro and other government officials to discuss U.S.-Venezuela relations. The evidence also showed that Nuhfer prepared invoices for payments from the Venezuelan oil company, PDVSA, for services rendered by her and Rivera and others, and that she was involved in message chats in which she acknowledged that she directed Venezuelan officials to pay for meetings that she helped facilitate with then-Senator Marco Rubio. The evidence at trial was certainly sufficient for a reasonable jury to conclude that Nuhfer knowingly and willfully engaged in conduct on behalf of and for the benefit of the Venezuelan government and that she was paid handsomely for those efforts. In other words, there was sufficient evidence for a jury to reasonably conclude beyond a reasonable doubt that Nuhfer acted as an agent of a foreign government and did not register as required, in violation of FARA.

Moreover, the Government charged and the jury was instructed that they could find Nuhfer guilty of the substantive FARA count if they found that Nuhfer aided and abetted Rivera's violation of FARA. *See* Jury Instructions, at 25 (instructing jury that a defendant may be criminally responsible for the acts of another person if the defendant aids and abets the other person).[1] Thus, although the evidence was sufficient to support her conviction as a principal, Nuhfer's theory that the evidence most heavily points to Rivera's culpability does

[1] This Court previously addressed Nuhfer's arguments with respect to the Government's theory of liability and found that Nuhfer may be convicted of "aiding and abetting a FARA violation even if she herself is not found to have acted as a foreign agent." [ECF No. 458 at 8-9].

not mean there was insufficient evidence to convict her because there was ample evidence that she aided and abetted Rivera's acts in violation of FARA.

In sum, the weight of the evidence does not preponderate against a guilty verdict in this case. To the contrary, the evidence supports the jury's verdict that Nuhfer participated in a conspiracy with Rivera to violate FARA and that she herself engaged in political activities in the United States as a foreign agent of Venezuela, without notifying the Attorney General, as required by law, and that she did so knowingly and willfully.

***C. The Money Laundering Convictions***

Nuhfer argues the Government failed to present sufficient evidence to sustain her conviction on two money laundering charges (conspiracy and substantive counts) on grounds (1) there was no evidence that she agreed with anyone to launder money, and (2) there is no connection between the payments Nuhfer received and the charged unlawful conduct (*i.e.*, failure to register under FARA).

Federal law prohibits knowingly engaging in "a monetary transaction in criminally derived property of a value greater than $10,000 [that] is derived from specified unlawful activity." 18 U.S.C. § 1957(a). Here, the substantive money-laundering charge against Nuhfer (Count 6) is predicated on her conviction under Count 2 (substantive FARA violation). Based on the evidence presented in support of Nuhfer's conviction under Count 2, the jury could reasonably find that the $20 million PDV USA and PDVSA (Venezuela's state oil company) transferred to Rivera's consulting firm, Interamerican, constituted FARA proceeds and was "criminally derived property"[2] and that Nuhfer knew the funds were proceeds of criminal

[2] This Court previously addressed and rejected Nuhfer's theory that funds generated in connection with FARA violations cannot support a money laundering charge. *See* ECF No. 455 (Order on Defendants' Motions to Dismiss).

activity. The evidence at trial demonstrated that Nuhfer engaged in "monetary transactions" with the FARA proceeds. Specifically, the Government presented evidence that Nuhfer used more than $400,000 in proceeds from business on behalf of the Venezuelan government in violation of FARA to purchase real property in Key Colony Beach, Florida. A reasonable jury could easily have found that this evidence was sufficient to support a conviction for substantive money laundering.

The evidence also supported the jury's guilty verdict for conspiracy to commit money laundering. To prove the charge of money laundering conspiracy in violation of 18 U.S.C. § 1957, the government had to demonstrate "(1) an agreement between two or more persons to commit a money-laundering offense; and (2) knowing and voluntary participation in that agreement by the defendant." *United States v. Feldman*, 936 F.3d 1288, 1307 (11th Cir. 2019) (internal quotations omitted). At the trial, the Government presented evidence that Nuhfer participated in chat communications with Rivera and others in which they discussed the receipt and distribution of FARA proceeds (or "La Luz") from their work on behalf of the Venezuelan government, including discussions regarding the apportionment of the $20 million received from Venezuelan entities and their subsidiaries. *See also* GX15 [ECF No. 523-17] at 57 (showing wire transfer instructions for Nuhfer's company account). This evidence more than supports the jury's guilty verdict on the money laundering conspiracy count.

Accordingly, Nuhfer has not shown that there was insufficient evidence to support the jury's guilty verdicts on the charges against her, and there is no basis for a judgment of acquittal.

***D. Motion For A New Trial***

Nuhfer moves in the alternative for a new trial on grounds the Government's case was based on circumstantial evidence and that prejudicial evidence tied to Rivera caused a spillover effect against her before the eyes of the jury in their joint trial. She also maintains that the evidence against her was insufficient to support her convictions. Nuhfer relies on the "interest of justice" basis for a new trial under Rule 33(a).

1. Circumstantial Evidence.

Initially, that the Government's case may have relied on circumstantial evidence, as Nuhfer contends, does not render the evidence any less sufficient to sustain the jury's verdict. As discussed above, the Eleventh Circuit has explained that, in proving a conspiracy, "it is frequently necessary to resort to circumstantial evidence to prove its elements." *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998); *United States v. Gold*, 743 F.2d 800, 824 (11th Cir. 1984) ("The very nature of a conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.").

Here, the Government presented both direct and circumstantial evidence to support Nuhfer's conviction on all counts, but even if the Government had only come forward with circumstantial evidence to prove Nuhfer's guilt, that would have been sufficient. Therefore, the Government's reliance on circumstantial evidence is not a basis for granting a new trial.

2. Sufficiency of The Evidence.

With respect to Nuhfer's contention that the evidence was insufficient, as noted above, the Rule 29 and Rule 33 standards are not identical. *Butcher v. United States*, 368 F.3d 1290, 1297 n.4 (11th Cir. 2004). Unlike a motion for judgment of acquittal, in ruling on a motion

for new trial, the court "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985). Where, unlike here, the evidence of guilt is "thin and marked by 'uncertainties and discrepancies,'" "there is room for a district court to reweigh the evidence and reevaluate the credibility of witnesses." *Id.* (citation omitted). To set aside a jury's verdict, however, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* But "such a case will be rare." *Id.*

Again, the evidence did not preponderate against the verdict, much less "heavily" against it — on the contrary, as discussed above, it fully supports it. This Court is satisfied that the Government presented substantial evidence of Nuhfer's guilt on all of the charges against her, and, as such, the interest of justice does not warrant a new trial. *See United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993). Even under the Rule 33 standard, this Court finds the evidence more than sufficient to support the jury's verdict as to all counts against Nuhfer.

3. Severance.

Nuhfer also argues that because she was tried together with Rivera, she was prejudiced and did not receive a fair trial. This Court notes that Nuhfer raised this issue several times before and during trial, and each time, this Court rejected her challenges.

Generally, defendants indicted together are tried together. *Zafiro v. United States*, 506 U.S. 534, 537-38 (1993). And this is "particularly true in conspiracy cases." *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007).[3] To obtain a new trial, Nuhfer must therefore

[3] The Eleventh Circuit has also pointed out that "[j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase

demonstrate (1) the joint trial prejudiced her, and (2) severance was the proper remedy for that prejudice. *Id.* at 1269. Only two circumstances warrant severance, a serious risk that a joint trial would compromise a specific trial right or would prevent the jury from making a reliable determination of guilt or innocence. *Id.*

"To reverse a conviction because of an improper denial of a severance, a defendant must carry the 'heavy burden' of demonstrating that [s]he 'suffered compelling prejudice' and received an unfair trial." *United States v. Kennard*, 472 F.3d 851, 858–59 (11th Cir. 2006); *United States v. Alvarez*, 755 F.2d 830, 857 (11th Cir. 1985) ("Severance will be granted only when the defendant can demonstrate that a joint trial will result in 'specific and compelling prejudice' to the conduct of his defense."). Compelling prejudice means that "the jury is unable to separately appraise the evidence as to each defendant and render a fair and impartial verdict." *United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001). It is not enough that a defendant complains only that acquittal may have been more likely if she was tried separately, "since some degree of prejudice is inherent in a joint trial," or that "much of the evidence at trial [was] applicable only to [her] codefendant[ ]." *Alvarez*, 755 F.2d at 857. A new trial is appropriate only where "the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *Id.* (quoting *United States v. Phillips*, 664 F.2d 971, 1017 (5th Cir. Unit B 1981), *cert. denied*, 457 U.S. 1136 (1982)). Thus, even if she believes she may have had a better chance of acquittal if she had been tried separately, Nuhfer would not have been entitled to a severance. *See Zafiro v. United States*, 506 U.S. 534, 540 (1993).

---

efficiency, and conserve scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).

In the Motion now before this Court, Nuhfer offers no specific, compelling prejudice resulting from her joint trial with her co-defendant, Rivera. Both Nuhfer and Rivera were tried together for the same charged offenses: conspiracy to violate FARA, violation of FARA, conspiracy to launder money, and money laundering. Before trial, this Court did sever tax charges against Defendant Rivera on grounds, *inter alia*, Nuhfer was not charged with such offenses and proof of those charges would likely have required the introduction of evidence that did not involve Nuhfer. At trial, the undersigned instructed the jury as to Nuhfer's and Rivera's individual theories of defense and, at Nuhfer's request, gave a limiting instruction several times during trial not to take into account evidence that was admitted only against Rivera. *See Zafiro*, 506 U.S. at 539 (noting that limiting instructions will often cure any potential prejudice resulting from a joint trial); *United States v. Kennard*, 472 F.3d 851, 859 (11th Cir. 2006) ("[A] court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt.").

Moreover, as discussed above, the Government presented substantial evidence of Nuhfer's guilt. Thus, while Nuhfer is insistent that there was more evidence regarding Rivera's conduct, even if that is the case, this was not a trial where a jury could only find guilt by association. There was certainly enough evidence of Nuhfer's own conduct, knowledge, and intent to sustain her conviction on all counts.

In sum, Nuhfer has not carried her heavy burden of demonstrating compelling prejudice due to the denial of her motion to sever. *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007). Nuhfer makes no showing that the jury was unable to separately appraise the evidence as to her and her co-defendant, Rivera, or that she suffered specific and compelling prejudice as a result of being tried with Rivera. *See United States v. Novaton*, 271

F.3d 968, 989 (11th Cir. 2001) (requiring an appellant to show "compelling prejudice" for a court to find an abuse of discretion in the district court's refusal to sever). Her motion for a new trial based on the denial of her motion to sever is therefore denied.

## IV. CONCLUSION

For the reasons set forth above, this Court denies Nuhfer's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 is denied on the grounds that the evidence at trial was more than sufficient to sustain her conviction on all counts. In addition, Nuhfer's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 is denied on the ground that she has failed to identify any injustice—let alone a manifest injustice—requiring a new trial.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Esther Nuhfer's Motion for New Trial [**ECF No. 531**] is **DENIED**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 17th day of August, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**